# EXHIBIT   A

## Stuelpnagel, John

**From:** aczarnik
**Sent:** Wednesday, July 14, 1999 2:58 PM
**To:** stuelpnagel
**Subject:** RE: Inventorship

John: Definitely Chanfeng. I don't believe that Steve or I contributed to the conception.

Tony

-----Original Message-----
**From:** stuelpnagel
**Sent:** Tuesday, July 13, 1999 11:57 AM
**To:** aczarnik
**Subject:** Inventorship

Tony,

I need to determine inventorship on the nanocrystal application. I think Mark came up with the original idea of using nanocrystals in beads for coding. Who came up with the idea of embedding them in porous silica and then entombing them with a polymer?

Thanks,
John
John R. Stuelpnagel
Illumina, Inc.
9390 Towne Centre Drive, Suite 200
San Diego, CA 92121
Tel: 619-587-4290, ext 226
Fax: 619-587-4297
e-mail: stuelpnagel@illumina.com
www.illumina.com

1

# EXHIBIT   B

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

L.G. PHILIPS LCD., CO. LTD    )    C.A. No. 11076-RCL

VS.                          )    Courtroom No. 11

MICHELE B. BOVIO             )    One Courthouse Way

ROBERT C. FRAME              )    Boston, MA  02210

JANUARY 10, 2005

3:12 P.M.

HEARING ON MOTIONS

BEFORE THE HONORABLE REGINALD C. LINDSAY

UNITED STATES DISTRICT JUDGE

Valerie A. O'Hara

Official Court Reporter

Page 2

1    A P P E A R A N C E S:

2    For the Plaintiff:

3         Casner & Edwards, LLP, by ANDREW M. HIGGINS, ESQ., 303
     Congress Street, Boston, Massachusetts  02210, for the
4    Plaintiff;

5         Morgan, Lewis & Bockius, LLP, by ANTHONY C. ROTH, ESQ.
     and CORINNE A. NIOSI, ATTORNEY, 1111 Pennsylvania Avenue,
6    NW, Washington D.C., 20004, for the Plaintiff;

7    For the Defendant:

8         Howrey, Simon, Arnold & White, LLP,
     by MICHAEL LANGER RESCH, ESQ., 550 South Hope Street,
9    Suite 1100, Los Angeles, California  90071-2627, for the
     Defendant;
10

11        Taylor, Duane, Barton & Gilman, LLP, by ANDRIA COLETTA,
     ATTORNEY, 160 Federal Street, Boston, Massachusetts  02110,
     for the Defendant.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE CLERK:  All rise.  Civil Action 04-11076-RCL,

2   L.G. Philips Company Limited versus Bovio and Frame.

3   Counsel, please identify yourself for the record.

4          MR. HIGGINS:  Good afternon, your Honor, Andrew

5   Higgins from Casner & Edwards representing the Plaintiff.

6   With me today are Anthony Roth and Corinne Niosi from the

7   Washington firm of Morgan Louis.

8          THE COURT:  Spell Niosi for me.

9          MS. NIOSI:  N -- as in Nancy -- i-o -- s as in

10  sam -- i.

11         THE COURT:  Okay.

12         MR. HIGGINS:  Mr. Ross' appearance, he has been

13  admitted for purposes of this case, your Honor, by motion.

14         THE COURT:  Okay.

15         MS. COLETTA:  Your Honor, Andria Coletta from

16  Taylor, Duane, Barton & Gilman.  We are local counsel for

17  Defendants Robert Frame and Michele Bovio, and with me is

18  Michael Resch from the Los Angeles office of Howrey Simon,

19  and he has been admitted pro hoc VJ to this Court by motion.

20         THE COURT:  All right.  These are motions of the

21  Defendants to dismiss, one for jurisdiction with respect to

22  Mr. Bovio, and one about subject matter jurisdiction with

23  respect to Mr. Frame; is that right?

24         MR. RESCH:  That's correct, your Honor.

25         THE COURT:  Why don't you start out, since these

Page 4

1   are your motions, by telling us some things that your

2   papers, voluminous that they are, on both sides, what has

3   happened in the Central District of California to the case

4   out there, and I hesitate to describe it either as the dog

5   or the tail -- because I'm not sure what I am in this

6   case -- but tell me what's happened in California.

7           MR. RESCH:  Well, your Honor, most importantly for

8   the purposes of these motions, the Plaintiff, the

9   declaratory Plaintiff here and the Plaintiff there have

10  filed a motion to stay that litigation.

11          THE COURT:  Your papers indicate that that motion

12  was denied?

13          MR. RESCH:  That's correct, your Honor.  Since

14  then we have been proceeding forward, and there's claim

15  construction scheduled, I believe, for next week, the 13th

16  of January.  It was originally set for January 7th.  That

17  case is essentially proceeding forward.  Discovery has been

18  taken and is continuing in that case, for example, the

19  declaratory defendants here, Mr. Frame and Mr. Bovio, both

20  have already been deposed in that case.  They've agreed to

21  sit for one more day of deposition, and that's sort of where

22  we are in that case.

23          THE COURT:  You, I mean, your client, move to

24  amend the complaint or was it move to amend your answer to

25  assert a counterclaim against the Plaintiff in this case.

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1   Tell me if I'm wrong when I stop.  Was the motion to amend

2   the counterclaim to add a claim concerning inventorship?

3          MR. RESCH:  Here's the history, your Honor.  First

4   of all, the declaratory defendants here, Mr. Frame,

5   Mr. Bovio, are not parties.

6          THE COURT:  They're witnesses?

7          MR. RESCH:  They're witnesses, that's exactly

8   right.  The defendant in the California action is CPT.  In

9   December, 2002 -- remember the California action was filed

10  in August of '02.  In December, '02, CPT answer, filed its

11  first answer, and defended the case in part by bringing up

12  the inventorship issue and alleging that the proper

13  inventors were not named in the patent.  That was way back

14  in December of '02.

15         THE COURT:  By the way, what difference does that

16  make?

17         MR. RESCH:  What difference does what make?

18         THE COURT:  If the inventors were not named.

19         MR. RESCH:  That would invalidate the patent, your

20  Honor, under our defenses, so, therefore the patent

21  infringement action --

22         THE COURT:  Under the statute, if you named the

23  wrong inventors, the patent is invalidated?

24         MR. RESCH:  Yes, your Honor, that's certainly my

25  understanding of I believe it's 102E, and so that is a

1    defense to the infringement action.  I think it also

2    supports counterclaims that may be brought in the patent

3    infringement action, but, yes, that's the most important

4    part, I suppose, for the purposes of that action, it would

5    be a defense to the patent infringement action.  So, your

6    Honor, what happens is in December, 2002, that issue is

7    placed in the answer.  That defense is placed in the answer,

8    and from then on --

9           THE COURT:  Before you leave that, before you

10   leave my last question --

11          MR. RESCH:  Yes.

12          THE COURT:  -- am I reading this statute wrong, 35

13   U.S.C., Section 256, when it says the error of omitting

14   inventors or named persons who are not named inventors shall

15   not invalidate the patent in which such error occurred if it

16   be corrected?  Did I read that wrong?

17          MR. RESCH:  No, your Honor, I believe that's what

18   256 says, your Honor; however, I think that the underlying

19   statute relevant to the patent infringement case states that

20   if the inventors are not stated properly, and specifically

21   in this case, your Honor, and this is really I guess the

22   most important point, if they are not the inventors that are

23   claimed and they are the inventors that CPT claims, then it

24   actually would no longer be a valid patent because the

25   patent holder in this case, now LPL, would not have properly

1   brought the issue to the patent office, and the patent would

2   no longer enure to their benefit, if that makes sense, your

3   Honor.

4          THE COURT:  It makes sense.  I understand.  Wasn't

5   there some summary judgment motion before Judge Marshall at

6   some point that raised that issue?

7          MR. RESCH:  Yes, here's the important part, I

8   think, your Honor.  Once we put the issue in our December,

9   2002, and by our, I mean, CPT, answer in the California

10  action, discovery starts going about inventorship.  There

11  are five inventors named on the patent, started asking

12  questions about those inventors, when they invented it, so

13  on and so forth.

14         There was not discovery, responsive discovery,

15  coming back on those issues.  CPT investigated the issues on

16  its own and found Mr. Frame and Mr. Bovio and found evidence

17  that they were in fact the true inventors of the technology

18  underlying the patents.  So, then, your Honor, in March,

19  '04, pursuant to a Central District of California local rule

20  that says CPT had to give 20 days' notice that is a meet and

21  confer period prior to bringing any motion.

22         In March of 2004, we gave that motion saying we

23  were going to move to amend our counterclaims to add a 256

24  action, among other things, and we were going to bring a

25  motion for summary judgment based in part on this

Page 8

1   inventorship issue.  The inventor evidence that we had now

2   found had never been produced, and really no evidence had

3   been produced.  At that point, your Honor, after we gave the

4   notice was when the parties gave a 60-day stay, and that was

5   upon request by LPL, okay.

6         Right before the stay ends, LPL files this action

7   here in Massachusetts and then the motion to amend and the

8   motion for summary judgment are filed.  The motion for

9   summary judgment, LPL then asks for additional time to

10  respond to it, and then when they respond to it, your Honor,

11  they put in all this evidence re:  inventorship that had

12  never been previously produced.

13        Based upon all this evidence that was then put

14  into the California action, CPT withdrew the motion for

15  summary judgment.  So, that's the history of that summary

16  judgment motion regarding the inventorship.

17        THE COURT:  What happened to the motion to amend?

18        MR. RESCH:  The motion to amend went forward, and

19  in part was granted with respect to the 256 action, it was

20  denied without prejudice because the Court was alerted that

21  we were here before you, and at that time not knowing how

22  long it was going to take for this ruling, the Court said,

23  well, let's see what happens in Massachusetts, so on that

24  basis, I believe, the motion to stay was filed, or around

25  that time, but then Judge Marshall denied the motion to stay

1   and the side-mount patent litigation was proceeding

2   forward.

3          THE COURT:  Okay.

4          MR. RESCH:  That's sort of the history of that

5   litigation.

6          THE COURT:  Who is speaking for the Plaintiff in

7   this case?

8          MR. ROTH:  I am, your Honor.

9          THE COURT:  Why don't I put the question to you.

10  Why isn't this case properly resolvable in California and

11  not in Massachusetts?

12         MR. ROTH:  Because the issue presented in

13  Massachusetts is very different than the issue presented in

14  California.

15         THE COURT:  But the case in California could very

16  easily incorporate this issue.  For example, the technology

17  involved that you claim infringes your patent is technology

18  that you say Bovio and Frame claim to have invented; isn't

19  that right?

20         MR. ROTH:  Bovio and Frame have claimed to be

21  inventors on our patent.  Neither Bovio nor Frame is subject

22  to jurisdiction in the California court.

23         THE COURT:  Well, what difference does it make if

24  you get the matter concluded with respect to the Defendants

25  here and the Defendants in California if the inventorship

1  question is resolved in California or your infringement

2  claim is resolved in your favor, why do you need this case?

3          MR. ROTH:  The California case does not resolve

4  the issue as to Bovio and Frame.  The fact that CPT --

5          THE COURT:  Why do you need to resolve that issue?

6          MR. ROTH:  Because they're making affirmative

7  statements publicizing them that they are the inventors of

8  the patent that we are trying make.

