# EXHIBIT C

Case 1:05-cv-00400-JJF    Document 7-3    Filed 08/04/2005    Page 1 of 16

Not Reported in F.Supp.  
Not Reported in F.Supp., 1993 WL 293896  
**(Cite as: Not Reported in F.Supp.)**

Page 1

Not Reported in F.Supp., 1993 WL 293896  
Briefs and Other Related Documents  
Only the Westlaw citation is currently available.  
United States District Court,E.D. Pennsylvania.  
Sonya BARRISTER, Plaintiff,  
v.  
WENDY'S INTERNATIONAL, INC., Bea Kiersznowski, Isabella Harrison, and Trooper Craig Thomas, Defendants.  
**No. CIV. A. 92-7262.**

July 30, 1993.

*MEMORANDUM*

REED.

I. INTRODUCTION

**\*1** This case stems from the investigation and criminal prosecution of plaintiff Sonya Barrister ("Barrister") for her purported theft of deposit slips and rolled change from the store safe of the New Castle, Delaware location of defendant Wendy's International, Inc. ("Wendy's"). Plaintiff asserts a claim of malicious prosecution against all defendants under 42 U.S.C. § § 1983 and 1988 and also charges them with violations of applicable state law.

Defendant Trooper Craig Thomas ("Thomas") has filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6) (Document No. 7). Jurisdiction is predicated upon the existence of a federal question under 42 U.S.C. § § 1983 and 1988, for violations of the plaintiff's civil rights, and 28 U.S.C. § 1343. Upon consideration of the motion and plaintiff's response thereto, and for the reasons which follow, the motion of defendant Thomas shall be denied.

II. FACTUAL BACKGROUND

Plaintiff makes the following factual allegations in her complaint.

Plaintiff resides at 702 Trevino Road, Falls Church, Virginia, but was a Pennsylvania resident for the period she was employed by defendant Wendy's. Wendy's is a fast-food chain with store locations and substantial business contacts throughout the Delaware Valley. Defendants Bea Kiersznowski ("Kiersznowski") and Isabella Harrison ("Harrison") were at all times material to this action managerial employees of Wendy's. At all relevant times, defendant Thomas was a Delaware State Trooper acting under color of state law and authority.

Plaintiff was hired as an Assistant Manager for Wendy's in October 1989, working at various locations throughout the Delaware Valley and earning approximately $23,000 per year. She frequently worked at the store in Broomall, Pennsylvania.

Around April 22, 1990, she began working as a temporary fill-in Assistant Manager at the store on Dupont Highway in New Castle, Delaware. On the evening of April 27, 1990, plaintiff collected the daily receipts, filled out various paperwork, and, as was normal and customary, placed the locked cash bag and cashiers's drawers in the safe at the end of the night.

Early in the morning on April 28, 1990, plaintiff was awakened by a phone call from an unidentified male who told her not to come to work the next day because she had been fired from her job at Wendy's. Unbeknownst to plaintiff, Andy Lamonica ("Lamonica"), a fellow Wendy's employee, opened the New Castle store on the morning of April 28, 1990 and discovered that the cash bag, containing some rolled change and deposit slips, was missing from the safe. Neither the store nor the safe appeared to have been broken into. Lamonica reported the incident to his supervisor, defendant Kiersznowski, who in turn notified her supervisor, defendant Harrison. Kiersznowski instructed Lamonica to contact the police.

**\*2** The police arrived at the Dupont Highway store and defendant Thomas discussed the incident with Kiersznowski. Kiersznowski told Thomas that she, rather than Lamonica, had opened the store that morning and discovered that money was missing from the safe. She also told Thomas that plaintiff was due in to work that morning but failed to report in or call. Furthermore, plaintiff claims Kiersznowski

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1993 WL 293896  
**(Cite as: Not Reported in F.Supp.)**

Page 2

falsely reported that plaintiff had been transferred to the New Castle store from the Broomall store because plaintiff was under investigation in Broomall for theft.

In addition, plaintiff asserts that Kiersznowski did not inform Thomas that numerous other people besides plaintiff had keys and thus access to the store and to the safe. Plaintiff also alleges that Thomas did not investigate who had access to the store and the safe, nor did he speak with Lamonica, plaintiff, or anyone else to find out their version of the events surrounding the theft.

Plaintiff claims a warrant was issued for her arrest based solely on the foregoing inaccurate information from Kiersznowski and Thomas. Plaintiff was unaware that such a warrant had been issued because, due to her new job working for Greyhound, she was rarely home. At that time, plaintiff continued to occupy the same residence as when she worked for Wendy's.

A few weeks later, plaintiff went into Wendy's main office and spoke with Harrison and Tom Funderbird ("Funderbird"), a Human Resources officer, concerning her final paycheck, which she never received. She told them that she was working for Greyhound and she confirmed her correct address for them. They told her that the paycheck was not mailed to her because it did not list her correct address. At that time, plaintiff also informed them of the phone call she received on the morning of April 29, 1990 FN1 telling her not to come back to work. Neither Harrison nor Funderbird mentioned anything to her about the theft or the outstanding warrant for her arrest. Plaintiff subsequently mailed her keys and uniforms to Harrison along with a letter.

Still unaware of the outstanding warrant for her arrest, plaintiff returned to Wendy's headquarters in King of Prussia, Pennsylvania in April 1991 to inquire about her year-end tax information, which she had not received. She was told that the information had not been sent because headquarters did not have her correct social security number listed on the forms and that headquarters wanted proof of her actual number. Plaintiff provided the requested proof.

Plaintiff first became aware of the warrant for her arrest in June 1991, and, immediately upon learning of it, she turned herself in to the Wilmington, Delaware police.

