IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DR. ANTHONY W. CZARNIK,            )
                                   )
            Plaintiff,             )
                                   )
v.                                 )            Civil Action No. 1:05-CV-400-JJF
                                   )
ILLUMINA, INC.                     )
                                   )
            Defendant.             )
                                   )

**PLAINTIFF'S ANSWERING BRIEF IN RESPONSE
TO DEFENDANT'S MOTION TO DISMISS**

Martin S. Lessner (No. 3109)
Adam W. Poff (No. 3990)
Young Conaway Stargatt &
    Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899
Tel:  (302) 571-6600
Fax:  (302) 571-1253

ATTORNEYS FOR PLAINTIFF
DR. ANTHONY W. CZARNIK

OF COUNSEL:
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
Martin M. Zoltick
Steven Lieberman
Lisa N. Phillips
1425 K Street, N.W., Suite 800
Washington, DC  20005
Tel:    (202) 783-6040
Fax:    (202) 783-6031            Dated:  August 22, 2005

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ................................................................ 1

SUMMARY OF ARGUMENT ................................................................................... 2

STATEMENT OF FACTS ....................................................................................... 4

LEGAL STANDARDS .......................................................................................... 10

ARGUMENT...................................................................................................... 11

I.      Dr. Czarnik Has Alleged a Cognizable Harm Sufficient to Support
        Standing to Assert a Claim to Correct Inventorship Under 35 U.S.C. § 256 ....... 12

II.     Illumina Fails To Meet its Burden Under Fed.R.Civ.P. 12(b)(1) With
        Respect to the 35 U.S.C. § 116 Claim ................................................. 17

III.    Because Supplemental Jurisdiction Exists for the Declaratory
        Judgment of Unenforceability Based on Inequitable Conduct,
        Dr. Czarnik May Assert Count III ..............................................................21

IV.     Dr. Czarnik's State Law Fraud Claim, As Pled, Properly States A Claim
        Upon Which The Requested Relief May Be Granted........................................... 24

CONCLUSION.................................................................................................... 26

# TABLE OF AUTHORITIES

**CASES**

*ARGOS v. Orthotec LLC,*
    304 F. Supp. 2d 591 (D. Del. 2004)............................................................10, 12, 21, 25

*Airport Surface Techs., L.L.C. v. Field Turf, Inc.,*
    268 F. Supp. 2d 999 (N.D. Ill. 2003) ....................................................................19, 20

*Chou v. University of Chicago,*
    254 F.3d 1347 (Fed. Cir. 2001)............................................3, 5, 11, 13, 14, 15, 16, 17,
                                                                         20, 21

*Cole v. Gummow,*
    2003 U.S. Dist. LEXIS 18925 (N.D. Tex. Oct. 22, 2003) ...........................................15

*Eli Lilly & Co. v. Aradigm Corp.,*
    376 F.3d 1352 (Fed. Cir. 2004)..........................................................................18, 19

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.,*
    292 F.3d 1363 (Fed. Cir. 2002)..........................................................................23

*Geer v. Cox,*
    216 F.R.D. 677 (D. Kansas 2003) .............................................................................22

*Hydril Co. v. Baker Hughes Inc.,*
    1997 U.S. App. LEXIS 21745 (Fed. Cir. Aug. 19, 1997)............................................18

*Kanematsu Corp. v. Advanced Materials Lanxide, LLC,*
    2002 U.S. Dist. LEXIS 27043 (D. Del. Sept. 30, 2002) ........................................10, 14

*Kucharczyk v. Regents of University of Cal.,*
    48 F. Supp. 2d 964 (N.D. Cal. 1999) .................................................................16, 24

*Langford v. City of Atlantic City,*
    235 F.3d 845 (3d Cir. 2000).....................................................................................10

*MCV, Inc. v. King-Seeley Thermos Co.,*
    870 F.2d 1568 (Fed. Cir. 1989)..........................................................................17, 19

*Marbury v. Madison,*
    5 U.S. 137 (1803)......................................................................................................19

*Matsuda v. Wada,*
    128 F. Supp. 2d 659 (D. Haw. 2000) ..........................................................................22

*Rohm & Haas Co. v. Crystal Chemical Co.,*
    722 F.2d 1556 (Fed. Cir. 1983)...................................................................................23

*Rolo v. City Investing Co. Liquidating Trust,*
    155 F.3d 644 (3d Cir. 1998).......................................................................................14

*Sagoma Plastics, Inc. v. Gelardi,*
    366 F. Supp. 2d 185 (D. Me. 2005) .................................................................18, 19, 21

*Semiconductor Energy Laboratories Co. v. Samsung Electrics Co.,*
    4 F. Supp. 2d 477 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir.
    2000) .........................................................................................................................23

*Stephenson v. Capano Development, Inc.,*
    462 A.2d 1069 (Del. 1983) .......................................................................................25

*Stratos Lightwave, Inc. v. Picolight, Inc.,*
    2005 U.S. Dist. LEXIS 4586 (D. Del. Mar. 23, 2005) ................................................10

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)..........................................14, 15

## STATUTES AND RULES

35 U.S.C. § 116.............................................................................................1, 3, 17, 18, 19, 20

35 U.S.C. § 135...............................................................................................................20

35 U.S.C. § 256................................................................................1, 2, 3, 6, 11, 12, 16, 17,
    18, 19, 20, 21, 22, 23, 24

35 U.S.C. § 285.................................................................................................................1

28 U.S.C. § 1367.................................................................................................3, 11, 21, 22

28 U.S.C. § 2201..............................................................................................................17

Fed.R.Civ.P. 8(a)(2).........................................................................................................14

Fed.R.Civ.P. 9(b) ............................................................................................................14

Fed.R.Civ.P. 12(b)(1).....................................................................1, 2, 3, 12, 17, 21, 22, 26

## NATURE AND STAGE OF PROCEEDINGS

On June 16, 2005, Dr. Anthony W. Czarnik ("Dr. Czarnik"), filed this action against

Defendant Illumina, Inc. ("Illumina"). This is civil action under 35 U.S.C. § 256, the

Declaratory Judgment Act, and the common law of the State of Delaware, seeking: (i) a

judgment that Dr. Czarnik is a joint inventor of the identified issued U.S. patents, and

issuance of an order, pursuant to 35 U.S.C. § 256, requiring the Director of the U.S.

Patent and Trademark Office ("PTO"), and Defendant Illumina, to correct the

inventorship by adding Dr. Czarnik as an inventor; (ii) a judgment declaring that Dr.