9          THE COURT:  Are they making those statements in

10  anyplace other than in that California litigation?

11          MR. ROTH:  We don't know, but CPT has been

12  publishing their statements, presumably with their

13  permission, in publications like magazines and elsewhere.

14  We do not have any discovery from Mr. Bovio and Mr. Frame

15  concerning where else they may be making those statements.

16  The discovery that was mentioned was limited to the issue of

17  the summary judgment motion that had been filed by CPT, and

18  that is the only thing as to which was discovery has been

19  taken of Bovio and Frame from continuing to assert, but the

20  case in California would not prevent Bovio and Frame from

21  continuing to assert that they are the inventors of LPL's

22  side-mount patents, nor would we have a position that would

23  allow us to enforce that determination against Bovio and

24  Frame because they're not parties to that litigation.

25          THE COURT:  Well, this gets me into the question

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1  that Mr. Frame raises whether there's subject matter

2  jurisdiction in this case, and you're standing up, and I

3  want to know from you why you think there is, and if he says

4  I wrote a letter to you and I told you I'm not going to sue

5  you, I don't own this technology anymore, I assigned it to

6  somebody, and indeed the people I've assigned to are not the

7  people who are now asserting the ownership of the technology

8  are not the people that I assigned it to, they got their

9  right to ownership such as it is from Digital Equipment,

10  isn't that right, this is now a secondary owner?

11          MR. ROTH:  It's four companies removed, but you

12  are correct, CPT is attempting to enforce the assignment

13  that Frame made.  The reason that, well, the letter from

14  Frame's counsel saying he will not sue is not adequate is

15  because it is not determined based on just looking at the

16  letter.  The letter is elusory.  The totality of the

17  circumstances here show that Frame is actively involved with

18  CPT in trying to have the inventorship changed.

19          THE COURT:  What do you mean by the totality of

20  the circumstances?  What is the totality of the

21  circumstances?

22          MR. ROTH:  The totality of the circumstances

23  include that Frame is represented by CPT's counsel.  The

24  totality includes that Frame signed an assignment that CPT

25  is attempting to enforce that requires him to cooperate in

1    any activities related to a determination of that

2    invention.

3              THE COURT:  Does that assignment enure to the

4    benefit -- you say this assignment signed in Massachusetts

5    in, what, 1997?

6              MR. ROTH:  Yes.

7              THE COURT:  To Digital Equipment.  Everybody has a

8    right, the fourth level, these people, what is your company?

9              MR. RESCH:  CPT, your Honor.

10             THE COURT:  CPT has a right to insist on the right

11   that Digital had in that assignment, is that right, do you

12   agree?

13             MR. RESCH:  Yes.

14             THE COURT:  Is that right?  Do you agree?

15             MR. RESCH:  That CPT has the rights to the benefit

16   of that assignment?

17             MR. RESCH:  Yes, your Honor.

18             THE COURT:  Because what?

19             MR. RESCH:  Well, it's a fairly complicated

20   history, but essentially through a number of purchases, I

21   believe.

22             THE COURT:  You purchased the right to get

23   Mr. Bovio's and I guess Mr. Frame's cooperation?

24             MR. RESCH:  Well, your Honor, we purchased the

25   rights to the extent that our predecessor had the rights to

Page 13

1    the side-mount patents, and so that include whatever --

2            THE COURT:  Is it in the Bovio or Frame claim, I

3    didn't agree to cooperate with you at all, I agreed to

4    cooperate with Digital because I love Digital, it's my

5    company, and I work for them, I didn't agree to cooperate

6    with you.  Can that claim be made?

7            MR. RESCH:  Well, your Honor, I think that claim

8    is not really relative to the promise.

9            THE COURT:  It's relevant to one of the issues in

10   this case, isn't it, because one of the claims is that that

11   agreement, that assignment is the basis of jurisdiction over

12   Mr. Bovio?

13           MR. RESCH:  Of personal jurisdiction over

14   Mr. Bovio?

15           THE COURT:  Yes.  Maybe I'm moving too fast from

16   one issue to another issue.

17           MR. RESCH:  Well, the issue with regard to

18   Mr. Bovio I don't think has anything to do with that

19   September, '97 assignment at all.  In other words, your

20   Honor, I think it's quite clear from the case law, and we

21   can get into this more specifically, if you'd like to move

22   over to the personal jurisdiction argument now, but is that

23   the relevant conduct regarding Mr. Bovio is the conduct

24   relating to his participation in the California action.

25           THE COURT:  Before we get that, I just need to

1  know, it's relevant to my decision whether it is the case

2  whether you can insist on Mr. Bovio or Mr. Frame's help with

3  respect to this technology.  In other words, can you insist

4  that Mr. Bovio, Mr. Frame give you what Bovio and Frame

5  would have given DEC had it existed?

6          MR. RESCH:  Yes, your Honor.  I think that, and

7  I'd like to refer back to the assignment, if I could, but my

8  understanding of the transfers from, and I believe it went

9  through, for example, Hewlett-Packard to CPT now, and I must

10  confess, your Honor, I'm not that versed in the particular

11  of the agreements that transferred everything.

12          THE COURT:  Well, let me tell you this, it seems

13  to me that if Mr. Bovio or Mr. Frame could say that I don't

14  owe any loyalty to CPT --

15          MR. RESCH:  I think they could that say that, your

16  Honor.

17          THE COURT:  With justification.  I'm not bound by

18  this agreement.

19          MR. RESCH:  I think they could say that, your

20  Honor.

21          THE COURT:  And one part of the jurisdiction over

22  Bovia goes away, doesn't it?

23          MR. RESCH:  Yes.  I think they could say that,

24  your Honor.  As I said, I don't think that their argument

25  has any merit, in any event, and I am confident of that and

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1   can get into that in more detail, but if that is certainly

2   another way that I suppose if Mr. Bovio or Mr. Frame wanted

3   to refuse to cooperate that they could do so, and I guess

4   that way also eliminates that argument.

5            To me, that's I guess the other reasons why I

6   think that argument and the assignment are not really

7   relevant here are even stronger under the case law.

8            I'm sorry, your Honor, I was just going to say I

9   don't know how fast we're jumping around, but my colleague,

10  Mr. Roth, when we were referring to whether the issues in

11  this case are different or not a moment ago, I would just

12  point your Honor to page 9 of their opposition where it

13  says, "Thus, there is actual litigation on the very issue

14  that LPL raises in this Court."

15           THE COURT:  I'm going to get rid of these

16  preliminary matters and proceed in an orderly fashion in

17  just a minute.  I just want to get this stuff out of the

18  way.  You say these agreements are enforceable by CPT

19  against Bovio and Frame?

20           MR. ROTH:  Absolutely.  There is an agreement

21  between HP and CPT that transfer all of HP's, and through

22  that chain, DEC's rights related to the assignment.  The

23  assignment is Exhibit 4 to counsel's declaration.  Paragraph

24  5 of the declaration binds Bovio and Frame and their heirs

25  and their legal representatives and assignees to take all

1   acts reasonably certain to ensure that said inventions...

2   shall be held and enjoyed by assignee as fully and entirely

3   as the same could have been held by Frame or Bovio.

4        THE COURT:  What you're telling me that agreement

5   says is that Frame and Bovio, Frame and Bovio by themselves

6   and their heirs and successors to the assignee?

7        MR. ROTH:  Right, and the assignee assigned all of

8   its right to Compaq and then HP, and HP sold them.

9        THE COURT:  I understand that.  Are you telling me

10  that Bovio and Frame's agreement which doesn't say, as you

11  read it to me, that they agree to give this same cooperation

12  to assignees and successors of DEC?  These are personal

13  obligations, are they not, of Bovio and Frame, they

14  personally say that we are going to help you, DEC?

15        Now, they can assign whatever -- DEC can assign

16  whatever it likes to assign, but if they assign this four

17  levels down, don't these people who actually sign the

18  original documents have to agree?

19        MR. ROTH:  No, there's nothing that bars the

20  assignment of these obligations.  They have participated in

21  the prosecution of patents, and there is no argument in the

22  California case that CPT doesn't have every right stated in

23  the assignment.  They claim those rights, and Bovio and

24  Frame's behavior is in fact consistent with that.

25        THE COURT:  It certainly is consistent.  The

1  question is, are they bound to do it?

2          MR. ROTH:  Yes, yes.

3          THE COURT:  You haven't read anything to me that

4  says they are bound.  What you have told me is that Bovio

5  and Frame bound themselves to DEC, and they bound themselves

6  to do something that is a personal obligation, and the

7  question I have for you is can DEC transfer this personal

8  obligation?

9          MR. ROTH:  Let me read another paragraph, if I

10  might, the whereas clause starts with, DEC, a corporation of

11  the Commonwealth of Massachusetts whose address is such and

12  such, who together with its successors and assigns is

13  hereafter called the assignee.  This says that DEC and

14  assignees have these rights against Bovio and Frame, and

15  they're promising to give this cooperation.  They're one in

16  the same now.  They're a unit.

17          THE COURT:  Okay.  Go ahead.  All right.  Is it

18  Mr. Resch?

19          MR. RESCH:  Resch.

20          THE COURT:  Go ahead.

21          MR. RESCH:  In response to that question, your

22  Honor, it's still not clear to me, not having done the

23  research on this issue, similarly because of the way this

24  agreement reads, whether or not that would force Mr. Bovio

25  and Mr. Frame to thereafter provide cooperation to, you

1   know, imperpetuity all of DEC's because it's not only DEC's

2   assignee, then, you know, it's also now --

3           THE COURT:  I have some problem with it, too,

4   because you go through all these levels of assignment.

5           MR. RESCH:  Right.

6           THE COURT:  I'm not sure if I assign something, I

7   give it to everybody that's down that line.  Let's leave

8   that for a moment.

9           MR. RESCH:  Your Honor, the last point on that, if

10  you read the strict language in the agreement and who

11  together, this is in the whereas paragraph that Mr. Roth

12  just read, with its successors and assigns, whether or not

13  that extends as I say imperpetuity or DEC's next in line, I

14  don't know.

15          THE COURT:  It's not clear to me either.

16          MR. RESCH:  Not clear, but as I say, for the other

17  arguments, I don't think that this impacts in a material way

18  the personal jurisdictional analysis.

19          THE COURT:  Which one do you want to talk about

20  first?

21          MR. RESCH:  The subject matter jurisdiction.

22          THE COURT:  All right, go ahead.

23          MR. RESCH:  Your Honor, this is a quite simple

24  motion, Article 3 and the declaratory judgment act require

25  an actual controversy between the parties, and that

1    controversy must exist at all stages of the proceedings.

2    That much we know without question.

3          We also know that LPL here bears the burden of

4    demonstrating that there is subject matter jurisdiction,

5    that is, that there is an actual controversy.  Okay.  Fina

6    Oil tells us that one element in order to satisfy the actual

7    controversy requirement is that a party, another party, with

8    a right to bring a 256 action has created in the declaratory

9    claim a reasonable apprehension that it will do so in this

10   case.