Plaintiff was tried and acquitted of the theft charges in May 1992. Neither Kiersznowski nor Thomas testified at the trial. Plaintiff claims Harrison incorrectly testified at the trial that Lamonica had tried to call plaintiff on the morning after the theft but received no response. Plaintiff also asserts Harrison incorrectly testified that she never attempted to confirm plaintiff's correct address or phone number after the day of the incident, despite the fact that she knew where plaintiff was living and was also aware that she and Kiersznowski had specifically implied to Thomas that plaintiff had moved away with no forwarding address because of plaintiff's guilt in the theft. Lastly, plaintiff contends that Harrison incorrectly testified that plaintiff had stolen keys to the Broomall store even though Harrison knew or should have known that this had not happened.

**\*3** Plaintiff claims she was injured as a direct and proximate result of the knowingly false and incomplete information given by defendants Kiersznowski and Harrison to the police, and the lack of adequate police investigation by defendant Thomas. She was prosecuted for felony theft, which caused her to pay significant attorney's fees and to lose income from work. She also claims to have suffered damage to her reputation and self-esteem, as well as emotional distress and loss of life's pleasures.

Plaintiff alleges that defendants Kiersznowski and Harrison maliciously instituted, promoted, and participated in her prosecution by providing knowingly false and incomplete information about plaintiff and the theft to police and prosecutors. Plaintiff additionally asserts that defendant Thomas acted maliciously and without sufficient probable cause in initiating criminal proceedings against her, because he failed to adequately investigate the theft but nevertheless arrested and prosecuted her based on the information provided by defendants Kiersznowski and Harrison, which he knew or should have known was false. Plaintiff contends that the defendants acted maliciously with the intent to deprive her of equal protection of the law and her constitutional rights by arresting and charging her in this fashion. Plaintiff requests damages in excess of $15,000.

### III. DISCUSSION

A. The Standards of Review

under Rules 12(b)(1) and 12(b)(6)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1993 WL 293896  
**(Cite as: Not Reported in F.Supp.)**

Page 3

Defendant Thomas has mounted a two-pronged attack upon plaintiff's complaint in his motion to dismiss, arguing that he is entitled to dismissal of plaintiff's action against him under Rule 12(b)(1) or, alternatively, Rule 12(b)(6).

Thomas initially attacks this Court's subject matter jurisdiction under Rule 12(b)(1). The leading Third Circuit case explaining the standard of review for 12(b)(1) attacks on a court's jurisdiction is *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884 (3d Cir.1977). In *Mortensen,* the court of appeals noted that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can take two (2) forms: it can attack a complaint on its face, known as a "facial attack," or it can attack the existence of subject matter jurisdiction in fact, commonly referred to as a "factual attack." *Id.* at 891.

The court of appeals in *Mortensen* explained further that the distinction between a facial attack and a factual attack is significant. In reviewing a facial attack, a court must consider the allegations of the complaint as true, making all reasonable inferences in plaintiff's favor. *Mortensen,* 549 F.2d at 891. In a factual attack, however, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." *Id.*

The burden of proving the existence of the court's subject matter jurisdiction rests with the plaintiff. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* 111 S.Ct. 2839 (1991) ; *Donio v. United States,* 746 F.Supp. 500, 504 (D.N.J.1990) (citing *Gibbs v. Buick,* 307 U.S. 66, 72 (1939) ; *Mortensen,* 549 F.2d at 891). "Trial judges enjoy substantial procedural flexibility in handling Rule 12(b)(1) motions." *Berardi v. Swanson Memorial Lodge,* 920 F.2d 198, 200 (3d Cir.1990) (citing *Land v. Dollar,* 330 U.S. 731, 735 n. 4 (1947)).

**\*4** Decisions of the Court of Appeals for the Third Circuit and other courts of appeals following *Mortensen* have repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits under 12(b)(6). This occurs when the arguments raised in connection with the jurisdictional motion involve questions on the merits, such as the truth of the facts alleged in the complaint and their legal sufficiency. *See Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277 (3d Cir.1993) ; *Kehr Packages, Inc.,* 926 F.2d at 1408-09; *Boyle v. Governor's Veterans Outreach and Assistance Ctr.,* 925 F.2d 71, 74 (3d Cir.1991) ; *Holland/Blue Streak v. Barthelemy,* 849 F.2d 987, 988-89 (5th Cir.1988) ; *Kulick v. Pocono Downs Racing Ass'n,* 816 F.2d 895, 897-99 (3d Cir.1987) ; *Malak v. Associated Physicians, Inc.* 784 F.2d 277, 279-80 (7th Cir.1986).

The standards of review under Rule 12(b)(1) and Rule 12(b)(6) are quite different. A federal question may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) only if it is " 'made solely for the purpose of obtaining jurisdiction,' " or is " 'wholly insubstantial and frivolous.' " *Kulick,* 816 F.2d at 898 (quoting *Bell v. Hood,* 327 U.S. 678, 682-83 (1946)). FN2 This test does not permit a court "to prejudge the facts alleged in the complaint, however, for a court may dismiss for lack of jurisdiction only if the claims are 'insubstantial on their face.' " *Id.* (quoting *Hagans v. Lavine,* 415 U.S. 528, 542 n. 10 (1974)). Dismissal for lack of subject matter jurisdiction is not warranted simply because the legal theory alleged is probably false; it is appropriate only where the federal claim is " 'so insubstantial, implausible, foreclosed by prior [court] decisions ..., or otherwise completely devoid of merit as not to involve a federal controversy.' " *Id.* at 899 (quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666 (1974)).