Czarnik is a joint inventor of the identified U.S. and corresponding foreign pending

patent applications, and issuance of an order, pursuant to 35 U.S.C. § 116, requiring the

Director of the PTO, and Defendant Illumina, to correct the inventorship in the U.S. and

in all foreign patent offices by adding Dr. Czarnik as an inventor; (iii) a judgment

declaring that the identified issued U.S. patents and pending patent applications are

unenforceable; (iv) a judgment that Defendant Illumina committed fraud; (v) an award of

compensatory damages in an amount to be determined at trial; (vi) an award of punitive

damages in an amount to be determined at trial; and (vii) an award of reasonable

attorneys' fees and costs pursuant to 35 U.S.C. § 285, or at common law.

On June 30, 2005, Illumina applied for, and was granted, an extension of time to

respond to the Complaint. Pursuant to that extension, on August 4, 2005, Illumina filed

the present Motion to Dismiss.

Dr. Czarnik, by and through his attorneys, submits this Answering Brief in

response to Illumina's Motion to Dismiss the present suit pursuant to both Fed.R.Civ.P.

1

12(b)(1) and Fed.R.Civ.P. 12(b)(6).  For the reasons set forth below, Illumina's motion should be denied.

## SUMMARY OF ARGUMENT

1.    Based on the factual allegations set forth in Dr. Czarnik's Complaint and proper consideration of the applicable Statutes and case law, as explained in detail herein, Dr. Czarnik has standing to bring the causes of action of Counts I-IV of the Complaint, this Court has subject matter jurisdiction over those causes of action, and each of the Counts, as pled, properly states a claim upon which the requested relief may be granted.

2.    Dr. Czarnik has alleged a cognizable harm sufficient to support standing to assert his claim to correct inventorship pursuant to 35 U.S.C. § 256.  This Court has subject matter jurisdiction to address Dr. Czarnik's claim for correction of inventorship pursuant to 35 U.S.C. § 256 and Dr. Czarnik has standing to make that claim since, as alleged in the Complaint, Dr. Czarnik has not been given the credit and recognition he was entitled to for his contributions to the patented microarray technology, was excluded and ultimately removed from any participation in Defendant Illumina's activities and from any recognition as a co-inventor of the microarray technology, has suffered damage to his reputation and standing within the scientific community, has not received the reputational benefits associated with being named as an inventor, has suffered a loss of prestige within the scientific community resulting from his inventions being recognized as another's, and was damaged as a result of his reliance on Defendant  Illumina's actions in an amount to be proven at trial ("Dr. Czarnik's Injury-In-Fact").  *See*  Complaint, ¶¶ 3-4, 59, 69, 94-97, and 153-154.  Moreover, at this stage of the proceeding, Dr. Czarnik is

2

not required to allege each and every specifically stated instance of harm, but, rather, to put Illumina on notice of his claim. Dr. Czarnik's Complaint meets the standard to which it is held.

3.     Subject matter jurisdiction lies with this Court to hear Dr. Czarnik's claim for a declaratory judgment that he is a joint inventor of the identified U.S. and corresponding foreign pending patent applications, and for issuance of an order, pursuant to 35 U.S.C. § 116, requiring the Director of the PTO and Illumina to take the necessary steps to correct the inventorship of those applications. Since Dr. Czarnik does not request that this Court directly alter the inventorship on the subject patent applications, nor has he come to this Court before attempting to seek redress in the PTO, Dr. Czarnik's only route to redress of his claims with respect to the pending patent applications at issue is through this Court. Illumina's "supporting" case law does not block such an attempt, and, thus, Illumina can not meet its burden under a Fed.R.Civ.P. 12(b)(1) claim since the claims presented here are not "wholly insubstantial and frivolous." Moreover, subject matter jurisdiction lies in this Court to correct inventorship on the related U.S. and foreign applications identified in the Complaint in accordance with the Federal Circuit's decision in *Chou* and pursuant to 28 U.S.C. § 1367.

4.     Because supplemental jurisdiction exists for the declaratory judgment of unenforceability based on inequitable conduct, Dr. Czarnik may assert Count III. Since this Court has original jurisdiction over the § 256 claim (Count I), this Court may also exercise jurisdiction over the declaratory judgment action for unenforceability of the subject patents and applications based on this same core of operative facts (Count III).

3

5.     Dr. Czarnik's state law fraud claim, as pled, properly states a claim upon which the requested relief may be granted.  In advancing its argument with respect to its motion to dismiss the state law fraud claim based on a failure to state a claim, Illumina alleges that Dr. Czarnik does not state a claim because the purported misrepresentations were not made to Dr. Czarnik.  However, fraud may also occur through deliberate concealment of material facts.  Clearly, the Complaint alleges such omission committed by Illumina and its principles repeatedly over a period of years, which Dr. Czarnik only recently became aware of.  Pursuant to a motion to dismiss for failure to state a claim, these allegations must be accepted as true, and, clearly, if true, relief could be granted consistent with the allegations of the Complaint.  Further, even if Dr. Czarnik is unable to maintain his claim to correct inventorship, the Court can determine whether or not he is a proper inventor, and based on that determination, resolve the fraud claim set forth in Count IV of the Complaint.

## STATEMENT OF FACTS

Since all of the factual allegations are to be taken as true within the context of Illumina's motion to dismiss, Dr. Czarnik relies on the detailed statement of facts set forth in the one hundred and fifty-four (154) paragraphs of Dr. Czarnik's Complaint which, as explained in detail below, are more than adequate to support subject matter jurisdiction in this Court and standing for Dr. Czarnik for the asserted causes of action, and to provide a basis for Dr. Czarnik's state law fraud claim.  Illumina's characterization of all of the factual allegations set forth in Dr. Czarnik's Complaint as "one-sided" is certainly curious given that a substantial number of those factual allegations are from the

December 3, 2004 decision of the Court of Appeal of California affirming the jury

verdict in favor of Dr. Czarnik against Illumina in the action Dr. Czarnik brought in the

Superior Court of San Diego County.[1]

In Illumina's "Statement of Facts" section of its Memorandum in Support of

Illumina's Motion to Dismiss, filed August 4, 2005 ("Motion"), Illumina sets forth what

it characterizes as facts "acknowledged either expressly or by omission in Czarnik's

complaint." Motion at 3. These "facts" are largely irrelevant with respect to the issues

raised by Illumina in its Motion. For example, Illumina repeatedly makes reference to

Dr. Czarnik's lack of "any ownership interest in any of Illumina's patents or in any of

Illumina's pending U.S. or foreign patent applications." Motion at 3. However, the

Federal Circuit has made very clear that such an ownership interest "is not a prerequisite

for a putative inventor to possess standing to sue to correct inventorship under § 256."