11         That requirement is that Mr. Frame has created --

12   A, that Mr. Frame has a right to bring a 256 action, and, B,

13   that Mr. Frame has created in LPL a reasonable apprehension

14   that he will do so.  Against that backdrop there is

15   absolutely no way, legally, factually or otherwise, that LPL

16   can satisfy the actual controversy requirement.

17         Why?  Because Mr. Frame has promised not to sue

18   LPL.

19         THE COURT:  Is that promise solely in this letter?

20         MR. RESCH:  It's on the record right here,

21   Mr. Frame will not sue LPL on these side-mount patents, and

22   it's also in the letter.

23         THE COURT:  Do you say on the record here that is

24   an enforceable promise?

25         MR. RESCH:  Absolutely.

Page 20

1          THE COURT:  As Mr. Frame's representative, his

2    lawyer, are you committing on this record that Mr. Frame

3    does not now or ever intend to sue L --

4          MR. RESCH:  LPL.

5          THE COURT:  LPL with respect to the inventorship

6    of this technology?  Do you say that?

7          MR. RESCH:  Yes, that he will not bring a

8    Section 256 action, ever, in any way, not only does he does

9    not intend to, but he will not bring a 256 action against

10   LPL in any way on these side-mount patents.

11         THE COURT:  You are Mr. Frame's lawyer?

12         MR. RESCH:  Yes, I am.

13         THE COURT:  You make that statement knowing that

14   it may bind Mr. Frame in the future?

15         MR. RESCH:  Yes, I do.

16         THE COURT:  What do you think about that,

17   Mr. Roth?

18         MR. ROTH:  It's elusory.

19         THE COURT:  Why?

20         MR. ROTH:  The law does not require us to accept

21   Mr. Frame's promise that he won't sue us on Section 256,

22   where it is clear from the conduct that his actions have

23   created the reasonable apprehension of suit.  The statement

24   made by Mr. Frame's counsel at page 3 of his reply brief I

25   think is depositive of this issue.

1        LPL must prove that it has a reasonable

2   apprehension of suit caused by Frame's conduct.  Our

3   apprehension of suit is caused by Frame's conduct.  It's

4   caused because he's the one out there claiming to be the

5   inventor and interfering with the rights that we enjoy in

6   the patent.  The fact that that is causing CPT to bring

7   separate claims is not depositive.

8        THE COURT:  Isn't what you have to be worried

9   about is a suit by Frame, not a suit by somebody else, but a

10  suit by Frame; isn't that right?

11       MR. ROTH:  We have to be worried both about a suit

12  by Frame of some type based on his claim that he's the

13  inventor, but we also need to be worried about a suit by the

14  people who are actively engaged in a cooperative action with

15  Frame.

16       THE COURT:  What do you mean by a cooperative

17  action?  He's a witness?

18       MR. ROTH:  He is not a witness, he is a person who

19  under the assignment is obligated to participate in the suit

20  and press the claim being made by DEC, successor CPT.

21       THE COURT:  Is there a case that says that if a

22  person does not in his own name but assists somebody else

23  who claims the technology, who claims to be his assignee, I

24  mean, that's how we get to this, that these people are the

25  fourth level assignee of Mr. Frame.

Page 22

1        If you say that Mr. Frame because he has this

2   assignment must assist CPT, and he's assisting by helping

3   him with the litigation, do you say that that constitutes

4   what this suit is all about, that constitutes a threat of a

5   suit?

6       MR. ROTH:  That constitutes the conduct giving

7   rise to this action which is about, are the correct

8   inventors named?

9       THE COURT:  I understand that, but, you know, if

10  you're fearful that his cooperation is causing you a

11  problem, then you've got a suit in California that's going

12  to deal with that.  Now, he says that apart from California,

13  I'm not going to sue you, but if it's about his work in

14  California, I say you take it to California and let

15  California deal with it.

16      MR. ROTH:  He will not be a party to that suit.

17  He will not be bound by that suit.  It has been very telling

18  that we filed suit here because this is where Mr. Frame

19  lives.  In his brief, he spent 20 percent of his allowable

20  pages arguing CPT's point, which is CPT wants the case in

21  California.  Mr. Frame does not want to be a party in a

22  case.

23      THE COURT:  What do you mean CPT wants a case in

24  California, didn't you bring suit in California yourself?

25      MR. ROTH:  We filed suit in California.  They have

1    countersued.  The arguments that you see at page 16 to 20 of

2    their brief are CPT's and CPT's alone argument asserted

3    through Mr. Frame.  Mr. Frame has no reason to want these

4    issues litigated in California.  He would have an interest

5    only in having them litigated where he is.

6              THE COURT:  He says he doesn't want them litigated

7    at all.  He says there's no jurisdiction.  He says

8    California, Alaska, Slobovia, I don't want it litigated, I'm

9    not going to sue.

10             MR. ROTH:  He's not saying that.

11             THE COURT:  That's the nature of a motion that

12   raises with me subject matter jurisdiction.  It says that

13   this case can't be brought here, can't be brought in

14   California, can't be brought anywhere because I don't

15   qualify under 256 because I don't plan to sue and there's no

16   reason you should be concerned about that.

17             MR. RESCH:  Your Honor, if I could respond to

18   clear up the confusion.

19             THE COURT:  No, one at a time.

20             MR. ROTH:  Your Honor, we have reason to worry

21   about Mr. Frame and his behavior in connection with this

22   issue, and we would like it cleared up where we have

23   jurisdiction over him so that he is a party and he is bound

24   by that.  He is not a mere witness who has been drugged into

25   this against his will.

Page 24

1          THE COURT:  What's he doing then?

2          MR. ROTH:  He is affirmatively cooperating with

3     CPT to try and bring exactly the action that we are trying

4     to get resolved here.

5          THE COURT:  Let me get this correctly.  You sued

6     CPT in California?

7          MR. ROTH:  For patent infringement.

8          THE COURT:  Patent infringement.  Somewhere along

9     the line -- Frame wasn't a part at the beginning --

10    somewhere along the line as this case is brought, they

11    brought issues raising inventorship, in which case Frame and

12    Bovio became part of the litigation?

13         MR. ROTH:  In March of 2003 for the very first

14    time CPT alleged that Frame and Bovio were the inventors of

15    four of the patents that LPL had asserted.  In connection

16    with that, they had declarations from these gentlemen, and

17    they said they represented them.  They are affirmatively the

18    counsel to these two gentlemen, and they've used their

19    obligations under the assignment to require them to

20    participate because CPT has those rights in the California

21    action, but they don't want them to be parties because they

22    don't want it to be binding, and we want it to be binding,

23    and we also want the issue resolved in a situation where

24    Bovio and Frame are parties to the action.

25         THE COURT:  You have a case that tells me that

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1   somebody who participates by means of an assignment to help

2   somebody who is an assignee who doesn't now have an interest

3   in the technology because he's assigned it all, and his

4   assistant is to help them with the litigation is somebody

5   whose conduct you need to worry about because that person by

6   their cooperation may sue you.  Is that what you're telling

7   me?  Are you telling me that there's a case that says that?

8              MR. ROTH:  There are cases, for example, the PHC

9   case cited by PCT's counsel that says the threat of suit can

10  come from the actions of the other side.  It is not limited

11  to the particular individual.  If he were not actively

12  cooperating with CPT, this might be a different case.  If he

13  were a person who simply received a subpoena and did nothing

14  more than act as a witness, this might be a different case,

15  but PHC, for example, talks about the other side's conduct

16  and the fear that the other side will bring a suit.  They

17  are the other side.

18             THE COURT:  They have brought suit, they brought

19  the suit?

20             MR. ROTH:  They have tried to bring the suit.

21  Their motion has been denied.

22             THE COURT:  The question is, the other side can be

23  somebody, you say, other than Frame?

24             MR. ROTH:  It can be three people working in

25  concert, it could be ten.  In this case, it's three, it's

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

Page 26

1    Bovio, Frame and CPT.  HP is also cooperating in this suit

2    because, HP, according to CPT, has a common interest, and

3    all of their actions together are not discoverable.  There

4    is a group on the other side who are affirmatively attacking

5    these patents.  That group includes at least CPT, Bovio,

6    Frame and HP.

7            It doesn't address the concern we have who are

8    participating in this who saying we are not the people whose

9    name appears in the caption.  That's not where the dispute

10   gets resolved.  The declaratory judgment act allows us to go

11   directly to the points of dispute rather than run everything

12   indirectly, and they are actively engaged in this group

13   that's attacking, and you can't determine, in my view, you

14   shouldn't determine jurisdiction based by drawing a line and

15   saying, well, Frame is doing this, but it's in the name of

16   someone else.

17           That is putting the form over the substance of

18   what's going on, and I think the declaratory judgment --

19           THE COURT:  What do you say is Frame's interest in

20   doing this?

21           MR. ROTH:  Frame's interest may be what the Court

22   has recognized, the Federal Circuit has recognized is

23   sufficient to give him standing, reputation.

24           THE COURT:  Well, are you talking about the Chow

25   case?

Page 27

1          MR. ROTH:  Yeah.

2          THE COURT:  I think you overstate that.  What the

3    federal circuit says is not implausible.

4          MR. ROTH:  Right.

5          THE COURT:  I don't take that to be a basis.

6    They've never said that you can bring suit merely because of

7    reputation.  They said it's not implausible.

8          MR. ROTH:  So, it is plausible then.

9          THE COURT:  Plausible doesn't mean there is

10   jurisdiction, and there is no case, is there, that says that

11   you may, that Frame may bring this litigation based purely

12   on his reputation, and, indeed, if he brought that case, you

13   would say it should be dismissed because he doesn't have

14   standing; is that right?  Wouldn't you do that?

15         MR. ROTH:  I don't believe so.

16         THE COURT:  You would say he does have standing?

17         MR. ROTH:  I believe under 256, if your Honor

18   looks at it, it does not require an ownership interest.

19         THE COURT:  I'm not talking ownership interest,

20   the law says he has a financial interest of some kind,

21   doesn't it?

22         MR. ROTH:  No, to be named as an inventor in a 256

23   action, you simply have to assert that you are inventor.

24         THE COURT:  I'm talking about a declaratory

25   judgment act, you have to have an interest.

1        MR. ROTH:  It would not be a declaratory judgment

2   action if brought by Frame.  Brought by Frame, it is a

3   correction of the name.  He comes in, he says I am the

4   inventor, therefore, under 256, it doesn't matter that I own

5   anything, what matters is am I the inventor?  If I am the

6   inventor, I have a right under 256 to bring an action to

7   have that corrected to have me named, which I think goes a

8   long way to explaining why the Federal Circuit, though they

9   didn't rule on it directly, why they found that a

10  reputational injury is in fact sufficient because 256

11  doesn't require that you own it, it doesn't require that you

12  will benefit from it, it simply requires that you come

13  forward and claim I am the guy who invented this.

14       THE COURT:  If I were looking at this case, I

15  could just imagine all the lawsuits of people running into

16  the court saying because I am the true inventor of the

17  telephone and the fact that maybe it's Bell who has the

18  patent on that, and he says, I'm the inventor.  We're

19  getting all these lawsuits about people who claimed my

20  reputation is ruined because Bell is claiming to be the

21  inventor of the telephone.

22       MR. ROTH:  There are, in fact, Section 256,

23  actions involving people who claim to be the inventor of

24  things, that's why the statute exists.