By contrast, the standard governing a Rule 12(b)(6) motion to dismiss for failure to state a claim is not as constrained as the Rule 12(b)(1) standard of review just described. A federal claim being reviewed under Rule 12(b)(6) does not have to be "wholly insubstantial" to be dismissed. *Kehr Packages, Inc.,* 926 F.2d at 1409. " 'The threshold to withstand a motion to dismiss under [Rule] 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion.' " *Id.* (quoting *Lunderstadt v. Colafella,* 885 F.2d 66, 70 (3d Cir.1989)). As the court of appeals recently stated,

> "[w]hether the complaint states a cause of action on which relief could be granted is a question of law and ... it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction."

**\*5** *Growth Horizons, Inc.,* 983 F.2d at 1280 (quoting *Bell v. Hood,* 327 U.S. 678, 682 (1946)). Therefore, it is proper for the court to initially rule on the motion to dismiss under Rule 12(b)(1) and then, if the court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1993 WL 293896  
**(Cite as: Not Reported in F.Supp.)**

Page 4

determines that it has subject matter jurisdiction over the case, it should review a jointly filed motion to dismiss under Rule 12(b)(6).

In reviewing a motion under Rule 12(b)(6), the court must accept " 'as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them.' " *Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392, 1394-95 (3d Cir.1991) (quoting *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990)). Dismissal is allowed for failure to state a claim only in those instances where it is clear that no relief could be granted under any set of facts that could be proved. *Id.* at 1395.

B. Thomas's Motion to Dismiss under Rule

*12(b)(1) for Lack of Subject Matter Jurisdiction*

As noted above, defendant Thomas initially attacks this Court's subject matter jurisdiction over the instant action. Although he failed to label his motion as either a factual attack or a facial attack, it is clear that he chose the latter approach, because he concentrates on challenging the federal cause of action alleged in the complaint and argues that this claim is, as a matter of law, simply not cognizable under the Constitution, laws, or treaties of the United States. Relying upon the broad procedural flexibility I am accorded in reviewing a motion made pursuant to Rule 12(b)(1), I shall focus on the allegations contained in plaintiff's complaint, making all reasonable inferences in her favor, and determine whether her claim is " 'so insubstantial, implausible, foreclosed by prior decisions ..., or otherwise completely devoid of merit as not to involve a federal controversy.' " *Kulick,* 816 F.2d at 899 (citation omitted).

Plaintiff alleges that this Court has subject matter jurisdiction over her claim because her complaint presents a federal question, specifically, whether Thomas violated her constitutional rights pursuant to 42 U.S.C. § 1983 when he failed to properly investigate the theft and proceeded to arrest and prosecute plaintiff for the theft based on false information. Thomas challenges plaintiff's jurisdictional allegation with two distinct arguments. First, he charges that plaintiff is suing him in his official capacity and, therefore, that the State of Delaware is the real party in interest to her claim. Second, Thomas asserts that he is entitled to qualified immunity from suit because he performed the actions in question in his official capacity as a Delaware state trooper and under color of state law. He maintains that plaintiff's allegations are insufficient to nullify such immunity and, therefore, that this immunity voids any jurisdiction which this Court may try to exercise over him.

1. Thomas's Capacity

In support of his argument that this Court does not have subject matter jurisdiction over plaintiff's claim, Thomas first claims that plaintiff is suing him in his official capacity and, therefore, that the State of Delaware is the real party in interest to plaintiff's suit. This argument is unavailing. Nowhere in plaintiff's complaint does she allege that she is suing Thomas in his official capacity as a Delaware state trooper. Even though Thomas was acting in his official capacity when he performed the acts which plaintiff claims violated her constitutional rights, I cannot assume that plaintiff is suing him in that official capacity. It is a settled rule of law that the capacity in which a state official is sued does not necessarily refer to the capacity in which his act was performed. *Hafer v. Melo,* 112 S.Ct. 358, 362 (1991). Rather, a plaintiff is free to choose the capacity in which she sues a state officer and may select either a personal-capacity suit, brought against the individual officer, or an official-capacity suit, brought against the state itself. *Id.*

*6 In plaintiff's response to Thomas's motion to dismiss, she suggests that she is suing Thomas in his personal capacity. Plaintiff's Response to Defendant Trooper Thomas's Motion to Dismiss ("Response") at 1-2. She declares that her complaint does not state that Thomas is being sued in his official capacity. *Id.* at 1. In addition, she is seeking monetary relief, which is generally not available in an official-capacity suit. *Hadi v. Horn,* 830 F.2d 779, 783 (7th Cir.1987). These factors lead me to infer that plaintiff intended to sue Thomas in his personal capacity.

Additionally, plaintiff's allegations are insufficient to support an official-capacity action against Thomas. In *Kentucky v. Graham,* 473 U.S. 159 (1985), the Supreme Court compared the requirements for establishing liability in personal-capacity and official-capacity suits. *Graham,* 473 U.S. at 165-168. Personal liability may be established merely by showing that "the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166. More is required, however, to establish liability in an official-capacity action, as a plaintiff must also

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00400-JJF     Document 7-3     Filed 08/04/2005     Page 6 of 16

Not Reported in F.Supp.                                                        Page 5
Not Reported in F.Supp., 1993 WL 293896
**(Cite as: Not Reported in F.Supp.)**

show that the employing government entity was a " 'moving force' " behind the action causing the deprivation. *Id.*

Plaintiff easily meets the criteria established in *Graham* for a personal-capacity suit against Thomas. She alleges that at all times material to this action, Thomas was acting "under color of state law and authority." Complaint at ¶ 2. Plaintiff also contends that Thomas deprived her of equal protection under the law and violated her constitutional rights by failing to adequately investigate the theft and subsequently arresting and charging her with the theft. *Id.* at ¶¶ 30-31.