*Chou v. Univ. of Chicago*, 254 F.3d 1347, 1358 (Fed. Cir. 2001).

Other "facts" stated by Illumina in its Motion and identified as "Czarnik's

allegations" that are "noteworthy" are plainly distortions of what Dr. Czarnik has, in fact,

alleged in his Complaint. For instance, Illumina asserts that "Czarnik does not allege any

---

[1] As set forth in the Complaint, after a five week trial, the jury returned a verdict in Dr. Czarnik's favor on all of his claims, finding: (1) Illumina terminated his employment and took other adverse employment actions against him in whole or part because of his disability; (2) the company terminated Dr. Czarnik and took other adverse employment actions against him in whole or part because he complained about discrimination; (3) Dr. Czarnik had a reasonable belief that Illumina used or was planning to use the results of the 768 decoding experiment in a misleading manner in its presentations to potential investors and had raised his concerns to appropriate individuals at Illumina; (4) the decision-makers involved in Dr. Czarnik's termination were aware that Czarnik had raised concerns about the company's use of the 768 decoding experiment results and the termination was based in whole or part on that fact; (5) Illumina terminated Dr. Czarnik in whole or part because he raised concerns regarding the 768 experiment; and (6) Dr. Czarnik had suffered $2,196,935 in damages as a result of Defendant Illumina's misconduct. The jury also found that Illumina was motivated by malice, fraud and oppression and awarded Dr. Czarnik $5 million in punitive damages. *See* Complaint, ¶¶ 84-86.

particular facts as to any harm he has suffered to his reputation by virtue of not being

named as a co-inventor on the patents and pending applications, nor does he allege any

pecuniary consequences relating to any such reputational harm." Motion at 3. Illumina's

contention is belied by the express allegations of the Complaint – for example:

- After Dr. Czarnik devoted a tremendous amount of time and effort to advance the business and technological goals of Illumina, including creating and being recognized as a joint inventor with Stuelpnagel and Chee of microarray technology that Defendant Illumina, Stuelpnagel and Chee have filed for and obtained utility patents on, Defendant Illumina, Stuelpnagel and Chee conspired, agreed and engaged in a concerted action to obtain further utility patents on the jointly developed microarray technology without informing Dr. Czarnik, without identifying Dr. Czarnik as an inventor and crediting him for his contributions, and on the basis that the claimed technology was created by Stuelpnagel and Chee which, at all relevant times hereto, Defendant Illumina, Stuelpnagel and Chee knew was false. Complaint, ¶ 3.

- Dr. Czarnik brings this civil action under 35 U.S.C. § 256, the Declaratory Judgment Act, and the common law of the State of Delaware, seeking: (i) a judgment that Dr. Czarnik is a joint inventor of the identified patents and applications, and issuance of an order requiring Defendant Illumina and the PTO to correct the inventorship by adding Dr. Czarnik as an inventor; (ii) a judgment declaring that the identified issued U.S. patents and pending U.S. patent applications are unenforceable; (iii) compensatory damages; (iv) punitive damages; and (v) reasonable attorneys' fees and costs. Complaint, ¶ 4.

- The foregoing pattern of systematically omitting Dr. Czarnik, after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his medical condition in April 1999, as a named co-inventor on U.S. and foreign issued patents and pending applications disclosing and claiming the IBL/DBL Invention was part of a deliberate scheme by Defendant Illumina, Stuelpnagel and Chee intended to exclude and ultimately remove Dr. Czarnik from any participation in Defendant Illumina's activities and from any recognition as a co-inventor of the microarray technology. Complaint, ¶ 59.

- The foregoing pattern of systematically omitting Dr. Czarnik, after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his

medical condition in April 1999, the very same month in which he jointly developed the Embedded/Encapsulated Nanocrystal Invention, as a named co-inventor on U.S. and foreign issued patents and pending applications disclosing and claiming the Embedded/Encapsulated Nanocrystal Invention was part of a deliberate scheme by them intended to exclude and ultimately remove Dr. Czarnik from any participation in Defendant Illumina's activities and from any recognition as an inventor of the microarray technology. Complaint, ¶ 69.

- Dr. Czarnik went through the list of identified Illumina issued patents and published patent applications, and reviewed each one. During this review in December 2004, Dr. Czarnik learned for the first time, and to his surprise, that the Defendant Illumina, Stuelpnagel, Chee and Silva had prepared, filed, and prosecuted to issuance, patents disclosing and claiming his IBL/DBL Invention and his Embedded/Encapsulated Nanocrystal Invention without informing him, without identifying him as an inventor, and without giving him the credit and recognition he was, and is, entitled to. Complaint, ¶ 94.

- Defendant Illumina, Stuelpnagel and Chee concealed these filings with the PTO disclosing and claiming Dr. Czarnik's IBL/DBL Invention and Embedded/Encapsulated Nanocrystal Invention from him, knowing that the inventorship on these filings was false, while, at the same time, sending letters and formal papers to Dr. Czarnik advising him that he was a joint inventor on the selected two filings they decided to inform him about. Defendant Illumina's, Stuelpnagel's and Chee's actions in sending these letters and formal papers to Dr. Czarnik on two of the patent applications they filed, and not the many others, were, on information and belief, intentionally designed to mislead Dr. Czarnik into believing that he was receiving the proper credit and recognition for those inventions he made at Illumina, and that his interests as an inventor were being protected. On information and belief, Defendant Illumina, Stuelpnagel and Chee knew this was false. Complaint, ¶ 95.

- Dr. Czarnik justifiably relied on Defendant Illumina's, Stuelpnagel's and Chee's misleading actions and nondisclosure to his detriment. Stuelpnagel and Chee, and not Dr. Czarnik, were credited with creating the inventions jointly developed by Dr. Czarnik. On information and belief, Defendant Illumina, Stuelpnagel and Chee knew Dr. Czarnik was a joint inventor of the claimed inventions, and that they were not entitled to be named as joint inventors without Dr. Czarnik. Complaint, ¶ 96.

7

- Defendant Illumina, Stuelpnagel and Chee conspired, agreed and engaged in a concerted action to obtain further utility patents on the IBL/DBL Invention and Embedded/Encapsulated Nanocrystal Invention jointly developed by Dr. Czarnik without informing Dr. Czarnik, without identifying Dr. Czarnik as a co-inventor and crediting him for his contributions, and on the basis that the claimed technology was created by Stuelpnagel and Chee which, at all relevant times hereto, they knew was false. Complaint, ¶ 97.