25       THE COURT:  I'm talking about declaratory

1    relief.

2             MR. ROTH:  Eli Lilly, your Honor, out of the

3    Southern District of Indiana is an example of exactly the

4    same kind of scenario, declaratory judgment under

5    Section 256 where someone is claiming to be the inventor of

6    a patent that is issued to someone else.  It's not an

7    unusual case.  What is significant about 256, I think, the

8    language which you identified, which is, some of these can

9    be corrected.  They can be corrected by agreement and by

10   going to the patent office or asking the Court to find

11   something on a stipulation if there's no deceptive intent.

12   They have alleged that there is deceptive intent.  Having

13   alleged that there is deceptive intent, the correction

14   cannot be made that leaves the patent valid.

15             THE COURT:  Let me hear from Mr. Resch.

16             MR. RESCH:  All right.  Your Honor, there are so

17   many things to correct, I don't know where to begin.  Thank

18   you for correcting the Chow issue.  I don't need to handle

19   that one.

20             Let me start first with Mr. Roth's representation

21   about pages 16 to 20 of our brief, minor issue.  We are not

22   suggesting in those cases that the case be transferred or

23   anything like that.  What we're suggesting is very clear in

24   those pages.  It is well established that even if subject

25   matter jurisdiction exists, that is, even if an actual

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1    controversy exists, which it doesn't here, your Honor is

2    vested with very wide and unique, under the declaratory

3    judgment act, very unique and broad discretion to still

4    dismiss the case.

5            We set out two arguments that LPL didn't respond

6    to as to why it should still be dismissed even if there is

7    an actual controversy.  I'm not going to touch those two

8    arguments right now because what's more important is this

9    fact:  There is no case, none at all, anywhere in the world,

10   at least in the United States, that says in the face of a

11   covenant not to sue subject matter jurisdiction can still be

12   found.

13           It just doesn't exist, and what's interesting

14   about this point, your Honor, first of all, there is the

15   Cole case that we've cited where they have found that a

16   reputational interest, and it's after Chow, is not

17   sufficient.  That's the only case I know that addresses the

18   representational interest issue after Chow and they found it

19   wasn't sufficient, but, in any event --

20           THE COURT:  What do you think about Mr. Roth's

21   theory of a combined effort that involves Frame and Bovio

22   and CPT to divest LPL of its rights under the patent?

23           MR. RESCH:  I think it's legally and factually

24   without merit.  It's legally without merit because there's

25   no case out there anywhere at all that says another party

1    suing is what can be the justification for bringing a

2    declaratory judgment act against a declaratory defendant.

3    Fina is very specific that it has to be Mr. Frame is going

4    to sue.  That's why you have all these cases where there's a

5    covenant not to sue where they say no more subject matter

6    jurisdiction.

7          So, even assuming that there was this kind of

8    conspiracy out there, there is no case law to support that

9    under those facts that you can find subject matter

10    jurisdiction against Frame where he has promised covenanted

11    not to sue, and what's interesting, your Honor, two things.

12          One is the reputational interest, so we would say

13    Mr. Frame does not have the right, and we've argued in our

14    brief that he does not have the right, does not have

15    standing to sue.  You know what, we don't even want to get

16    there because by promising that he's not going to sue, he's

17    promising he's not going to assert any representational

18    issue.  He is making a covenant not to sue; therefore, he

19    cannot later claim that he has any reputational interest, in

20    any event.

21          THE COURT:  You say he could cooperate with anyone

22    in the world he wanted to to help that person assert its or

23    that party assert its right to the technology without being

24    fearful of being a defendant in a declaratory judgment

25    action so long as he has committed himself not to sue

1    himself?

2          MR. RESCH:  That's right, your Honor, and that is

3    established by numerous cases that we've cited such as EMC

4    at 89F.3D at 810, even the PHC case, Howe, Roach, others

5    that say that essentially it has to be between the parties.

6    The constitutional requirement of subject matter

7    jurisdiction is that there be an actual controversy between

8    the parties before you, and there is no such controversy

9    between the parties before you, and that is why this is

10   missing.  Now, let me address one thing that Mr. Roth stated

11   over and over again.

12         THE COURT:  Quickly, because I want you to quickly

13   get to the personal jurisdiction of Mr. Bovio.

14         MR. RESCH:  Quickly, yes.  Mr. Roth kept saying

15   he's not going to be bound by that.  Mr. Frame is not going

16   to be bound by that, that's why this lawsuit is so

17   important.  In effect, your Honor, by promising not sue,

18   Mr. Frame is really bound by that.  In other words, the

19   concern goes --

20         THE COURT:  Let me ask you, maybe I'll ask

21   Mr. Roth.  Both of you, if you succeed in prosecuting this

22   case and you get a declaration that Mr. Frame and Mr. Bovio

23   are not the inventors, is CPT bound by that?

24         MR. ROTH:  It may not be if it chooses as it has

25   intentionally chosen not to participate here, but it is free

Page 33

1    to participate in this proceeding.

2        THE COURT:  Now we have this litigation, we have a

3    possibility of a litigation in California with one result,

4    another litigation here with another result.

5        MR. ROTH:  I don't believe so, your Honor, because

6    their entire claim is derivative.  They didn't know Bovio

7    and Frame.  They didn't participate.  All they're alleging

8    is that based on what Bovio and Frame say, there are certain

9    rights that they're claiming.  If it has been determined

10   that Bovio and Frame's claim to those rights is not valid or

11   appropriate or legitimate, then they have no claim, and it

12   goes away.

13       THE COURT:  It doesn't mean that they can't

14   prosecute it in California and get a different result, does

15   it?

16       MR. ROTH:  They may try that, but, your Honor, I

17   think if it were determined that Bovio and Frame were not

18   the inventors of the side-mounting patent, that would be

19   evidence that would make it, I would say almost impossible

20   for a lawyer to test the Rule 11.

21       THE COURT:  Not impossible.  They say, you know,

22   all kinds of things in Massachusetts that wouldn't happen in

23   California, Lindsay left evidence in that Judge Marshall

24   wouldn't like, all kinds of things would affect the outcome

25   of the suit.

1          MR. RESCH:  Your Honor, there's more pressing

2     concerns, which is they'll be going on at the same time.

3     It's not as if you're going to decide and then somehow we'll

4     have these issues about --

5          THE COURT:  Actually it's more likely it will be

6     decided in California before I get to it.

7          MR. RESCH:  Exactly.

8          THE COURT:  Why don't you speak to the personal

9     jurisdictional question.

10          MR. RESCH:  All right.  Your Honor, the first

11     thing about the personal jurisdictional motion is that in

12     some ways it becomes mooted if you grant the subject matter

13     jurisdiction because the same exact arguments apply to

14     Mr. Bovio, but turning to the personal jurisdiction

15     argument, your Honor, again, the issue is relatively

16     straightforward, and it's LPL's burden to prove personal

17     jurisdiction.  We know that.

18          We also know, which is completely ignored, and, in

19     fact, the opposite is stated in LPL's brief, that this Court

20     might exercise heightened care because Mr. Bovio is a

21     foreign national.  That's in Osaki, (sic) among other cases.

22     It's a well-established principle.  There are two ways we

23     know this, general jurisdiction and specific jurisdiction.

24          Your Honor wrote the Moldflow opinion, so you're

25     quite familiar with this.  All right.  Let's start with

1  general jurisdiction.  It's, first of all, telling that LPL

2  put general jurisdiction, even though analytically and in

3  all the cases it comes first towards the back of the brief,

4  but general jurisdiction requires continuous and systematic

5  contact at the time of the lawsuit.  So, here's that's May,

6  2004.  There's really no evidence of continuous and

7  systematic contacts.  In fact, as Mr. Bovio's declaration or

8  affidavit submitted to the Court makes clear that he severed

9  those contacts in June of '01 with the United States.

10          If you look at cases like Helicopteros, Moldflow,

11  Triwiler, where there is a serious consistency in the

12  context and compare it against the context here, there's no

13  question, and I think in some ways LPL recognizes that

14  because they put it so far back compared to the specific

15  jurisdiction argument.

16          Okay.  Let's turn to specific jurisdiction.

17  Specific jurisdiction is a three-part test, we know that,

18  first is that Mr. Bovio purposely directed his activities at

19  residents of the forum.  And here, your Honor, that's either

20  the forum being Massachusetts or the forum being the

21  United States, depending on whether you go under 4K2.

22          Let's just take the United States, it's broader

23  and they don't satisfy that anyway.  Here's why they don't

24  satisfy the first prong, and it's their burden on the first

25  prong.  Which residence has Mr. Bovio purposely directed his

Page 36

1    activities at in the United States?  They can't point to any

2    because their entire case here, this declaratory judgment

3    case, is about CPT's use of Mr. Bovio's testimony in the

4    California action.

5            That's what this case is about, CPT's use, so,

6    your Honor, in fact, there are no real Bovio context or even

7    actions that underline this case.  It's really CPT's use

8    that's causing the alleged injury.  Even if we say it's

9    Bovio action, those actions were all taken in Italy, all the

10   testimony, the declarations, the deposition that LPL took,

11   it was all in Italy.

12           Even if you say somehow that he's purposefully

13   directing his activities in the California lawsuit at the

14   parties there, well, guess what, the parties there are not

15   U.S. residents.  Neither LPL or CPT are United States

16   residents.  They fail on one.

17           Going to two, the second element is that LPL's

18   alleged injuries arise out of Mr. Bovio's contacts.  The

19   same thing, your Honor, and your Honor quoted that language

20   from the Burger King case in the Moldflow opinion, same

21   exact thing.  The alleged injuries that are present before

22   you in this action that LPL has alleged, and if you look at

23   the complaint, it's very interesting what they've alleged

24   here all relates to CPT's use of Bovio's testimony in the

25   California action.  Thus, there is nothing that arises their

1  alleged injury --

2        THE COURT:  They don't claim an injury, they claim

3  the possibility for threat of a lawsuit.  There's no

4  injury.

5        MR. RESCH:  Well, their alleged injury, I would

6  submit, your Honor, is that really there's a cloud being

7  formed over their patent as a result of CPT's actions, as a

8  result of CPT's use of this testimony.  This cloud is the

9  alleged injury, I think, and that's what the complaint seems

10  to bear out.

11        THE COURT:  Would it be better to say where the

12  controversy arises?  I mean, declaratory judgment statute

13  requires that there be a controversy, and from what kind of

14  contact is there from which the controversy arises?

15        MR. RESCH:  The controversy before you in this

16  declaratory judgment act arises from CPT's use of the Bovio

17  testimony, or, at worse, the Bovio testimony itself.

18  Neither is a Bovio contact with the United States.  CPT's

19  use of the test clearly isn't, and Bovio's testimony all

20  occurred in Italy, okay, so whether you define it as the

21  controversy or the alleged injury, either way, there's no

22  Bovio contact with the United States.

23        And I understand that LPL desperately wants to go

24  back to the inventorship time period.  I understand that.

25  It's not analytically correct under the cases and under the

Page 38

1    language from Burger King, et cetera, but even if you go

2    back there, you know what, your Honor, this invention was

3    conceived in Korea.  It wasn't conceived in the United

4    States, in any event.

5            THE COURT:  How do you know that?

6            MR. RESCH:  Well, that's what both sides are

7    claiming conception in Korea.