Plaintiff's allegations, however, do not meet the criteria for official-capacity liability. Nowhere, either in her complaint or in her response to Thomas's motion, does plaintiff allege or intimate that the State of Delaware was a moving force behind the alleged deprivation of her constitutional rights. The absence of such an assertion supports plaintiff's contention that she did not intend to sue Thomas in his official capacity and thus bring suit against the State of Delaware. Although Thomas correctly notes that the Eleventh Amendment will bar a suit against a named official in an official-capacity suit, because, in such a suit, the state is the real party in interest, the Eleventh Amendment will not shield Thomas in this action, because plaintiff Barrister elected to sue him in his personal capacity.

Contrary to Thomas's argument that plaintiff is suing him in his official capacity, making the State of Delaware the real party in interest to her claim, I find that as a matter of right plaintiff elected to sue Thomas in his personal capacity. Accordingly, I hold that this Court does not lack subject matter jurisdiction over the instant action.

2. Thomas's Qualified Immunity

**\*7** As an alternative argument to dismiss plaintiff's claim under Rule 12(b)(1), Thomas contends that he is entitled to qualified immunity from liability under the Eleventh Amendment as a state official vested with discretionary authority. He maintains that plaintiff's allegations fail to nullify this defense.

Government officials performing discretionary functions do enjoy qualified immunity from liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Thomas claims that he is entitled to such immunity because he acted in response to both Lamonica's request for police assistance to investigate the theft and Kiersznowski's report about it. He maintains that his investigation and subsequent arrest and prosecution of plaintiff were official responsibilities which he had discretionary authority to execute. However, his subjective belief about the lawfulness of his actions is of no moment. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). The pertinent analysis concerns whether Thomas could have reasonably believed his investigation and subsequent arrest and prosecution of plaintiff was lawful in light of the information he possessed when he acted. *Id.; see also Lee v. Mihalich,* 847 F.2d 66, 69 (3d Cir.1988) (standard for qualified immunity involves examination of the "objective legal reasonableness" under clearly established law of conduct at issue) (citing *Harlow,* 457 U.S. at 818-19).

As discussed above, in reviewing Thomas's facial attack on the subject matter jurisdiction of this Court over plaintiff's claim, I must consider the allegations in her complaint to be true and make all reasonable inferences in her favor. *Mortensen,* 549 F.2d at 891. Plaintiff alleges that Thomas failed to adequately investigate the theft, that he obtained a warrant based on information from Kiersznowski he knew or should have known was false, and that he arrested and maliciously prosecuted plaintiff based on this false information, despite a lack of probable cause. In short, she maintains that his actions constituted malicious prosecution, a tort actionable under 42 U.S.C. § 1983.

Thomas's actions were clearly unreasonable if he proceeded to prosecute plaintiff in the absence of probable cause and with malice. *See Kulwicki v. Dawson,* 969 F.2d 1454, 1468 (3d Cir.1992) (citing *Losch v. Parksburg,* 736 F.2d 903, 907 (3d Cir.1984)). Plaintiff contends in the complaint that throughout Thomas's investigation of the theft, he knew that he was relying on false information provided to him by Kiersznowski. According plaintiff's allegations the presumption of truth to which they are entitled, I cannot find at the present time that defendant Thomas's actions conformed to the standard of "objective legal reasonableness" used to evaluate the legality of the discretionary tasks he executed in this case, *i.e.,* that this defendant is entitled to the defense of qualified immunity. Consequently, I will deny Thomas's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00400-JJF   Document 7-3   Filed 08/04/2005   Page 7 of 16

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 293896
**(Cite as: Not Reported in F.Supp.)**

Page 6

C. Thomas's Motion to Dismiss under Rule 12(b)(6) for Failure to State a Claim

**\*8** Having concluded that this Court has subject matter jurisdiction over plaintiff's complaint, I shall consider Thomas's alternative motion to dismiss under Rule 12(b)(6) for failure to present a claim upon which relief could be granted. Because the standard of review on this latter motion requires me to accept all of plaintiff's allegations as true, plaintiff will prevail so long as her complaint contains allegations that satisfy all of the elements of malicious prosecution, a tort actionable under 42 U.S.C. § 1983.

An action for malicious prosecution brought under section 1983 must include the elements of the common law tort as it has developed. *Lee,* 847 F.2d at 70. Specifically, this action requires that: (1) the defendant has initiated a criminal proceeding; (2) which ended in plaintiff's favor; (3) which was initiated without probable cause; and (4) the defendant acted maliciously or for a purpose other than bringing the defendant to justice. *Id.* (citing *Bell v. Brennan,* 570 F.Supp. 1116, 1118 (E.D.Pa.1983)). Either Pennsylvania or Delaware provide the substantive law governing this tort in this case. Both forums require an additional fifth element for the tort of malicious prosecution, namely, actual malice. *Id.* (citing *Simpson v. Montgomery Ward & Co.,* 46 A.2d 674, 681 (Pa.1946) ); *Stidham v. Diamond State Brewery, Inc.,* 21 A.2d 283, 285 (Del.Super.1941); *see also Homlish v. Diamond Motor Sports, Inc.,* No. 81C-OC-19, slip op. at 3 (Del.Super. Feb. 8, 1984). In the context of a suit for malicious prosecution, actual malice is defined as the prosecuting actor's ill will toward the plaintiff, or as the prosecuting actor's belief that he inappropriately prosecuted plaintiff. *Lee,* 847 F.2d at 70; *Stidham,* 21 A.2d at 285 (defendant acting with actual malice displays "wanton disregard of the rights of that person against whom the act is directed"). I have carefully reviewed plaintiff's complaint and find that she has alleged each of these five elements.