- Dr. Czarnik relied on these representations by Defendant Illumina to his detriment including, inter alia, damage to Dr. Czarnik's reputation and standing within the scientific community, eliminating the reputational benefits associated with being named as an inventor, a loss of prestige within the scientific community resulting from his inventions being recognized as another's, and substantially devaluing Illumina's patent portfolio by rendering unenforceable those U.S. and foreign patents and applications claiming Dr. Czarnik's IBL/DBL Invention and Embedded/Encapsulated Nanocrystal Invention. Complaint, ¶ 153.

- Dr. Czarnik was damaged as a result of his reliance on these representations by Defendant Illumina in an amount to be proven at trial . Complaint, ¶ 154.

Beyond what Illumina contends (albeit improperly) that Dr. Czarnik "does not allege," Illumina challenges Dr. Czarnik's status as a co-inventor of what is described in Dr. Czarnik's Complaint as the "Embedded/Encapsulated Nanocrystal Invention" citing to an email message (Motion, Exh. A) and, based on this email message, asserts that it will "prove that many of Czarnik's other allegations are false." Motion at 3. Again, Illumina is playing fast and loose with the "facts." The email message is taken completely out of context by Illumina (*see* Motion at 3, n.1), and its characterization of the email message is highly misleading. Illumina mischaracterizes the message itself as Dr. Czarnik somehow confirming that he is not a co-inventor with respect to *any aspect* of the "nanocrystal application," when the original question inquired as to "[w]ho came

8

up with the idea of embedding them [(i.e., the nanocrystals)] in porous silica and then entombing them with a polymer?" Motion, Exh. A. Whether or not Dr. Czarnik should have been named as, and is properly, a co-inventor is based on the patent claims and Dr. Czarnik's contribution to the conception of the *claimed* invention.

As alleged in the Complaint, "Dr. Czarnik's inventive contribution to the Embedded/Encapsulated Nanocrystal Invention is described in an April 1999 Illumina Invention Disclosure document, which names Dr. Czarnik, Chanfeng Zhao, and Steven M. Barnard." Complaint, ¶ 61. The Illumina Invention Disclosure Form, which is attached as Exhibit A hereto, requires the signatures of "each person who made an intellectual contribution to the invention described in this disclosure" and of "two witnesses who are not inventors who understand the technical aspects of this invention." Exh. A at ILL 04299-300. The Invention Disclosure Form was signed off on by Dr. Chanfeng Zhao, by Dr. Steven M. Barnard and by Dr. Czarnik, as the individuals who made an intellectual contribution to the invention described in the disclosure, and by Dr. Todd Dickenson, Illumina Scientist, and Steven Auger, Illumina Senior Scientist, as witnesses who are not inventors who understand the technical aspects of the invention. *Id.* As alleged in the Complaint, as confirmed in the Invention Disclosure Form (Exh. A hereto), and as other documentary and testimonial evidence will show during the course of this case, Dr. Czarnik should have been named, and is, a co-inventor of the Embedded/Encapsulated Nanocrystal Invention, as well as the IBL/DBL Invention. *See* Complaint, ¶¶ 23-69.

Based on the factual allegations set forth in Dr. Czarnik's Complaint and proper consideration of the applicable Statutes and case law, as explained in detail herein, Dr. Czarnik has standing to bring the causes of action of Counts I-IV of the Complaint, this Court has subject matter jurisdiction over those causes of action, and each of the Counts, as pled, properly states a claim upon which the requested relief may be granted.

## LEGAL STANDARDS

"Where the defendant [. . . ] ha[s] not filed an answer to the complaint as in the instant case, the attack on subject matter jurisdiction is necessarily considered a facial attack." *ARGOS v. Orthotec LLC*, 304 F. Supp.2d 591, 593 (D. Del. 2004). As Illumina recognizes, pursuant to a facial attack to subject matter jurisdiction, "the court will construe a plaintiff's allegations as true, and will not look beyond the face of the complaint to determine jurisdiction." *Kanematsu Corp. v. Advanced Materials Lanxide, LLC*, 2002 U.S. Dist. LEXIS 27043, at *9 (D. Del. Sept. 30, 2002). *See* Motion at 4.

"In reviewing a motion to dismiss pursuant to Rule 12(b)(6), courts must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Stratos Lightwave, Inc. v. Picolight, Inc.*, 2005 U.S. Dist. LEXIS 4586, at *3 (D. Del. Mar. 23, 2005) (quoting *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000)) (internal quotations omitted). Most importantly, "[a] complaint should be dismissed <u>only if</u>, [. . .] no relief could be granted under any set of facts consistent with the allegations of the complaint." *ARGOS*, 304 F. Supp.2d at 596 (internal citation and quotations omitted) (emphasis added).

10

## ARGUMENT

Although Illumina recognizes, and parrots, the correct legal standard with respect to a facial challenge to subject matter jurisdiction, it then promptly skews the focus of its Motion to examine what it characterizes as "facts" which are irrelevant to the issues raised by Illumina's motion, and are broadly and wildly mischaracterized by Illumina. As demonstrated below in sections I-III, Illumina's motion should be denied because the arguments set forth in Illumina's motion do not meet the applicable standard. Moreover, this Court has subject matter jurisdiction to address Dr. Czarnik's claim for correction of inventorship pursuant to 35 U.S.C. § 256 and Dr. Czarnik has standing to make that claim since the Complaint alleges Dr. Czarnik's Injury-In-Fact (*see* Complaint, ¶¶ 3-4, 59, 69, 94-97, and 153-154). *See* Section I, *infra*.

Subject matter jurisdiction lies with this Court to hear Dr. Czarnik's claim requesting a change to the inventorship on the pending patent applications. Dr. Czarnik does not request that this Court directly alter the inventorship on the subject patent applications, nor has he come to this Court before attempting to seek redress in the PTO. Dr. Czarnik's only route to redress of his claims with respect to the pending patent applications at issue is through this Court. Moreover, since the patent applications at issue are related to the issued patents which are the subject of the § 256 claim, this Court can properly address Dr. Czarnik's claim in accordance with the Federal Circuit's decision in *Chou* and pursuant to 28 U.S.C. § 1367 *See* Section II, *infra*. The declaratory judgment claim for unenforceability based on incorrect inventorship (Count III) is

11

supported by supplemental jurisdiction resulting from this Court's original jurisdiction over the § 256 claim. *See* Section III, *infra.*

Likewise, Illumina's motion to dismiss the state fraud claim for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) also fails because Illumina cannot meet, and has not met, the applicable legal standard. If this Court takes all of the allegations of the Complaint as true, as it must, the state fraud claim is proper since relief could be granted "consistent with the allegations of the complaint." *ARGOS*, 304 F. Supp.2d at 596. *See* Section IV, *infra.*