8            THE COURT:  I have some question.  Everybody

9    conceived it, could have conceived it on the plane between

10   Seoul and Cambridge.

11           MR. RESCH:  I understand, your Honor.

12           THE COURT:  Where was DEC, in Maynard maybe.

13           MR. RESCH:  Right.

14           THE COURT:  So, the question is, are you talking

15   about what is in somebody's mind and where it is in his

16   mind.

17           MR. RESCH:  Well, the two points, your Honor --

18           THE COURT:  Maybe you don't have to show it, maybe

19   they have to show where they conceived it.

20           MR. RESCH:  Well, the two points, are, one, your

21   Honor, we don't go back to the inventorship time period.

22           THE COURT:  I understand.

23           MR. RESCH:  And the second point is, your Honor,

24   that both parties -- this is not an issue in dispute.  I

25   don't think that they're claiming anyone conceived it in the

1    United States, but even if they do, it doesn't make any

2    difference.

3              Moving onto the third, and perhaps in some ways,

4    let me say this, your Honor, because this is very important

5    that the briefs may not pick up on, which may be a very good

6    purpose for the oral argument.  The reason that we know that

7    it's Mr. Bovio's context with the California action that

8    underlie the personal jurisdiction analysis and not his

9    contacts way back when he was living in Massachusetts is,

10   for example, from the Silent Drive and Red Wing cases which

11   analyze, your Honor, whether personal jurisdiction exists in

12   this type of action where an expressed threat of litigation

13   is sent to another state.

14             For example, your Honor, is it sufficient, those

15   cases looked at, where one party, let's say, in Nevada sends

16   an expressed threat of litigation of patent infringement

17   litigation to a company in Nevada and they try to allege

18   specific jurisdiction, specific personal jurisdiction, over

19   that company based on that letter.  All right, your Honor?

20             THE COURT:  I'm following you.

21             MR. RESCH:  Okay.  What the courts say in that

22   situation is, it satisfies 1 and 2, the first two prongs,

23   that is, it satisfies personally directed at residents in

24   Nevada, because you're sending the letter there, and,

25   secondly, that the claim arises out of that threat, but they

Page 40

1    say that it's still not sufficient under the third

2    reasonable and fairness prong.

3          Why is this so important, because, what they're

4    looking at, the analogy is just like that expressed threat

5    in the Red Wing and Silent Drive cases, so is Mr. Bovio's

6    contact and testimony in the California action.  In those

7    cases, they don't look at the underlying infringement action

8    to see whether or not there will be personal jurisdiction.

9    No, they look at the contact of the threat of the letter to

10   see whether or not there would be personal jurisdiction.

11         Now, in those cases it satisfies the two prongs

12   because the company is very clearly sending the letter and

13   directing, unlike here, as I explained a moment ago,

14   Mr. Bovio is not doing anything in the United States.  It's

15   CPT's actions that they're complaining about, or at worst,

16   Bovio's actions in Italy.  I think that Red Wing/Silent

17   Drive analysis is very interesting in the context to see

18   whether you look at the events now or back then.

19         Moving onto the third and final and perhaps the

20   most important point under specific personal jurisdiction,

21   the reasonableness and fairness.  Your Honor, there are five

22   factors, very clearly, the burden on the defendant.

23   Mr. Bovio is 72 years old.  He is caring for his 77-year old

24   disabled wife in Italy.  Now, I understand that the case law

25   talks about unique circumstances and that it's not just that

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1    he has to come to the lawsuit, or else that would apply to

2    everyone.  Well, you know what, your Honor, this is not a

3    case where the normal, just have to participate in a

4    litigation far from home exists.  There are very unique,

5    special circumstances.

6            THE COURT:  Is he going to testify in California?

7            MR. RESCH:  I don't believe so, your Honor.  I

8    don't believe so.  I don't know the answer to that.

9            THE COURT:  If you're going to raise the

10   inventorship question, how are you going to do that without

11   him in California?

12           MR. RESCH:  Because he's testified by deposition,

13   and they have another day of deposition with him.

14           THE COURT:  And you're going to use the

15   deposition?

16           MR. RESCH:  That is certainly a possibility if

17   Mr. Bovio is unable to come to California to testify as a

18   witness.

19           THE COURT:  I know that's a possibility.

20           MR. RESCH:  Well, your Honor, I can tell your

21   Honor that he is caring for his wife and he is not prepared

22   to come to the United States to defend this action, period.

23           Secondly, the forum state interests, your Honor,

24   these disputes as to Mr. Bovio are between foreign companies

25   and a foreign resident, an italian resident, a Korean

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

Page 42

1  company and a Taiwanese company, and California is already

2  deciding this issue.  What forum state interest can there

3  possibly be in this court hearing this claim over Mr. Bovio?

4  Third, Plaintiff's interest in obtaining relief.  They can

5  obtain the same relief in California, that is, they can

6  especially once --

7          THE COURT:  He says, Mr. Roth says I can't put to

8  rest this claim of Bovio that he invented this technology in

9  California?

10         MR. RESCH:  Right.  Your Honor, I think that's not

11  correct.  That issue, as their brief states, there is actual

12  litigation on the very issue that LPL raises in this Court.

13  That's their brief.  There is actual litigation.  The issue

14  is going to be decided in California, period.

15         Next issue, interstate judicial system's interest,

16  again, it's pending in California.  I won't repeat all the

17  arguments, but the fifth one is interesting, the fifth

18  gestalt factor, social policies of the states.

19         Your Honor, I would think that it should not be a

20  policy that merely by participating as a fact witness in

21  another action should subject you to personal jurisdiction

22  in the United States.  Think about the chilling effect that

23  this will have on foreign residents when called upon to

24  testify in an action pending in the United States.

25         They would have no reason, and it will increase

1  all of the litigation costs for parties in the United States

2  seeking to get the testimony of foreign residents.  This is

3  a clear policy, and, interestingly, your Honor, again, let's

4  take a step back to the Red Wing and Silent Drive cases.

5  They found that it was unreasonable to subject a party to

6  personal jurisdiction where they had expressly threatened

7  litigation into another state.

8          It's unreasonable and unfair in that context.

9  Clearly it's unreasonable and unfair here where all

10  Mr. Bovio has done is provided testimony in this case, so,

11  your Honor, in view of those five, and by the way, and I'll

12  close with this on the reasonableness issue.

13          They're not prejudiced.  They've deposed him.

14  They're going to depose him again.  The issue is alive, so

15  for that reason, your Honor, I think Mr. Bovio clearly

16  satisfies the burden as to the third element and they don't

17  on the first.  I'm happy to field any other questions about

18  whatever you might have.

19          THE COURT:  Mr. Roth, a minute ago you told me

20  that the claim of CPT in California is derivative?

21          MR. ROTH:  Yes.

22          THE COURT:  It's derivative of whatever it is that

23  Mr. Bovio did in Massachusetts; isn't that right?

24          MR. ROTH:  No, it is derivative of a contract they

25  have with HP.  They are confusing subject matter

Page 44

1    jurisdiction, which must be pled, which we did plead in our

2    contract with personal.

3            THE COURT:  It is a contract with whom, CPT?

4            MR. ROTH:  CPT and HP, and HP has rights to

5    obligate Frame and Bovio under contract.

6            THE COURT:  Now, once the case is decided in

7    California because of this contract between CPT and HP,

8    doesn't that put this case to rest?

9            MR. ROTH:  No, not at all.

10           THE COURT:  Why not?

11           MR. ROTH:  Because if they promise not to sue,

12   they can still go out and do anything else that they want to

13   say we are the inventors, don't take a license to those

14   patents because we're the guys who invented, and in the next

15   case where we go to license our patents, the company comes

16   back and says, well, we've got Bovio and Frame, and we say

17   that was litigated with CPT and we won.  They say tough, we

18   get to litigate that again, and they get to keep going.

19           The other things that I'd just like to mention

20   before moving on, the language of the assignment says

21   successors and assigns.  It's not a one-step.  You asked for

22   a case in which a promise not to sue was held to be

23   insufficient, I believe, and Vanguard is a case from the

24   Federal Circuit where they talk about the fact that the mere

25   promise not to sue is insufficient, and you need to look at

1   the totality of the circumstances.  When you look at the

2   totality of the circumstances in this case, what you see is

3   this group of people out there attempting to take down these

4   patents.  One of them is Bovio, one is Frame.

5   THE COURT:  It wasn't just that a promise not to

6   sue but a promise not to sue by the party you were suing?

7   MR. ROTH:  It doesn't matter who the promise not

8   to sue is from, it doesn't matter whether we have sued the

9   party.

10  THE COURT:  What you're saying is that these cases

11  stand for the proposition that even if the party does not

12  sue you, he can't help anybody who is suing?  Isn't that

13  what you're saying?

14  MR. ROTH:  Well, not that he cannot help, he

15  cannot be in the business of affirmatively doing these

16  things.

17  THE COURT:  What's the difference between what I

18  ask and what you're saying?

19  MR. ROTH:  I could envision a scenario where

20  someone against their will, not having agreed to join a

21  group, gets a subpoena, and obviously if you get a subpoena

22  from your Honor's court, you've got to show up, and you have

23  to testify honestly.

24  THE COURT:  Somebody goes to him, and they say,

25  "Michele, what do you know about this?"  And Michele says,

Page 46

1    "Oh, I invented that," and the next question is, I know I'm

2    supposed to be dealing with personal jurisdiction, and I

3    will, and he says, I invented that, and the next question,

4    "Would you be willing to come to California and say that?"

5    He says, "Sure, I invented, I believe in it."

6            MR. ROTH:  He can't do that.  If he came to

7    California and said that as, you know, coming to California,

8    then we wouldn't be here on declaratory judgment.

9            THE COURT:  You're missing my point.  He writes it

10   down, he puts it in an affidavit or declaration, or he

11   allows himself to be deposed because they ask him to do

12   this, he can't do that, you say?

13           MR. ROTH:  If the totality of the circumstances

14   would be evaluated, in this case, he is not acting as an

15   independent witness.  He is not acting as a person who is

16   taking sides in this litigation, he's represented by CPT's

17   counsel.

18           THE COURT:  There's litigation, there's cases that

19   say if you take sides, if you take somebody's side who wants

20   to say these people are not inventors, then you have the

21   right to sue that person, if he takes a side?

22           MR. ROTH:  On the 256 issue, yes.  If he is taking

23   the side and attacking the patents in a public, nonjudicial

24   way, absolutely, or if he joins the group that is doing the

25   attacking, or if he's obligated to be part of that group,

1  whether he wants to or not, he may not want to, but if he's

2  obligated to do it, he is part of that group, and, yes, that

3  is sufficient to give rise to the jurisdiction of this

4  court.

5          THE COURT:  Talk about personal jurisdiction.

6          MR. ROTH:  Your Honor, there was a decision on

7  January 5th from the Federal Circuit that I would like to

8  bring to your attention.  It's electronic.

9          THE COURT:  Was that last week?

10          MR. ROTH:  Yes.  If you'd rather, I'd submit it

11  with a letter.

12          THE COURT:  Tell me what it says.  I'm not in the

13  habit of reading Federal Circuit decisions.  In fact, I'm in

14  the habit of trying to avoid them.