In his motion to dismiss under Rule 12(b)(6), Thomas challenges plaintiff's allegations, arguing that she is unable to establish the existence of two (2) key elements of the action for malicious prosecution: want of probable cause and actual malice.

1. Probable Cause

Thomas initially argues that plaintiff is wholly unable to produce evidence establishing that he arrested and prosecuted her for the theft without probable cause. He maintains that at the time he instituted the criminal proceedings against plaintiff, he had no reason to doubt the veracity of Kiersznowski's statements, which plaintiff claims were falsely made. All parties agree that these statements formed the basis for Thomas to prosecute plaintiff and for the grand jury to indict her. Thomas asserts that holding a person to answer to criminal charges is prima facie evidence of probable cause for institution of those charges and, therefore, that the grand jury indictment handed down in this case established that Thomas had probable cause to arrest and prosecute plaintiff. *See* Defendant Trooper Craig Thomas' Opening Memorandum of Law in Support of his Motion to Dismiss at p. 9 (citing *Stidham,* 21 A.2d at 285). Thomas thus claims that plaintiff cannot establish that he acted without probable cause when he instituted criminal proceedings against her.

**\*9** Though Thomas's argument is legally sound, evidence of probable cause provided by the indictment is not irrefutable. Rather, the indictment only offers prima facie evidence of probable cause which plaintiff may counter with evidence to the contrary. *Stidham,* 21 A.2d at 285; *see also Kelley,* 544 A.2d at 943. To that end, in her complaint plaintiff alleges that Thomas did not have probable cause to arrest and prosecute her. Accepting as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them, I find that this allegation suffices to satisfy the probable cause element of the tort of malicious prosecution.

2. Actual Malice

I must now consider Thomas's final argument for his motion to dismiss for failure to state a claim, specifically, that his actions in prosecuting plaintiff did not amount to actual malice. Though the term of art "actual malice" does not appear in plaintiff's complaint, she repeatedly uses the word "maliciously" to characterize Thomas's actions, claiming that he intentionally deprived her of constitutional rights to which she was entitled. *See* Complaint at ¶ ¶ 30-31. Furthermore, plaintiff alleges that Thomas prosecuted her based on information he knew or should have known was false. *Id.* at ¶ 31. Accepting as true the facts alleged

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1993 WL 293896
**(Cite as: Not Reported in F.Supp.)**

in the complaint and making all reasonable inferences that can be drawn from them, I find that plaintiff meets the actual malice element of the tort of malicious prosecution.

In sum, because I have found that plaintiff has adequately alleged all of the elements of the constitutional tort of malicious prosecution brought under 42 U.S.C. § 1983 , I will deny the motion to dismiss under Rule 12(b)(6).

### IV. CONCLUSION

For the foregoing reasons, the motion of defendant Thomas to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) shall be denied.

An appropriate order follows.

> FN1. Although there is a discrepancy in plaintiff's complaint as to the exact date of the phone call (whether it was made on April 28 or April 29), it does not materially affect my decision regarding the merits of defendant's motion to dismiss.

> FN2. The court of appeals recently summarized this standard and distinguished it from the standard under Rule 12(b)(6):
> A district court has federal question jurisdiction in any case where a plaintiff with standing makes a non-frivolous allegation that he or she is entitled to relief because the defendant's conduct violated a federal statute. Here, the plaintiff makes a non-frivolous claim that the County's refusal to assume the leases violated the [Fair Housing Act]. Whether or not Growth's claim is one on which relief can be granted, if it has standing, the district court has subject matter jurisdiction.
> *Growth Horizons, Inc.*, 983 F.2d at 1281.

E.D.Pa. 1993
Barrister v. Wendy's Intern., Inc.
Not Reported in F.Supp., 1993 WL 293896

Briefs and Other Related Documents (Back to top)

• 2:92cv07262 (Docket) (Dec. 18, 1992)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

**Westlaw**

Not Reported in F.Supp.2d                                                                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 22455387
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2003 WL 22455387
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Texas, Dallas Division.
James Ellis COLE Plaintiff,
v.
Stephen A. GUMMOW Defendant.
**No. 3-02-CV-0705-BD(P).**

Oct. 22, 2003.

Robert G Oake , Jr, Law Office of Robert G Oake Jr, Allen, TX, for Plaintiff.
David W Carstens , Casey L Griffith , Carstens Yee & Cahoon , Dallas, TX, Donald D Mondul , Law Office of Donald D Mondul , Dallas, TX, Mark M Grossman , Grossman Patti & Brill , Chicago, IL, Scott L Harper , Carstens Yee & Cahoon, Dallas, TX, for Defendant.

*MEMORANDUM OPINION AND ORDER*

KAPLAN , Magistrate J.
**\*1** Defendant Stephen A. Gummow has filed a motion to dismiss Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction. For the reasons stated herein, the motion is granted.

I.

This is a declaratory judgment action involving two patents for an indexable head ratchet wrench. FN1 At issue is whether Plaintiff James Ellis Cole is the sole and true inventor of U.S. Patent No. 5,419,221 (the " '221 Patent") , issued May 30, 1995, and U.S. Patent No. 5,775,184 (the " '184 Patent") , issued July 7, 1998. (*See* Plf. Sec. Am. Compl. at 1, ¶ 1 & Plf. Resp.App. at 5-8, 9-15).

> FN1. An indexable head ratchet wrench is a "wrench[ ] to which other tools, such as sockets, crowfoot-type wrenches, and the like, are connected for use in tightening and loosening nuts and bolts." (Plf. Resp.App. at 13).