## I.    Dr. Czarnik Has Alleged a Cognizable Harm Sufficient to Support Standing to Assert a Claim to Correct Inventorship Under 35 U.S.C. § 256

Illumina contends that Dr. Czarnik cannot assert a claim pursuant to 35 U.S.C. § 256 because he does not "demonstrate an injury-in-fact that is traceable to Illumina's failure to name him as an inventor." Motion at 5.[2] In setting forth its argument, Illumina misses two key points which are both related to the legal standard required to prevail on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). In addition, in its argument,

---

[2]Defendant Illumina also contends that "Dr. Czarnik's complaint, on its face, fails to allege proper grounds for subject matter jurisdiction in this Court and should therefore be dismissed pursuant to Rule 12(b)(1). Motion at 4. However, the existence of subject matter jurisdiction in this Court, and the legal and factual bases supporting that jurisdiction are indisputable. As clearly set forth in the Complaint, Dr. Czarnik's cause of action is created by 35 U.S.C. § 256, "which explicitly authorizes judicial resolution of co-inventorship contests over issued patents .... Section 256 affords the opportunity to correct the patent. S. Rep. No. 1979, 82nd Cong., 2nd Sess. at 7 (1952). If the patentees and their assignees agree, correction can be had on application to the Commissioner [of the U.S. Patent and Trademark Office]. In the event consensus is not attained, however, the second paragraph of section 256 permits redress in federal court. *See* P.J. Federico, Commentary on the New Patent Act, *35 U.S.C.A. 1* (1954) ('If [the parties] do not concur, the correction can only be made on order of a court ... Section 256 ... gives a court authority to order correction'). The statute prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard. If that is done, there is subject-matter jurisdiction in the district court over a dispute raising solely a joint inventorship issue among contending co-inventors." *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1570 (Fed. Cir. 1989) (citations omitted). Here, there is no dispute that all parties have been given notice and opportunity to be heard. Thus, this Court has subject

12

Illumina relies on District Court cases which do not apply to the facts of the present case and which, although they discuss the only present statement from the U.S. Court of Appeals for the Federal Circuit, do not have the force or effect of overruling or undermining that Court's view – a view which unquestionably supports Dr. Czarnik's standing to bring the asserted claims in this action.

First, Illumina states that Dr. Czarnik does not "tie his alleged loss of prestige to any actual pecuniary consequence, such as lost employment opportunities or bonuses due to not being named as a co-inventor." Motion at 6.  This statement is both untrue and irrelevant at this stage in the present proceeding.  Notably, Illumina has quoted in its Motion only a selected portion of the applicable factual allegations set forth in Dr. Czarnik's Complaint. *See* Motion at 6.  The complete factual allegation from the Complaint includes what the Federal Circuit has recognized as demonstrating the injury-in-fact required to confer standing because "pecuniary consequences may well flow from being designated as an inventor." *Chou*, 254 F.3d at 1359.  That allegation, in full, sets forth Dr. Czarnik's damages as:

> [. . . ] damage to Dr. Czarnik's reputation and standing within the scientific community, eliminating the reputational benefits associated with being named as an inventor, a loss of prestige within the scientific community resulting from his inventions being recognized as another's, and substantially devaluing Illumina's patent portfolio by rendering unenforceable those U.S. and foreign patents and applications claiming Dr. Czarnik's IBL/DBL Invention and Embedded/Encapsulated Nanocrystal Invention.

Complaint, ¶ 153.  The factual allegations from the Complaint establishing Dr. Czarnik's "Injury-In-Fact" are set forth above in the Summary of Argument and Statement of Facts

matter jurisdiction over Dr. Czarnik's § 256 claim.

13

sections. These factual allegations and the harm suffered by Dr. Czarnik from Illumina's actions are exactly what the Federal Circuit had in mind when it recognized that "pecuniary consequences may well flow from being designated as an inventor."

Further, because Illumina is presenting its argument within the context of a motion to dismiss, its assertion that Dr. Czarnik is not pleading "actual pecuniary consequences" is irrelevant. Motion at 6. This is true for two separate and independently sufficient reasons. First, in order to prevail on a motion to dismiss pursuant to a facial attack on subject matter jurisdiction, Illumina must meet its burden assuming all of the allegations of the complaint are true. *Kanematsu Corp.*, 2002 U.S. Dist. LEXIS 27043, at \*9. Thus, for purposes of this motion, the factual allegations of the Complaint stating Dr. Czarnik's Injury-In-Fact are treated as being true and, pursuant to the statements of the Federal Circuit, such harm may meet the injury-in-fact required to satisfy Article III standing since they may cause pecuniary loss. *Chou*, 254 F.3d at 1359.

Second, contrary to what Illumina seems to believe, Dr. Czarnik is not required to allege every specific instance of harm or pecuniary interest he has suffered within his complaint. This is so because notice pleading under Fed.R.Civ.P. 8(a)(2) requires only that the allegations of the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[3] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1, 9 (2002) (internal citation and quotations omitted). This "pleading standard relies on liberal discovery rules and summary

---

[3]   Count IV must, and, indeed does, meet the pleading requirements of Fed.R.Civ.P. 9(b). Even under this standard, Dr. Czarnik is not required to plead exact damage amounts or each and every instance of harm. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998).

judgment motions to define disputed facts and issues to dispose of unmeritorious claims." *Id*. Thus, Dr. Czarnik is not required to allege every single instance of harm he may have suffered since he undoubtedly will discover and quantify these harms during discovery. Such a natural result flowing from the operation of discovery in the federal court system has been recognized and noted in Dr. Czarnik's subsequent allegations. That is, as a result of such discovery, Dr. Czarnik will be able to prove his damages in a concrete dollar amount "at trial." Complaint, ¶ 154.

Moreover, Illumina bases its incorrect and largely irrelevant argument on case law which has no precedential bearing on this Court, nor does it lessen the statement of the Federal Circuit made in its 2001 *Chou* decision. *See Chou*, 254 F.3d at 1359. Illumina begins by citing a case which does not stand for the proposition it asserts. *Cole v. Gummow*, 2003 U.S. Dist. LEXIS 18925 (N.D. Tex. Oct. 22, 2003). Specifically, Illumina cites the *Cole* case as an example in which a court "reject[ed] an argument that an injury to reputational interest was enough to confer standing." Motion at 6. The Court did not render such a holding. Instead, after recognizing that "no federal court has yet to determine whether the mere status of inventor is sufficient to confer standing," the Court declined to even reach the question of whether such injury is sufficient because the plaintiff in that case "ha[d] offered neither evidence nor argument to assist the court in answering this jurisdictional question." *Cole*, 2003 U.S. Dist. LEXIS 18925, at *10.