15          MR. ROTH:  It is a case called --

16          THE COURT:  With all due respect to the Federal

17  Circuit.

18          MR. ROTH:  -- Electronics For Imaging versus Coil.

19  We cited an earlier version of that 340 F.3d in our papers.

20  This is a decision from last week addressing the very issue

21  of the five factors that have been talked about in

22  explaining why there are other issues that the consideration

23  of these factors is important as a group, not as individual

24  pieces taken one by one, which is what is being attempted

25  here.

1    It also talks about uncertainties being sufficient

2  to give rise to a DJ action in connection with patents.  The

3  uncertainties need not be uncertainty about your position,

4  it can be uncertainty about where there will be litigation,

5  the cost of it, whether money will need to be reserved for

6  it, et cetera, so I think it is an important explanation

7  here.

8         THE COURT:  What is it you claim that Mr. Bovio

9  did in Massachusetts that gives rise to this?

10         MR. ROTH:  Thank you.  What they talked about in

11  the last year is irrelevant what gives right to this suit.

12  What gives rise to this suit are the actions that Mr. Bovio

13  took in 1996 and 1997 in Massachusetts.  What gives rise to

14  this suit is, is he an inventor of the side-mount

15  technology?  That has nothing to do with anything he said in

16  Italy in 2004.  That has to do with what did he do in

17  Massachusetts in 1996 and 1997.

18         THE COURT:  What do you say he did?

19         MR. ROTH:  Among other things, most critical to

20  this case, is he filed a patent application which they have

21  attached as I believe Exhibit 6 to his declaration.  He

22  filed a patent application in which he claims that he

23  invented side-mounting.  That application has not issued

24  from the patent office.  They say it remains pending, but he

25  asserted in Massachusetts that he was the inventor of

1  side-mounting.  He retained a lawfirm in Massachusetts to

2  prosecute the patent.

3          THE COURT:  I would say he asserted it in

4  Washington, but that's neither here nor there, because isn't

5  that where the assertion really makes a difference in

6  Washington at the patent office?

7          MR. ROTH:  The case law says that you don't

8  necessarily look to where the Government agency is;

9  otherwise all of the patent cases would be in the

10 Eastern District of Virginia, where I live, because that's

11 where the patent office is; you look to where the activities

12 are taking place.  He signed the documents related to this

13 patent application in Massachusetts.  He made his claim in

14 Massachusetts.

15         The fact that those are taken in other places

16 doesn't mean that the critical acts didn't happen in

17 Massachusetts, and the dispute between LPL and Bovio and

18 Frame is not there, you know, what they said in California.

19 That's where it arose.  That's where we had first knowledge

20 that it was a real dispute and it was something that we had

21 never heard of before, but the dispute arises from the

22 actions they took in Massachusetts in claiming to be the

23 inventors of the side-mounting technology in assigning to

24 DEC supposed rights to this invention, in contracting in

25 Massachusetts to obligate themselves in perpetuity to

1  provide assistance to whoever happened to end up with the

2  contract right to attack anybody else's claim that they are

3  the inventors.

4          All of those things happened in Massachusetts, and

5  because the dispute is about inventorship, this is not a

6  tort action against Mr. Bovio or Mr. Frame because of what

7  they said in 2004.

8          This is a declaratory judgment.

9          THE COURT:  May I interrupt you just a minute and

10  ask you, what if I simply took this case and stayed it until

11  California is done?  Why don't I do that?

12          MR. ROTH:  Your Honor, then it would be

13  essentially stayed everywhere because there is no 256 action

14  in California.

15          THE COURT:  In California, it will resolve some of

16  my problems and some of the practical problems in this case,

17  that is, whether Mr. Bovio has to come to Massachusetts,

18  whether there's litigation in Massachusetts that may be at

19  odds with the litigation in California.  The case in

20  California is going on.  I don't have to decide anything; I

21  just take this case and stay it on the grounds that there's

22  another case in California that raises some of these

23  issues.

24          MR. ROTH:  The case in California will not

25  necessarily decide these issues.

1        THE COURT:  I understand.  If something happens in

2   California, I'll know it happens in California, and whatever

3   you say is the result in California, it comes to me after

4   the case is stayed and I can take advantage of all the work

5   done in California.

6        It strikes me that these cases should not proceed

7   no matter what the answer is on jurisdiction and the subject

8   matter and personal jurisdiction, they should not be

9   proceeding along parallel courses.  You have to give me a

10  very strong argument why I should not exercise my discretion

11  no matter what happens to just stay this case until

12  California is concluded.

13       MR. ROTH:  Because the Federal Circuit has

14  indicated that where the action in dismissing for discretion

15  that you have, the case that I mentioned, the Electronics

16  For Imaging, that is not a very broad discretion because you

17  have to consider the consequences.

18       THE COURT:  The case you're talking about and

19  there's another case somewhere pending in which some of the

20  issues are, were alive, and you run the risk of having an

21  inconsistent judgment?

22       MR. ROTH:  This is a case in which in the

23  footnotes, they talk about the fact that there was

24  litigation in Nevada, there was litigation in the Northern

25  District of California, there was litigation in Arizona, and

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

Page 52

1    they talk about the different actions that happened.  This

2    happens to be a reversal of a District Court Judge for

3    dismissing the declaratory judgment claim related to the

4    patent issues.

5                    THE COURT:  How about staying the case?

6                    MR. ROTH:  Your Honor, the stay issue, if you were

7    to determine you have subject matter jurisdiction and you

8    have --

9                    THE COURT:  I can't do anything until I determine

10   I have jurisdiction.

11                   MR. ROTH:  Right.

12                   THE COURT:  But I determine I have jurisdiction

13   and I stay the case.

14                   MR. ROTH:  That is within your discretion;

15   however, we would like an opportunity to be heard on that

16   because that will not address the issues that are in the 256

17   action because Bovio and Frame were not parties in

18   California.

19                   THE COURT:  I understand that.  What that will do

20   is that it gives you a chance to litigate this case in

21   California, and whatever happens in California, you can come

22   back here and litigate the question and quiet Bovio and

23   Frame, for all time?

24                   MR. RESCH:  Can I address the issue?

25                   MR. ROTH:  In the interim, we can't.  We cannot

Page 53

1    for the time that the case is pending and being resolved out

2    in California, we cannot quiet and stay Bovio.  They're not

3    parties to that.  The Court I don't believe would enter an

4    Order as to them to stop supporting these public statements

5    in magazines about a billion dollar claim against our

6    clients.

7             THE COURT:  The fact of the matter, this case is

8    going to proceed after the case in California because the

9    case in California is farther along, and, in fact,

10   everything you say is happening in California will continue

11   to happen in California during the pendency of this case.

12            MR. ROTH:  Your Honor, there was a motion that was

13   heard today, and I don't know what the outcome of it was,

14   but the motion was to require transfer of a number of claims

15   to the arbitration which is going on in New York.  And that

16   transfer motion --

17            THE COURT:  Yet another forum for this case?

18            MR. ROTH:  Because we have no choice, because the

19   contract between DEC and LGE has an arbitration provision

20   that requires things to be arbitrated, but, yes, it is

21   another forum, but part of that motion that was heard by

22   Judge Marshall today -- I don't know whether it was

23   decided -- was to stay proceedings on those claims because

24   under the Federal Arbitration Act, we believe that that is

25   required.

1    So, --

2    THE COURT:  What do you say about the stay?

3    MR. RESCH:  Your Honor, very much opposed to a

4  stay because, as I pointed out, there is no subject matter

5  jurisdiction, in light of the promise not to sue.  I'll hit

6  these points quickly because we've been over them.

7    THE COURT:  I don't want to hear that again.

8    MR. RESCH:  But this is an important point,

9  Mr. Roth represented to the Court that Vanguard is a case

10  where there was a promise.  That is not true, your Honor,

11  that is not true.

12    THE COURT:  Can I just let him finish, please.

13    MR. RESCH:  Sure.

14    THE COURT:  I don't want to go over that again.  I

15  was going to let you speak to the state.

16    MR. RESCH:  Okay, the state.  We're opposed to it

17  for the following quick reasons.

18    THE COURT:  I can't do anything until I have

19  jurisdiction.

20    MR. RESCH:  Two, that doesn't resolve the

21  problems; and third --

22    THE COURT:  But you and Mr. Roth agree, which

23  probably means I'm right.  You agree under that, it doesn't

24  resolve the problem, it means I'm right, but I may be not

25  able to get to it because I don't have jurisdiction.  That's

1    a different question.  Go ahead, Mr. Roth, speak to personal

2    jurisdiction.

3         MR. ROTH:  Personal jurisdiction as to the issue

4    as to Bovio, there is personal jurisdiction because the

5    analysis is as follows, what is the dispute?  The dispute is

6    who is invented side-mounting technology in 1996 and 1997.

7    In order to determine whether the Court has specific

8    jurisdiction, you look at the contacts that Bovio had with

9    Massachusetts at that time as to that issue.

10         THE COURT:  Would you make the same argument if

11   this had happened 30 years ago and Mr. Bovio had been living

12   in Italy for 30 years?

13         MR. ROTH:  Yes, as a matter of law, yes, that is

14   right, and the thing that is at issue there is not whether

15   that is right or wrong, but that has to do with whether

16   there is a statute of limitations.  In a normal case, for

17   example, a car accident that happens in Massachusetts, if

18   somebody moved away before the lawsuit was filed, we

19   wouldn't say we're free and clear, there's no jurisdiction

20   of the court over you.  We would say we would look at when

21   it happened.  Now, the thing that stops it from extending

22   back indefinitely is that there's a statute of limitations

23   in Massachusetts on those kinds of claims.

24         THE COURT:  On what kind of claims?

25         MR. ROTH:  For example, a tort claim involving --

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1          THE COURT:  You say there is a limitation on how

2     long Mr. Bovio can claim being an inventor of this?

3          MR. ROTH:  Your Honor, the Section 256, when you

4     look at it, does not have a statute of limitations.

5     Presumably, there is a point determined in equity at which a

6     person has waited too long, and I would suggest that

7     obviously if the patent has expired, which is 17 years as to

8     some patents, 20 as to another, that there's nothing really

9     there to be disputing.

10          THE COURT:  Let's not make it 30 years, let's make

11    it 12 years, the patent hasn't expired and Mr. Bovio sits

12    quietly in Italy until somebody like CPT comes to him, has

13    that same conversation I mentioned before, do you know

14    anything about this technology, Mr. Bovio?  He says, Yes, I

15    invented it, and then the lawyer says, Well, will you come

16    to California or will you participate in a lawsuit in

17    California by giving us a declaration?  He says, Yes, and

18    whatever he did he did 12 years ago in Massachusetts.

19          MR. ROTH:  Your Honor, as to 256, the issue is

20    where did he make the claim to be the inventor?  He made the

21    claim in Massachusetts when he signed the documents related

22    to the patent application in 1997.

23          If he had filed that patent application in 1992 or

24    1993, to take us back 12 years, it wouldn't change the

25    analysis.  The analysis is still what is the dispute and

1   what are the person's contacts with the forum at the time

2   the dispute arose.  He was working here, he was living here,

3   he signed the application here.  He signed the contract to

4   assign his rights and obligate him to future things, and,

5   clearly, he has by those actions reasonably anticipated that

6   as to that conduct, he could be required to answer for it in

7   the courts in Massachusetts.  We're not trying to take him

8   someplace where he wasn't at that time.  We're trying to

9   take him back to where he was.