On February 22, 2002, defendant sued plaintiff in Illinois federal district court claiming that he, not plaintiff, was the true inventor of the '221 Patent. (Plf. Sec. Am. Compl. at 2, ¶ 8). In that case, defendant, who holds patents on other types of ratchet wrenches, alleged that he conceived and designed an indexable improvement to his patented device which was disclosed in confidential communications to plaintiff and his brother, Charles Austin Cole, in the early 1990s. According to defendant, plaintiff used this confidential information to apply for and obtain the '221 Patent. The Illinois lawsuit was dismissed for lack of personal jurisdiction over plaintiff. *See* Gummow v. Cole, 2002 WL 959836 (N.D.Ill. May 9, 2002).

While the Illinois case was still pending, plaintiff filed a declaratory judgment action in this court seeking to clarify his inventorship status. Defendant answered and counterclaimed for a declaratory judgment that he is the true inventor of the subject claims of the '221 and '184 Patents. FN2 In a separate pleading, defendant moves to dismiss this case for lack of subject matter jurisdiction. The motion has been fully briefed by the parties and is ripe for determination.

> FN2. On May 20, 2003, four months after the pleading deadline expired, defendant filed an amended counterclaim asserting claims against plaintiff and four new parties for infringement, correction of inventorship, civil conspiracy, breach of contract, fraud, unjust enrichment, breach of fiduciary duty, and breach of the duty of good faith and fair dealing. By order dated June 10, 2003, the court struck this amended counterclaim as untimely. Thereafter, defendant filed a separate lawsuit against plaintiff, Teresa M. Cole, Charles Austin Cole, James G. Jones, and Splined Tools Corporation. That case is currently pending before another judge in this district. *Gummow v. Splined Tools Corp., et al.,* No. 3-03-CV-1428-L.

II.

A party seeking to invoke the jurisdiction of a federal court must prove that jurisdiction is proper. *See* Boudreau v. United States, 53 F.3d 81, 82 (5th

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 2
Not Reported in F.Supp.2d, 2003 WL 22455387
**(Cite as: Not Reported in F.Supp.2d)**

Cir.1995), *cert. denied,* 516 U.S. 1071, 116 S.Ct. 771, 133 L.Ed.2d 724 (1996) ; Lowe v. Ingalls Shipbuilding, A Division of Litton Systems, Inc., 723 F.2d 1173, 1177 (5th Cir.1984). In this case, the burden falls on plaintiff. The allegations of his complaint must be taken as true and all inferences drawn in his favor. Saraw Partnership v. United States, 67 F.3d 567, 569 (5th Cir.1995) ; Garcia v. United States, 776 F.2d 116, 117 (5th Cir.1985). Dismissal is warranted only if those allegations, together with any undisputed facts and the court's resolution of disputed facts, establish that the district court lacks subject matter jurisdiction. *See* Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th Cir.2001), *cert. denied,* 534 U.S. 1127, 122 S.Ct. 1059, 151 L.Ed.2d 967 (2002) ; Santerre v. Agip Petroleum Co., 45 F.Supp.2d 558, 565 (S.D.Tex.1999). FN3

> FN3. In his reply brief, defendant argues that the court cannot go beyond the pleadings in ruling on a motion to dismiss. (*See* Def. Reply Br. at 4). Such is not the case. In examining the basis for its own jurisdiction, the court may consider: (1) the allegations of the complaint alone; (2) the allegations of the complaint supplemented by undisputed facts in the record; or (3) the allegations of the complaint supplemented by undisputed facts and the court's resolution of disputed facts. Den Norske, 241 F.3d at 424; Santerre, 45 F.Supp.2d at 565.

A.

The Declaratory Judgment Act authorizes federal district courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, an "actual controversy" between the parties is necessary to establish subject matter jurisdiction under the Act. Cardinal Chemical Co. v. Morton International, Inc., 508 U.S. 83, 95, 113 S.Ct. 1967, 1974, 124 L.Ed.2d 1 (1993) ; Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 633-34 (Fed.Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991). Hypothetical, conjectural, or conditional disputes based on factual situations that may never develop will not support a request for declaratory relief. Brown & Root, Inc. v. Big Rock Corp., 383 F.2d 662, 665 (5th Cir.1967). The question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 57-58, 96 S.Ct. 1917, 1933, 48 L.Ed.2d 450 (1976), *quoting* Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed. 2 118 (1969).

**\*2** The Federal Circuit has established a two-part test to determine whether an "actual controversy" exists in an inventorship dispute. Chou v. University of Chicago, 254 F.3d 1347, 1358 (Fed.Cir.2001), *citing* Fina Oil & Chemical Co. v. Ewen, 123 F.3d 1466, 1471 (Fed.Cir.1997). A party seeking declaratory relief must prove both: (1) that he holds a recognized interest in a patent that could be adversely affected by an action challenging inventorship; and (2) that another party with a right to bring such an action has created an objectively reasonable apprehension on the part of the plaintiff that it will do so. Ewen, 123 F.3d at 1471. The court must analyze the operative facts as they existed at the time the complaint was filed. Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed.Cir.1988); *see also* Spectronics, 940 F.2d at 634-35 ("[A] party seeking a declaratory judgment must plead facts initially sufficient to establish the existence of an actual controversy ... [L]ater events may not create jurisdiction where none existed at the time of filing.").

B.