The next case which Illumina relies upon is similarly inapposite. *Kucharczyk v. Regents of Univ. of Cal.*, 48 F. Supp.2d 964 (N.D. Cal. 1999).[4] In its attempt to somewhere find support for its position, Illumina mischaracterizes the facts in the *Kucharczyk* case and, in support of that mischaracterization, misquotes the case. *See* Motion at 6. Specifically, in the *Kucharczyk* case, the plaintiffs claimed that they "should have standing because they are 'proud' of their invention, and that they are therefore injured by the presence of [an additional inventor's] name on the patent." *Kucharczyk*, 48 F. Supp.2d at 975. Thus, plaintiffs in that case were asserting harm to their pride based on the fact that an additional inventor was listed on the patent that they did not think made an inventive contribution to the claimed invention. Such a loss of mere pride is not comparable to a loss of reputational interest flowing from deliberate omission as a listed inventor on several patents and related applications – i.e., Dr. Czarnik's Injury-In-Fact -- as has been suffered by Dr. Czarnik in the instant case. Based on this mischaracterization, or ignorance of the facts in the *Kucharczyk* case, Illumina misquotes that case to state that the court discounted reputational injury as "an acceptable Article III [ . . . ] injury." *Id.* However, reputational injury, unlike a loss of pride, can result in outward damage, as the Federal Circuit recognized when it stated that "[p]ecuniary

---

[4]   The *Kucharczyk* case was decided more than two years prior to the Federal Circuit's *Chou* case. Illumina acknowledges that the *Chou* Court "disagreed with *Kucharczyk*." Motion at 7 n.2. That, however, is an understatement. What the *Chou* Court actually did was make the observation that, "[w]e are not bound by the decisions of district courts; respectfully, we do not agree with them." *Chou*, 254 F.3d at 1358. Additionally, the Court held that 35 U.S.C. § 256 "imposes no requirement of potential ownership in the patent on those seeking to invoke it [ . . . and therefore] Chou should have the right to assert her interest, both for her own benefit and in the public interest of assuring correct inventorship designations on patents. The interest of both inventors and the public are thus served by a broad interpretation of the statute." Id. These holdings are a far cry from a mere "disagreement" with the holding in *Kucharczyk*. In fact, these holdings from the Federal Circuit's decision in *Chou* provide further *support* for Dr. Czarnik's case in that

16

consequences may well flow from being designated as an inventor." *Chou*, 254 F.3d at 1359.

Finally, the transcript from the *L.G. Philips LCD Co., Ltd. v. Bovio, C.A.* case which Illumina attached to its motion to dismiss is equally unavailing. *See* Motion, Exh. B. Although Illumina is correct in that the parties addressed the reputational interest issue during that hearing, the decision rendered by the Court granting the motion to dismiss based on lack of subject matter jurisdiction was premised on a much different issue. That is, because Mr. Frame, one of the defendants, had stated by "unequivocal declaration in [a] letter and in this court that he will not sue and does not intend to sue under [35 U.S.C. § 256] to enforce any right that he has," the reasonable apprehension of suit prong in the declaratory judgment context could not be met, therefore defeating subject matter jurisdiction.[5] Motion, Exh. B at 68-9. Thus, contrary to Illumina's assertions with respect to this case, it does not decide, or even directly implicate, the issue of reputational interest as an Article III standing injury-in-fact.

## II.    Illumina Fails To Meet its Burden Under<br>Fed.R.Civ.P. 12(b)(1) With Respect to the 35 U.S.C. § 116 Claim

Illumina requests that this court dismiss Count II of the Complaint based on lack of subject matter jurisdiction. Motion at 8-9. Illumina bases its Fed.R.Civ.P. 12(b)(1) attack on what it alleges is the lack of an express authorization within 35 U.S.C. § 116 for a district court action with respect to modifying the inventorship on pending patent

---

the public interest must be protected.

[5]    This is a misstatement of the law with respect to claims brought pursuant to 35 U.S.C. § 256. Because such claims do not implicate the operation of 28 U.S.C. § 2201, the declaratory judgment prerequisites for

applications. *Id.* Illumina's assertions with respect to this claim are deficient for at least three reasons.

First, Dr. Czarnik has not requested that this Court directly correct the inventorship on the patent applications at issue. Rather, Dr. Czarnik requests that the Court issue an order "requiring the Director of the U.S. Patent and Trademark Office, and Defendant Illumina, to correct the inventorship in the U.S. and in all foreign patent offices by adding Dr. Czarnik as an inventor." Complaint, Prayer for Relief, ¶ B. The cases cited, and indeed, the same quote pointed to, by Illumina clearly states that "[t]he text of Section 116 [. . . ] only grants the Director of the [PTO] the authority to take certain actions and plainly does not create a cause of action in the district courts to modify inventorship on pending patent applications." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356 n.1 (Fed.Cir. 2004).[6] Thus, Dr. Czarnik's prayer for relief does not run afoul of the express grant of power in 35 U.S.C. § 116.

Second, as alleged in the Complaint, Dr. Czarnik has attempted to pursue his claim within the PTO as to the patent applications on which he believes he should have properly been named as a co-inventor. Complaint, ¶¶ 98-100. The PTO has taken no action on these protests. *Id.*, ¶ 100. Additionally, the courts have interpreted 35 U.S.C. § 256 as requiring agreement of all parties on the proper inventorship to permit recourse through the PTO. *Hydril Co. v. Baker Hughes Inc.*, 1997 U.S. App. LEXIS 21745, at *13

---

subject matter jurisdiction need not be met. *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1571 (Fed. Cir. 1989).

[6] This statement in *Eli Lilly* was *dicta* since "it found that the district court had constructively converted plaintiff's claim to a § 256 claim when the patent in question was issued during the course of the litigation." *Sagoma Plastics, Inc. v. Gelardi*, 366 F. Supp.2d 185, 189 n.2 (D. Me. 2005).