10          And as to the issue of conflating the standard for

11  state jurisdiction, even if there's no state jurisdiction

12  because you were to find that his contacts with this

13  particular forum were insufficient, his contacts according

14  to, you know, his counsel are insufficient in California,

15  which is the only other place that there have been contacts,

16  and there will be no place where he can be called to account

17  for this.

18          Under Federal Rule 4K2, it is intended to close

19  that loophole, and that is exactly the language that goes

20  with that provision, to close the loophole that allows

21  people outside the United States to wreak havock in the

22  United States but then say there is no place where I have

23  sufficient contacts with one state to be held accountable.

24          Here, there are lots of contacts over a long

25  period of time, and the continuous and systematic standard

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1   is member.  The things that show that it was continuous and

2   systematic, 36 applications, 36 issued.  Since he moved to

3   Italy, he has signed at least three assignments related to

4   inventions.  He's filed six applications for new patents,

5   since he moved to Italy, and those applications are filed

6   here in the United States.  He has continuous and systematic

7   contact with the United States, and he has all these

8   agreements with all kinds of different companies to support

9   their assignment rights, including assignments to leave

10  attached, where he is obligating specifically to participate

11  in the litigation.

12         So, he has systematic and continuous contacts with

13  the United States, even after leaving to go to Italy.  He

14  didn't sever those relationships, nor did he amend the

15  assignments that he gave that require him to come and

16  participate in litigation.  It's just in this case where CPT

17  doesn't want him to be a party to the litigation and subject

18  to the obligations of parties and he doesn't want to be

19  present here where he chooses not to come.

20         Now, we're not trying to make him come if he has

21  reasons not to come.  That we did not do, back in July, when

22  he was deposed, and we didn't know anything about his wife

23  at that point, but we went to Italy to take his deposition

24  because that's where he was, but the concern we have is

25  highlighted by the documents that Mr. Bovio has provided to

1   his counsel.

2          He provided notebooks that we have had tested, and

3   they show that there were alterations to the critical pages

4   in 1996.  The ink used to say side-mounting is always

5   different in those March, '96 pages than the ink on the rest

6   of the pages.  We need to get, among other things, to see,

7   you know, what's the support for this claim that he invented

8   it?  We want to see the later notebooks and see what's going

9   on with the ink in those.  We've asked them to provide that,

10  and they've said, no, we gave you, you know, what Mr. Bovio

11  gave us, we have no rights to get any more materials from

12  Mr. Bovio.  Mr. Bovio is not a party to this litigation, and

13  they hide behind that screen.

14         If he's a party --

15         THE COURT:  Did you go to Judge Marshall in

16  California and ask that she compel that?

17         MR. ROTH:  He's not a party in California.

18         THE COURT:  But he's prepared a declaration in

19  California, and he's been deposed, he's a witness, and you

20  say this is relevant to an issue in California.  Can you

21  require that they, the lawfirm that represents him, ask her

22  to compel him to produce that as part of the information

23  that a witness in the case is going to be relying on?

24         MR. ROTH:  A witness's obligation, a nonparty

25  witness's obligation to produce materials is dependent on

Page 60

1    the subpoena in the United States.  If you want to force a

2    nonparty witness to give you things, you have to hit him

3    with a subpoena.

4              THE COURT:  I understand that.  I understand

5    exactly how that works.

6              MR. ROTH:  We can't do that in Italy.

7              THE COURT:  I understand that, but you could move

8    before Judge Marshall to exclude his testimony if you don't

9    get it, you can do that, can't you?

10             MR. ROTH:  We did file that kind of motion last

11   summer, and that's why he sat for a deposition, your Honor,

12   because the magistrate judge --

13             THE COURT:  What I'm saying, you're not without

14   remedy in California about these notebooks, you can say I

15   get the notebooks or I move that he be excluded because the

16   notebooks are critical, he relies on the notebooks to make

17   the claim?

18             MR. ROTH:  He doesn't rely on the later notebooks.

19   The later notebooks are where we're going to find out when

20   he stopped using this particular kind of ink.  They don't

21   rely on those later notebooks.  They don't rely on that.

22   That's evidence that helps us, and, therefore, it's not

23   forthcoming, and it's not the kind of thing that they have

24   agreed to produce.  In response to our discovery requests

25   for that very thing, they have put up a stone wall and said,

1    you know, we in this litigation in California do not

2    represent Mr. Bovio, we have no control over him, we can't

3    get those things, blah, blah, blah, because it's not in

4    their interests to get those things.

5              THE COURT:  What do you mean, they've said they

6    don't represent Mr. Bovio?

7              MR. ROTH:  In the California action.  They

8    represent him in connection with this case.

9              THE COURT:  Is that right?

10             MR. RESCH:  Your Honor, let me just point out one

11   thing.  We are now seeing the evil that will come, which is

12   you are now getting involved into a discovery dispute in the

13   California action, which is, as you point out, properly

14   before Judge Marshall, if she wants handle it or how she's

15   going to decide it.  I promise you that there have been

16   numerous motions by both sides on discovery issues.

17             THE COURT:  That really isn't what I just asked

18   you.  Let me see if I can restate the question so you can

19   answer the one I asked you, which is, do you take the

20   position that you represent Bovio here but not in

21   California; is that your position?

22             MR. RESCH:  Your Honor, for the purposes of this

23   hearing, I represent and my lawfirm represents Mr. Bovio.

24   I, honestly, it would be a misrepresentation for me to

25   answer that question because I don't know the outlying

Page 62

1   representations that have been made.

2            THE COURT:  What about Frame?  Do you represent

3   him?

4            MR. RESCH:  Just to finish, your Honor, I myself,

5   personally, Michael Resch, I don't know the representations

6   that were made in the underlying California action on this

7   issue.

8            THE COURT:  Do you represent Frame in California?

9            MR. RESCH:  I and the lawfirm represent him here.

10  I thought that we represented him, thought at the

11  deposition, but if Mr. Roth is representing to the Court

12  that we did not represent him at the deposition.  I don't

13  believe that's true.  Let me just say this, your Honor --

14           THE COURT:  Let me speak because the reporter

15  can't take both of us, and I think you should stop if I

16  start.  That's my view.

17           MR. RESCH:  Yes, your Honor, I apologize.

18           THE COURT:  I thought I read in the papers in this

19  case that Mr. Bovio asserted attorney-client privilege and

20  that your firm was his attorney in California?

21           MR. RESCH:  That's what I recall reading as well,

22  your Honor.  I'm just suggesting -- I believe that's true.

23  I'm suggesting it would be careless of me making the

24  representation not having the familiarity.  My understanding

25  is how I asserted attorney-client privilege with respect to

Page 63

1  that case.  I don't understand the basis for Mr. Roth's

2  statement, but I don't want to mislead the Court in any

3  way.

4          THE COURT:  What is the basis?

5          MR. ROTH:  They did ask for the deposition.  We

6  asked for the later notebooks and they do not represent,

7  that, you know, we cannot get those materials in California

8  because he is not a party and those documents are not in the

9  possession, custody or control of CPT and they are not in

10  the possession or control of CPT's counsel.

11          THE COURT:  Let's just say if you were to take

12  this agreement that you wave in front of me about this

13  assignment, about how he has to cooperate, collaborate,

14  don't you think Judge Marshall would say to you you're

15  entitled to either of those documents or to have that

16  witness excluded?

17          MR. ROTH:  I don't know, your Honor.

18          THE COURT:  I guess what I am asking you, why am I

19  doing all this because it strikes me she has all this in her

20  care out there?

21          MR. ROTH:  Your Honor, she does not have Bovio and

22  Frame under her umbrella.

23          THE COURT:  I understand that.  Why don't you

24  finish your discussion about personal jurisdiction.

25          MR. ROTH:  The issues for purposes of the federal

1    rule jurisdiction are that he does have contacts with the

2    United States that are sufficient to make it reasonable and

3    fair for him to appear in this court; No. 1.  He has chosen

4    to participate in some litigation in the United States.  He

5    chose the California litigation where he is not a party.

6            All of the contacts with Massachusetts back in the

7    1990's up to 2000 and the contacts in Texas in 2001 are

8    relevant.  His contacts with the PTO since moving to Italy

9    are particularly relevant.  He has pending applications and

10   pending obligations related to U.S. patents, and he has

11   miscellaneous contacts with the United States like accounts,

12   business investigations and pursuits, and it is not unfair

13   for him to be asked, required to appear in this litigation

14   where the litigation relates directly to assertions that he

15   made in Massachusetts about the very issue here, which is,

16   who is the inventor or who are the inventors.

17           THE COURT:  Is it fair to make him party to a

18   litigation where he has to hire a lawyer, where the issue

19   might be in California; is that fair?

20           MR. ROTH:  I don't think it's unfair to require

21   him to ascertain how he's going to be represented and how he

22   is represented in this case is CPT represents him, and CPT

23   is claiming a common interest with him, so that everything

24   that CPT and Bovio and CPT and Frame discuss is supposedly

25   privileged.  I believe that they are providing the

1    representation and that Bovio is not incurring costs.

2          I believe that he is being reimbursed for his

3    expenses.  I don't know about his time but for his expenses

4    in connection with participating in California.  I don't

5    know whether CPT also is paying for this, but he is being

6    represented by the same counsel who are claiming a privilege

7    that goes beyond communications with him and gets to

8    communications between Bovio and HP or between Bovio and

9    CPT's lawyers before there was a representation of Bovio

10   himself.  So I don't think the cost issue is relevant, your

11   Honor.

12         THE COURT:  Are you representing LPL in

13   California?

14         MR. ROTH:  I am.

15         THE COURT:  I could have a situation where I need

16   you here and Judge Marshall needs you out in California at

17   the same time.

18         MR. ROTH:  I'm not the only person representing

19   LPL.  I'm one member of a team.  As I said, there are

20   hearings going on in California, three of them, and --

21         THE COURT:  I'll take a recess and see if I can

22   come to some conclusions about this.  If I can't, I will

23   take the matter under advisement.

24         MR. RESCH:  May I have five minutes?

25         THE COURT:  Is there going to be anything to say

1    you have not said before?

2            MR. RESCH:  Yes, your Honor, I promise to stay

3    under five minutes.

4            THE COURT:  You have two minutes to tell me

5    everything you need to tell me.  It's quarter of five.  Two

6    minutes you have.

7            MR. RESCH:  First, the Vanguard case does not --

8            THE COURT:  You said that.

9            MR. RESCH:  Second, the reason that you look at

10   the time frame as opposed to back in the '90's, if you

11   perform a simple but for analysis as to why we're cleared

12   but for the time frame now we wouldn't be here, but you

13   could still get rid of all the conduct back in the '90's and

14   we'd still be here as long as CPT is testifying.  The

15   assignments issue, of course, the personal jurisdiction is

16   if we go to subject of jurisdiction.

17           THE COURT:  Why is it moot?

18           MR. RESCH:  Because, your Honor, Mr. Bovio is

19   prepared to make the same representation should your Honor

20   grant the subject matter jurisdiction as Mr. Frame made.