While maintaining his right to contest inventorship of the '221 and '184 Patents, FN4 defendant argues that the court lacks subject matter jurisdiction over this declaratory judgment action because plaintiff no longer holds a recognized interest in the patents sufficient to create an actual case or controversy. Indeed, plaintiff admits that he assigned his entire interest in the '221 Patent to Splined Tools Corporation, a company formed by his sister-in-law, in 1995. (Plf. Resp.App. at 1, ¶ 3; at 2, ¶ ¶ 7-8; at 4, ¶ 12). Splined, in turn, licensed the patent to Superior Ratchet and Tool Company, a manufacturing company owned by plaintiff. (*Id.* at 2, ¶ 8). From 1994 to 1995, Superior sold wrenches to various independent dealers, including Snap-On Tools Company. (*Id.* at 1, ¶ ¶ 4-5 & 2, ¶ 8). On May 7, 1997, Splined licensed the '221 Patent directly to Snap-On in exchange for royalties on the licensed products. (*Id.* at 3, ¶ 11 & 32-50). A short time later, Superior ceased making wrenches. (*Id.* at

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

3, ¶ 11). Plaintiff then entered into an oral consulting agreement with Splined. (*Id.* at 4, ¶ 12). According to plaintiff:

> FN4. Defendant has withdrawn his correction of inventorship claim against plaintiff. However, he continues to pursue such a claim against Splined Tools Corporation, the assignee of the '221 and '184 Patents. (*See* Def. Reply Br. at 6-7).

I consulted with Splined over inventive and marketing activities and assigned to Splined the rights to [the '184 Patent] ... on September 8, 1998. I was able to enter into and continue under the income producing consulting agreement with Splined based on large part on my status as the named and correct inventor of the '224 and '184 patents.(*Id.*). To date, plaintiff has received more than $500,000 under his consulting agreement with Splined. (*Id.* at 4, ¶ 12). However, due to the inventorship dispute with defendant, plaintiff states that Splined "is unable to pay me a consulting fee and is not paying me a consulting fee." (*Id.*).

Although plaintiff no longer has any ownership rights in the '221 and '184 Patents, certain interests other than ownership may be sufficient to confer standing to sue for declaratory relief. *See Chou,* 254 F.3d at 1358 (suggesting that a party who has "a concrete financial interest in the patent, albeit an interest less than ownership," has standing in an inventorship dispute). Plaintiff argues that his oral consulting agreement with Splined gives him the necessary financial interest to maintain this action. However, the only evidence of this consulting arrangement is plaintiff's self-serving, conclusory statement that he is paid for giving advice regarding unspecified "inventive and marketing activities." (*Id.* at 4, ¶ 12). There is no indication what, if any, relationship exists between those activities and the patents in-suit. For all the record shows, plaintiff could have been paid consulting fees for developing new products not related to the '221 and '184 Patents. FN5 Thus, plaintiff has failed to prove that he has a "concrete financial interest in the patent" necessary to confer standing. *See Chou,* 254 F.3d at 1359.

> FN5. Indeed, at the time plaintiff assigned his rights in the '221 Patent, he "had additional ideas for tools" and anticipated entering into a consulting agreement whereby he would assign the right to "future

inventions" to Splined. (Plf. Resp.App. at 3, ¶ 9).

C.

**\*3** Plaintiff further argues that he has a "reputational interest" in his status as the inventor of the '221 and '184 Patents. (*See* Plf. Resp.App. at 4, ¶ 14). Although the Federal Circuit has suggested in dicta that "[p]ecuniary consequences may well flow from being designated as an inventor[,]" no federal court has yet to determine whether the mere status of inventor is sufficient to confer standing. *See Chou,* 254 F.3d at 1359.

Whatever the contours of such an interest may be, plaintiff has offered neither evidence nor argument to assist the court in answering this jurisdictional question. Beyond his bald assertion that "I have a reputational interest as inventor of the '221 and '184 Patents," there is nothing in the record to support such a conclusion. Plaintiff's mere say-so is hardly sufficient to carry his burden of proof.

*CONCLUSION*

Plaintiff has failed to prove that he has a recognized interest in the patents in-suit sufficient to create an actual case or controversy. Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction is granted.

SO ORDERED.

N.D.Tex.,2003.
Cole v. Gummow
Not Reported in F.Supp.2d, 2003 WL 22455387

Briefs and Other Related Documents (Back to top)

• 3:02cv00705 (Docket) (Apr. 05, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  E

Case 1:05-cv-00400-JJF     Document 7-3     Filed 08/04/2005     Page 13 of 16



Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 22834499  
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

Not Reported in F.Supp.2d, 2003 WL 22834499  
Briefs and Other Related Documents  
Only the Westlaw citation is currently available.  
United States District Court,D. Delaware.  
SICOM SYSTEMS LTD., Plaintiff,  
v.  
AGILENT TECHNOLOGIES, INC., Tektronix, Inc., and Lecroy Corporation, Defendants.  
**No. Civ.A. 03-040 JJF.**

Nov. 20, 2003.

Steven T. Margolin , and Tiffany L. Geyer , of Ashby & Geddes , Wilmington, Delaware, for Plaintiff Sicom Systems Ltd., Edward W. Goldstein , Christopher M. Faucett , Corby R. Vowell , and Jason W. Deats , of Goldstein & Faucett, L.L.P., of counsel. Josy W. Ingersoll , and Adam W. Poff , of Young, Conaway, Stargatt, & Taylor, LLP , Wilmington Delaware, for Defendant Agilent Technologies, Inc., James Galbraith , Thomas F. Meagher , and John C. Vetter , of Kenyon & Kenyon , New York, New York, Philip J. McCabe , and Susan A. Smith , of Kenyon & Kenyon, San Jose California, of counsel. John T. Meli, Jr. , and Elise Tillinghast , of Fish & Richardson, P . C., Wilmington, Delaware, for Defendant LeCroy Corporation.  
N. Richard Powers , of Connolly, Bove, Lodge, & Hutz LLP , Wilmington, Delaware, for Defendant Tektronix, Inc., John M. Romary , and Michael R. Kelly , of Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, District of Columbia, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.  
**\*1** Presently before the Court is Defendants Agilent Technologies, Inc., Tektronix, Inc., and LeCroy Corporation's Motion to Dismiss (D .I. 38-1). For the reasons discussed below, Defendants' Motion to Dismiss will be granted.