(Fed. Cir. Aug. 19, 1997) (citing *MCV, Inc.*, 870 F.2d at 1570). Given the fact that

Sections 116 and 256 are parallel, just as with Section 256, the Director of the PTO

would likely not change inventorship on pending patent applications pursuant to § 116

without agreement of all of the interested parties. *Sagoma Plastics, Inc.*, 366 F. Supp.2d

at 187 (recognizing the parallel nature of Sections 116 and 256). Again, based on the

parallel nature of these provisions, it is at least equally plausible that Congress believed a

putative inventor could seek correction of inventorship on patent applications through a

district court in the absence of the ability to petition the PTO to do so based on the fact

that all parties do not agree.[7] Indeed, in the absence of even an implied right of action in

the district courts, a putative inventor is left with a right to correct inventorship on a

patent application without a method to redress the denial of that right. This is

unpermitted in our justice system. *Marbury v. Madison*, 5 U.S. 137, 152 (1803) ("It is a

settled and invariable principle, that every right, when withheld, must have a remedy, and

every injury its proper redress.").

Third, again the cases on which Illumina rests its arguments do not support the

weight of the burden Illumina shoulders. As noted in footnote 6 above, the *Eli Lilly* case

only supported Illumina's propositions in *dicta* and has never directly made a

precedential holding on the subject. Further, the other case Illumina cites in support of its

proposition is totally inapposite. *See Airport Surface Techs., L.L.C. v. Field Turf, Inc.*,

268 F. Supp. 2d 999 (N.D. Ill. 2003). In the *Airport Surface* case, what plaintiffs were

---

[7] *Cf., Sagoma Plastics, Inc.*, 366 F. Supp.2d 185 (Court finds that the absence of an express ability to seek correction under section 116 means that Congress did not intend for one to be available.)

"really seeking [wa]s a determination of priority of invention." *Id.*, at 1002. Thus, plaintiffs were attempting to use § 116 as an end run around 35 U.S.C. § 135 which grants the PTO exclusive jurisdiction over priority disputes. *Id.* Although the case does make the statement that § 116 does not "explicitly create jurisdiction in the district courts," it does not state that such jurisdiction is not implicitly created. *Id.*, at 1003.

What is telling is the lack of any reference in Illumina's discussion of Dr. Czarnik's legal basis to correct inventorship on the pending U.S. and foreign patent applications (Count II) to the Federal Circuit's decision in *Chou.* Importantly, in *Chou,* the Federal Circuit stated that, because granted patents were at issue, "the district court, if it concludes on remand that Chou is properly an inventor of the disputed subject matter, can instruct the University to take appropriate action to change the inventorship designation on the foreign patent applications" on which she also claimed to be an inventor. *Chou,* 254 F.3d at 1360. This conclusion was based on the fact that "inventorship on such applications normally follows the inventorship designation in the originating country." *Id.* This same reasoning applies in the case of related U.S. patent applications – that is, for the pending U.S. applications claiming priority directly or indirectly in the applications that issued as the patents which are the subject of the § 256 claims. The U.S. and foreign patent applications which are the subject of Dr. Czarnik's Count II are each based on, and claim priority directly or indirectly from, the issued U.S. patents which are the subject of Dr. Czarnik's Count I. *See, e.g.,* Complaint, ¶¶ 43, 46, 50, 56, and 62. For the same reasons that the Federal Circuit in *Chou* found that the District Court had subject matter jurisdiction to correct inventorship on the related

20

foreign applications, subject matter jurisdiction lies in this Court to correct inventorship on the related applications which are the subject of Dr. Czarnik's Count II.

Furthermore, because this Court has original subject matter jurisdiction over the § 256 claim, it has jurisdiction over the declaratory judgment claim of inventorship of the pending U.S. and foreign patent applications pursuant to 28 U.S.C. § 1367, since the declaratory judgment claim springs from the same set of operative facts.

Since Dr. Czarnik does not request that this Court directly alter the inventorship on the subject patent applications, nor has he come to this Court before attempting to seek redress in the PTO, Dr. Czarnik's only route to redress of his claims with respect to the pending patent applications at issue is through this Court. Illumina's "supporting" case law does not block such an attempt, and, thus, Illumina can not meet its burden under a Fed.R.Civ.P. 12(b)(1) claim since the claims presented here are not "wholly insubstantial and frivolous."[8] *ARGOS*, 304 F. Supp.2d at 593. Finally, subject jurisdiction lies in this Court to correct inventorship on the related U.S. and foreign applications identified in the Complaint in accordance with *Chou* and pursuant to 28 U.S.C. § 1367.

### III.    Because Supplemental Jurisdiction Exists for the Declaratory Judgment of Unenforceability Based on Inequitable Conduct, Dr. Czarnik May Assert Count III

Illumina asserts that, because Dr. Czarnik cannot meet the test for a case or controversy pursuant to the Declaratory Judgment Act, Count III must be dismissed

---

[8]    It is not at all clear that Illumina has even brought this motion under the correct provision of the federal rules. That is, "the core of [Illumina's] argument is that the provision of federal patent law at issue does not provide [Dr. Czarnik] with a cause of action for which relief can be granted. [. . . ] disputes over the interpretation of federal [. . . ] law generally go to the merits of a claim rather than jurisdiction." *Sagoma Plastics*, 366 F. Supp.2d at 190. "Under this standard, dismissal under Rule 12(b)(1) is inappropriate when the case hinges upon an arguable interpretation of federal law." Id.

pursuant to Fed.R.Civ.P. 12(b)(1). Motion at 9-11. However, because this Court has original subject matter jurisdiction over the § 256 claim, it has jurisdiction over the declaratory judgment claim pursuant to 28 U.S.C. § 1367 since the declaratory judgment claim springs from the same set of operative facts.

In pertinent part, 28 U.S.C. § 1367(a) reads:

In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that *they form part of the same case or controversy* under Article III of the United States Constitution.

28 U.S.C. §1367(a) (emphasis added). Thus, "[s]upplemental jurisdiction [. . .] allows a district court which has jurisdiction over a federal claim to also maintain jurisdiction over related claims [. . .] over which it otherwise would lack jurisdiction." *Matsuda v. Wada*, 128 F. Supp. 2d 659, 671 (D. Haw. 2000). *See also, Geer v. Cox*, 216 F.R.D. 677, 678 (D. Kansas 2003) ("When a federal court has original jurisdiction over a civil cause of action, § 1367 determines whether it may exercise supplemental jurisdiction over other claims that do not independently come within its jurisdiction, but that form a part of the same Article III case or controversy.")