21   And, your Honor, the last thing I'll just say, and it's

22   indicative of a lot of things we talked about today, when

23   you pressed Mr. Roth on the attorney-client issue and

24   whether or not we were truly claiming that we weren't

25   representing, I didn't hear him respond affirmatively to

1   you.

2           What he said, we were making other claims, he's

3   not appeared and things like that.  I didn't hear him come

4   back to your claim we were claiming that we didn't represent

5   him.  I'll leave it at that.  There are numerous things I

6   can point to as well, but the bottom line, Mr. Bovio does

7   not want him to be here.  It's not that CPT doesn't want him

8   to be here.  I thank you.

9           THE COURT:  I'll take a short recess and see if I

10  can come to some conclusions.

11          (A recess was taken.)

12          THE CLERK:  All rise.

13          THE COURT:  I think I'm going to address the

14  motion of Mr. Frame first.  The motion raises the question

15  of whether the Court has jurisdiction.  The Plaintiff in

16  this case, which asserts jurisdiction, bears the burden of

17  establishing if there is jurisdiction.

18          Under the declaratory judgment act, one of the

19  requirements for jurisdiction is that there be an actual

20  controversy, and the Federal Circuit has said that in

21  general the presence of an actual controversy within the

22  meaning of the statute, that is the declaratory judgment

23  act, depends on whether the facts alleged under all the

24  circumstances show that there's a substantial controversy

25  between the parties having adverse legal interests of

1  sufficient immediacy and reality to warrant the issuance of

2  a declaratory judgment action, and in the particular

3  circumstances of this case, the Plaintiff must show that it

4  has a recognized interest in a patent that would be

5  adversely affected by an action brought under 35 U.S.C.,

6  Section 256 and another party with a right to bring an

7  action under that statute has created in the declaratory

8  claim a reasonable apprehension that it will do so.

9          The first prong of that requirement has been met.

10 The Plaintiff has a recognized interest in that it holds the

11 patents at issue in this case, and so the question for me is

12 whether the party being sued has a right to bring an action

13 under Section 256 such that a reasonable apprehension is

14 created and has done something to create a reasonable act of

15 apprehension that he will bring an action.

16         I'm not clear, it's not clear to me that Mr. Frame

17 retains any right to bring an action.  He does not own the

18 technology involved, nor does he presently have a legal

19 interest in that technology having assigned that technology

20 to another person, another party, and the question is

21 whether his participation in the lawsuits in California is

22 of a nature that indicates to a reasonable person in the

23 position of the Plaintiff that Mr. Frame will sue, and I

24 don't think so.

25         I don't think that in light of Mr. Frame's

Page 69

1  unequivocal declaration in the letter and in this court that

2  he will not sue and does not intend to sue under that

3  statute to enforce any right that he has, assuming he has

4  that right, that there's a reasonable apprehension that

5  Mr. Frame will sue.

6          That he is assisting some other party is not

7  dispositive.  It may be relevant if that participation is a

8  sham for a suit by Mr. Frame, but that does not appear from

9  the record in this case.  It appears that he is assisting

10 that litigation.  He may be voluntarily assisting in that

11 litigation.  He may be providing evidence in that

12 litigation, but I've seen no case in which a person who

13 provides evidence in a case creates a reasonable

14 apprehension that that party has a right under Section 256

15 of such force that it would create a probable apprehension

16 that he will sue to enforce that right.

17         Accordingly, the motion to dismiss brought by

18 Mr. Frame, for lack of subject matter, is granted.  Now, I

19 am advised by Mr. Resch that Mr. Bovio is prepared to make

20 that same kind of claim.  Is that right?

21         MR. RESCH:  Yes, your Honor, and, in fact, we have

22 a letter prepared to Mr. Roth which is identical in

23 substance to the letter that Mr. Frame sent to or we on

24 behalf of Mr. Frame sent to Mr. Roth.  I'm prepared to make

25 the same representation.

1          THE COURT:  Why don't you read it.  I'm delivering

2     it now to counsel.

3          MR. RESCH:  "I write in behalf of my client,

4     Michele B. Bovio, concerning L.G. Philips LCD Company

5     Limited's (LPL) declaratory judgment action against him

6     pending in the District of Massachusetts.

7          Your Honor, if I could give a copy to the court

8     reporter, it might be easier and to you as well.

9          THE COURT:  Why don't you read it and she can have

10    it and correct it.

11         MR. RESCH:  Okay.  "As you know, on September 30,

12    1997, well prior to LPL's lawsuit, Mr. Bovio "assigned,

13    transferred and conveyed" to Digital Equipment Corporation,

14    DEC, his entire right, title and interest together with the

15    benefits and privileges in and to his inventions and

16    discoveries set forth in the Frame/Bovio side-mounted LCD

17    patent application, Serial No. 08/822,438 filed on March 21,

18    1997, including all of his rights, title and interest in the

19    LCD side-mounting feature disclosed therein."

20         "As you also know, Mr. Bovio has submitted a

21    declaration in which he declared under penalty of perjury

22    that he had also assigned to DEC his rights, title and

23    interest in the same inventions as embodied in all other

24    patent applications filed or to be filed worldwide, and that

25    any ownership rights he has in the side-mount patents were

1    duly assigned to DEC pursuant to the September 30th, 1997

2    assignment."

3              "Thus, Mr. Bovio has no interest in the side-mount

4    patents, and there is no reason to believe that he would sue

5    LPL on those patents or that he would have standing to do

6    so.  More importantly, however, Mr. Bovio has never

7    threatened to sue LPL to correct inventorship on the

8    side-mount patents.  This letter is to advise you that

9    Mr. Bovio will not sue LPL to correct inventorship on the

10   side-mount patents."

11             "Specifically, Mr. Bovio will not assert or

12   threaten to assert a claim under 35 U.S.C., Section 256 for

13   correction of inventorship to name him as an inventor of the

14   side-mount patents.  Although LPL had no reason to believe

15   that Mr. Bovio would sue on the Side-Mount Patent at the

16   time it filed the Massachusetts action, LPL clearly knows

17   now that Mr. Bovio will not sue LPL to correct inventorship

18   on the patents.  Accordingly, there's no basis for LPL to

19   pursue its declaratory judgment claim against Mr. Bovio, and

20   LPL should dismiss that claim as soon as possible."

21             "Nothing contained in this letter shall be deemed

22   as a waiver of Mr. Bovio's right to contest personal

23   jurisdiction in the declaratory judgment action pending in

24   the District of Massachusetts or in any subsequent action."

25             THE COURT:  This is another unequivocal statement

1  on behalf of Mr. Bovio that he does not intend to sue?

2         MR. RESCH:  Yes, your Honor.

3         THE COURT:  I think that, in fact, resolves this

4  matter because I think the same rule would apply with

5  respect to Mr. Frame would apply to Mr. Bovio.  I will say,

6  although I don't think I have to say, I have some questions

7  about whether jurisdiction, personal jurisdiction, would lie

8  against Mr. Bovio in Massachusetts.

9         The constitutional requirement is of specific

10  jurisdiction, and the Plaintiff must show that the

11  defendant, Mr. Bovio, directed his activities at residents

12  of Massachusetts and that this action arises out of his

13  contacts with Massachusetts, and if those two requirements

14  are met, whether assertion of personal jurisdiction in

15  Massachusetts is reasonable and fair.

16         I think that there's some real question, which I

17  don't have to resolve, about the purpose for availment

18  prong.  The Federal Circuit has defined that purpose for

19  availment prong in this manner:  The circuit has said the

20  purposeful availment prong of the jurisdictional text

21  investigates whether the defendant benefited from his

22  contacts with the form that made jurisdiction foreseeable.

23         And what I see here is that the defendant,

24  Mr. Bovio, assigned what rights he had in the technology in

25  question to DEC.  It's not clear what benefit he got.  I

1    assume the assignment was for some consideration, but it's

2    not clear that he got some benefit from that contact, if

3    that's the contact being sued on, the patent is sufficient.

4            So, I think that's a weak prong.  That makes the

5    second one weak, and it gives strength to the Gestalt

6    factor, the third factor, the fair and reasonable elements,

7    and I take into account all of the considerations that had

8    to do with that what the First Circuit has called the

9    Gestalt factors, the Defendant's burden of appearing, the

10   form states interest in adjudicating the dispute, the

11   Plaintiff's interest in obtaining convenient effective

12   relief, the judicial system's interest in obtaining the most

13   effective resolution of the controversy and the common

14   interests of all sovereigns promoting substantive social

15   policies.

16           The burden on the defendant in this case is

17   substantial in view of his age and the situation of his wife

18   and the fact that he is a resident and apparently a citizen

19   of a foreign country of Italy.  It's not clear what interest

20   Massachusetts has in adjudicating this dispute since no one

21   currently lives here and no particular interest, no interest

22   of a current Massachusetts citizen, not even DEC is at issue

23   in this case.

24           The question of convenient and effective relief is

25   at best unclear since the issue of inventorship is arising

1   in the California litigation.  In the California litigation,

2   I expect that some resolution of that issue will be reached.

3   It is true, it may not bind Mr. Bovio, but if a resolution

4   were to take place here, it wouldn't bind the parties, the

5   defendant parties in California.

6        The fourth prong is the judicial system's interest

7   in obtaining a most effective resolution of the controversy

8   strikes me that that, too, is at best a wash, since the most

9   effective resolution is likely to be California, but even if

10  not all the controversy is resolved in California, not all

11  of it will be resolved in Massachusetts, and I think that

12  speaks also to the fifth prong, the common interest of all

13  sovereigns in promoting substantive policies.

14       I don't know that there are any particular

15  policies of Massachusetts or of California that are at

16  stake.  The question of whether there is jurisdiction in the

17  United States under the Rule 4K2 is a separate question

18  which I am not going to venture to speak to this question at

19  this moment because I don't have to.  All I'm saying is I

20  don't think there's jurisdiction in Massachusetts under the

21  Burger King test.

22       So, my resolution of the issues is as follows:

23  The motion of Mr. Frame to dismiss for lack of subject

24  matter jurisdiction was granted, and I'm going to find as

25  moot the motion, the personal jurisdiction motion of

1    Mr. Bovio in light of the fact that there is not subject

2    matter jurisdiction of Mr. Frame, and Mr. Bovio is in the

3    same position.   Thank you.

4              MR. RESCH:   Thank you, your Honor.

5              (Whereupon, the hearing was adjourned at

6    5:20 p.m.)

7                   C E R T I F I C A T E

8    UNITED STATES DISTRICT COURT )

9    DISTRICT OF MASSACHUSETTS     )

10   CITY OF BOSTON                )

11             I, Valerie A. O'Hara, Registered Professional

12   Reporter, do hereby certify that the foregoing transcript

13   was recorded by me stenographically at the time and place

14   aforesaid in No. 11076-RCL, In Re:  L.G. PHILIPS LCD., CO.

15   LTD vs. MICHELE B. BOVIO and ROBERT C. FRAME and thereafter

16   by me reduced to typewriting and is a true and accurate

17   record of the proceedings.

18             In witness whereof, I have hereunto set my hand

19   this 14th day of January, 2005.

20

21             _____

22             VALERIE A. O'HARA

23             REGISTERED PROFESSIONAL REPORTER

24

25