BACKGROUND

Plaintiff Sicom Systems Ltd. ("Sicom") is suing for alleged infringement of U.S. Patent 5,33,147 (" '147 patent"). The '147 patent was licensed to Sicom by the Canadian government ("Canada"). Canada retained legal title to the patent and a reversionary interest in the patent. The Licensing Agreement states that Sicom has the right to sue for infringement of the patent.

DISCUSSION

I. Allegations of the Parties

Defendants contend that Sicom is the "sole" but not the "exclusive" licensee of the '147 patent. Defendants assert that Canada has retained the right to use the patented technology and assert that Sicom is merely a licensee. Defendants assert that Sicom's license is not the equivalent of an assignment of the patent and does not give Sicom the capacity to sue for infringement. Thus, Defendants contend that Sicom does not have standing in the present case and that the case must be dismissed.

Sicom contends that it is the exclusive licensee of the '147 patent, and therefore has sufficient interest in the patent to create standing to enforce the patent's claims against alleged infringers. Sicom contends that Canada did not retain the right to make, or to authorize others to make, commercial sales involving the patent that would compete with Sicom and, by electing not to sue in the instant case, Canada relinquished its rights to sue Defendants for infringement of the '147 patent.

II. Legal Standard for a Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows the dismissal of an action when a party "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Strum v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). A court may dismiss a complaint for failure to state a claim only if it is clear that no relief

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 2
Not Reported in F.Supp.2d, 2003 WL 22834499
**(Cite as: Not Reported in F.Supp.2d)**

could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). Stating a claim on which relief can be granted requires stating a legally recognized claim.

### III. Legal Standard for Standing to Sue for Infringement

To survive a motion to dismiss, a party must have standing to sue, i.e. it must have "a sufficient stake in an otherwise justiciable controversy." *Sierra Club v. Morton,* 405 U.S. 727, 731 (1972). Standing must be present at the time the suit is brought. *See Procter & Gamble Co. v. Paragon Trade Brands, Inc.* 917 F.Supp. 305, 309-10 (D.Del.1995).

**\*2** Under the Patent Act, "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281. "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100. Under 35 U.S.C. § 100, "[t]he owner of a patent or the owner's assignee can commence an action for patent infringement, but a licensee alone cannot." *Calgon Corp. v. Nalco Chemical Co.* 726 F.Supp. 983, 985 (D.Del.1989).

However, an exclusive license is sometimes treated like an assignment, creating a discrete standing to sue for infringement. *See Prima Tek II, L.L.C. v. A-Roo Co.,* 222 F.3d 1372, 1377 (Fed.Cir.2000). For a license to be exclusive enough to create standing, the license must convey all substantial rights. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,* 944 F.2d 870, 875 (Fed.Cir.1991). To implement this rule, courts "must ascertain the intention of the parties and examine the substance of what [the licensing agreement] granted." *Prima Tek II, L.L.C. v. A-Roo Co.,* 222 F.3d 1372, 1378 (Fed.Cir.2000).

### IV. Decision and Rationale

Sicom's Licensing Agreement with Canada makes Sicom the "sole" licensee of the '147 patent, while Canada remains the legal title holder of the patent. The Licensing Agreement defines sole as "the right to be the only licensee of the Licensed Intellectual Property." Defendants' Exhibit B, at 7. Canada and Sicom are both given the power to sue under the Agreement. The Agreement allows Sicom to use the patent and grant sub-licenses to use the patent. Under the Agreement, Canada is not allowed to make, or authorize another to make, commercial sales in competition with Sicom and cannot grant contracts to develop the patent without first offering the contract to Sicom. Sicom must seek approval for any sub-licenses it seeks to grant but approval cannot be unreasonably withheld. Steps taken to defend the patent are to be done jointly by Sicom and Canada. Further, Sicom is not allowed to assign its rights under the Agreement.

After reviewing the provisions of the instant Agreement, the Court concludes that the rights of Sicom are limited. Canada has retained legal title to the patent and, in the Court's view, has not granted Sicom sufficient rights to make Sicom the equivalent of an assignee. Although Canada did not retain the right to compete with Sicom; Canada has retained the right to grant additional licenses and to sue under the patent. FN1 Additionally, the Agreement requires Sicom to obtain approval from Canada prior to granting any sub-licenses and further, Sicom is not permitted to assign its rights under the patent. In sum, after an examination of the provisions of the instant Licensing Agreement, the Court concludes that Canada has retained substantial rights to the patent to a degree sufficient to bar its licensee, Sicom, from alone commencing an action for infringement of the claims of the patent.

> FN1. While Canada may have chosen not to pursue an infringement action against the Defendants here, this choice is not the equivalent of a complete abdication of Canada's right to sue others for infringement of the patent.

### CONCLUSION

**\*3** For the reasons discussed, the Court will grant Defendants' Motion to Dismiss. An order consistent with this Memorandum Opinion will be entered.

### *FINAL ORDER*

At Wilmington, this 20th day of November 2003, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants Agilent Technologies, Inc., Tektronix, Inc., and LeCroy Corporation's Motion to Dismiss (D.I.38-1) is *GRANTED.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                       Page 3
Not Reported in F.Supp.2d, 2003 WL 22834499
**(Cite as: Not Reported in F.Supp.2d)**

D.Del.,2003.
Sicom Systems Ltd. v. Agilent Technologies, Inc.
Not Reported in F.Supp.2d, 2003 WL 22834499

Briefs and Other Related Documents (Back to top)

• 1:03cv00040 (Docket) (Jan. 15, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.