Here, all of the asserted claims are based on the incorrect inventorship of the subject patents and applications, and Illumina's activities with respect to the omission of Dr. Czarnik's inventorship from all interested parties, including the PTO and Dr. Czarnik himself. Since this Court has original jurisdiction over the § 256 claim (Count I), this Court may also exercise jurisdiction over the declaratory judgment action for unenforceability of the subject patents and applications (Count III) based on this same

22

core of operative facts. In fact, the Federal Circuit determined that a declaration of

unenforceability was proper based on an inequitable conduct claim stemming from a

similar inventorship issue evidencing repeated conduct to omit a proper inventor "from

participation in the patent." *See Frank's Casing Crew & Rental Tools, Inc. v. PMR

Techs., Ltd.*, 292 F.3d 1363, 1376 (Fed. Cir. 2002). The declaratory judgment plaintiff

requested both a correction of inventorship pursuant to § 256 and a declaratory judgment

of unenforceability based on the inventorship issue, and was granted both forms of relief.

*Id.* at 1376-77.

With respect to Count III, Illumina next argues that, even if the Court had

jurisdiction with respect to the issued patents, it would not have jurisdiction with respect

to the pending patent applications. Motion at 11. However, if a specific patent is

declared unenforceable based on inequitable conduct "early in the prosecution [such

conduct] may render unenforceable all claims which eventually issue from the same or a

related application." *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 4 F. Supp.

2d 477, 487 & 13 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000) (quoting *Fox

Industries, Inc. v. Structural Preservation Systems, Inc.*, 922 F.2d 801, 804 (Fed. Cir.

1990)).[9] As set forth in the Complaint, the improper naming of an inventor or omission

of a proper inventor may lead to a finding of inequitable conduct since the correct

---

[9] In a related argument, Illumina asserts that it is "premature" to determine unenforceability as to the
subject patent applications because "it is possible [. . . ] to cure inequitable conduct during prosecution of
the application." Motion at 12. What Illumina fails to point out is that, while it may be possible to cure
inequitable conduct, such cure of inequitable conduct can only occur in "certain limited circumstances" and
"a complete 'cure' must also be demonstrated by clear, unequivocal, and convincing evidence." *Rohm &
Haas Co. v. Crystal Chemical Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983). Most importantly, here, the only
evidence, as alleged in Dr. Czarnik's Complaint, is that Illumina has refused to "cure" the alleged
inequitable conduct. *See* Complaint, ¶¶ 98-100.

inventorship information is material to the patentability of the claims in the pending application. *See* Complaint, ¶ 137. Thus, since there is a set of facts on which subject matter jurisdiction over the pending patent applications could be found, the present motion must be denied as to Count III.

## IV.   Dr. Czarnik's State Law Fraud Claim, As Pled, Properly States A Claim Upon Which The Requested Relief May Be Granted

As an initial matter, Illumina asserts that, because Dr. Czarnik has "no recognizable interest in the patents and applications he seeks to correct [. . . ,] it follows that Czarnik also lacks standing to bring his fraud claim (Count IV) that turns on the correction of inventorship issue." Motion at 8. This statement is legally incorrect, as illustrated by one of the very cases which Illumina cites as allegedly supporting its own manufactured positions. "[D]ismissal of their section 256 claim does nothing to prevent plaintiffs from asserting their state law claims for fraud [. . . ] because they are still free to establish that [defendant] fraudulently caused them [. . . ] to believe [the additional named inventor] was an inventor." *Kucharczyk*, 48 F. Supp.2d at 975. Similarly, here, Dr. Czarnik is still free to establish that he is a proper co-inventor of the inventions claimed in the patents and applications, even if he is not entitled to a declaration by the court requiring Illumina or the PTO to change the inventorship on such pursuant to a declaration under 35 U.S.C. § 256. Thus, even if Dr. Czarnik is unable to maintain his claim to correct inventorship, the Court can determine whether or not he is a proper inventor, and based on that determination, resolve the fraud claim set forth in Count IV of the Complaint.

24

In advancing its argument with respect to its motion to dismiss the state law fraud claim based on a failure to state a claim, Illumina alleges that Dr. Czarnik does not state a claim "because the purported misrepresentations were not made to Czarnik." Motion at 13. In making this argument, Illumina either overlooked or simply chose to ignore the four lines subsequent to the block quote Illumina provides from the single case it offers in support of its position. "[Fraud] may also occur through deliberate concealment of material facts." *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). "Thus, one is equally culpable of fraud who by omission fails to reveal that which it is his duty to disclose in order to prevent statements actually made from being misleading." *Id.* Clearly, the Complaint alleges such omission committed by Illumina and its principles repeatedly over a period of years, which Dr. Czarnik only recently became aware of. *See, e.g.*, Complaint, ¶¶ 87-97. Pursuant to a motion to dismiss for failure to state a claim, these allegations must be accepted as true, and, clearly, if true, relief could be granted "consistent with the allegations of the complaint." *ARGOS*, 304 F. Supp.2d at 596. As a result, Illumina's motion to dismiss must be denied as to the state law fraud claim.

It appears that Illumina is also asserting that, in the absence of a cognizable injury, the state fraud claim cannot withstand a motion to dismiss. Motion at pp. 13-14. However, as discussed in section I above, Dr. Czarnik is not required to spell out an exact price tag on the harm he has suffered at this early stage of the case. Dr. Czarnik's Injury-In-Fact carries along with it pecuniary harm which exact amount can be determined after discovery has progressed. Thus, Illumina fails to meet its burden under a motion to dismiss for this count as well.

25

## CONCLUSION

For the reasons set forth above, Illumina's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) should be **denied**.


Dated:  August 22, 2005                    Respectfully submitted,

                                           _____
                                           Martin S. Lessner (No. 3109)
                                           Adam W. Poff (No. 3990)
                                           Young Conaway Stargatt & Taylor, LLP
                                           The Brandywine Building
                                           1000 West Street, 17th Floor
                                           P.O. Box 391
                                           Wilmington, Delaware 19899-0391
                                           (302) 571-6600

                                           ATTORNEY FOR PLAINTIFF
                                           DR. ANTHONY W. CZARNIK


OF COUNSEL:
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
Martin M. Zoltick
Steven Lieberman
Lisa N. Phillips
1425 K Street, N.W.
Suite 800
Washington, DC 20005
Phone: (202) 783-6040
Fax:    (202) 783-6031

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard K. Herrmann, Esquire
> Morris James Hitchens & Williams LLP
> 222 Delaware Avenue, 10th Floor
> PO Box 2306
> Wilmington, DE 19899-2306

I further certify that on August 22, 2005, I caused a copy of the foregoing document to be served by the manner indicated on the following counsel of record:

**BY HAND DELIVERY**

> Richard K. Herrmann, Esquire
> Morris James Hitchens & Williams LLP
> 222 Delaware Avenue, 10th Floor
> PO Box 2306
> Wilmington, DE 19899-2306

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Adam W. Poff (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
apoff@ycst.com

Attorneys for Dr. Anthony W. Czarnik