# EXHIBIT   A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


L.G. PHILIPS LCD., CO. LTD    )   C.A. No. 11076-RCL

VS.                  )   Courtroom No. 11

MICHELE B. BOVIO         )   One Courthouse Way

ROBERT C. FRAME          )   Boston, MA  02210



JANUARY 10, 2005

3:12 P.M.


HEARING ON MOTIONS



BEFORE THE HONORABLE REGINALD C. LINDSAY

UNITED STATES DISTRICT JUDGE




Valerie A. O'Hara

Official Court Reporter

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1    A P P E A R A N C E S:

2    For the Plaintiff:

3        Casner & Edwards, LLP, by ANDREW M. HIGGINS, ESQ., 303
Congress Street, Boston, Massachusetts  02210, for the
4    Plaintiff;

5        Morgan, Lewis & Bockius, LLP, by ANTHONY C. ROTH, ESQ.
and CORINNE A. NIOSI, ATTORNEY, 1111 Pennsylvania Avenue,
6    NW, Washington D.C., 20004, for the Plaintiff;

7    For the Defendant:

8        Howrey, Simon, Arnold & White, LLP,
by MICHAEL LANGER RESCH, ESQ., 550 South Hope Street,
9    Suite 1100, Los Angeles, California  90071-2627, for the
Defendant;
10

11        Taylor, Duane, Barton & Gilman, LLP, by ANDRIA COLETTA,
ATTORNEY, 160 Federal Street, Boston, Massachusetts  02110,
for the Defendant.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1        THE CLERK:  All rise.  Civil Action 04-11076-RCL,

2   L.G. Philips Company Limited versus Bovio and Frame.

3   Counsel, please identify yourself for the record.

4        MR. HIGGINS:  Good afternon, your Honor, Andrew

5   Higgins from Casner & Edwards representing the Plaintiff.

6   With me today are Anthony Roth and Corinne Niosi from the

7   Washington firm of Morgan Louis.

8        THE COURT:  Spell Niosi for me.

9        MS. NIOSI:  N -- as in Nancy -- i-o -- s as in

10  sam -- i.

11       THE COURT:  Okay.

12       MR. HIGGINS:  Mr. Ross' appearance, he has been

13  admitted for purposes of this case, your Honor, by motion.

14       THE COURT:  Okay.

15       MS. COLETTA:  Your Honor, Andria Coletta from

16  Taylor, Duane, Barton & Gilman.  We are local counsel for

17  Defendants Robert Frame and Michele Bovio, and with me is

18  Michael Resch from the Los Angeles office of Howrey Simon,

19  and he has been admitted pro hoc VJ to this Court by motion.

20       THE COURT:  All right.  These are motions of the

21  Defendants to dismiss, one for jurisdiction with respect to

22  Mr. Bovio, and one about subject matter jurisdiction with

23  respect to Mr. Frame; is that right?

24       MR. RESCH:  That's correct, your Honor.

25       THE COURT:  Why don't you start out, since these

1    are your motions, by telling us some things that your

2    papers, voluminous that they are, on both sides, what has

3    happened in the Central District of California to the case

4    out there, and I hesitate to describe it either as the dog

5    or the tail -- because I'm not sure what I am in this

6    case -- but tell me what's happened in California.

7         MR. RESCH:  Well, your Honor, most importantly for

8    the purposes of these motions, the Plaintiff, the

9    declaratory Plaintiff here and the Plaintiff there have

10   filed a motion to stay that litigation.

11        THE COURT:  Your papers indicate that that motion

12   was denied?

13        MR. RESCH:  That's correct, your Honor.  Since

14   then we have been proceeding forward, and there's claim

15   construction scheduled, I believe, for next week, the 13th

16   of January.  It was originally set for January 7th.  That

17   case is essentially proceeding forward.  Discovery has been

18   taken and is continuing in that case, for example, the

19   declaratory defendants here, Mr. Frame and Mr. Bovio, both

20   have already been deposed in that case.  They've agreed to

21   sit for one more day of deposition, and that's sort of where

22   we are in that case.

23        THE COURT:  You, I mean, your client, move to

24   amend the complaint or was it move to amend your answer to

25   assert a counterclaim against the Plaintiff in this case.

1   Tell me if I'm wrong when I stop.  Was the motion to amend

2   the counterclaim to add a claim concerning inventorship?

3          MR. RESCH:  Here's the history, your Honor.  First

4   of all, the declaratory defendants here, Mr. Frame,

5   Mr. Bovio, are not parties.

6          THE COURT:  They're witnesses?

7          MR. RESCH:  They're witnesses, that's exactly

8   right.  The defendant in the California action is CPT.  In

9   December, 2002 -- remember the California action was filed

10  in August of '02.  In December, '02, CPT answer, filed its

11  first answer, and defended the case in part by bringing up

12  the inventorship issue and alleging that the proper

13  inventors were not named in the patent.  That was way back

14  in December of '02.

15         THE COURT:  By the way, what difference does that

16  make?

17         MR. RESCH:  What difference does what make?

18         THE COURT:  If the inventors were not named.

19         MR. RESCH:  That would invalidate the patent, your

20  Honor, under our defenses, so, therefore the patent

21  infringement action --

22         THE COURT:  Under the statute, if you named the

23  wrong inventors, the patent is invalidated?

24         MR. RESCH:  Yes, your Honor, that's certainly my

25  understanding of I believe it's 102E, and so that is a

1    defense to the infringement action.  I think it also

2    supports counterclaims that may be brought in the patent

3    infringement action, but, yes, that's the most important

4    part, I suppose, for the purposes of that action, it would

5    be a defense to the patent infringement action.  So, your

6    Honor, what happens is in December, 2002, that issue is

7    placed in the answer.  That defense is placed in the answer,

8    and from then on --

9              THE COURT:  Before you leave that, before you

10   leave my last question --

11             MR. RESCH:  Yes.

12             THE COURT:  -- am I reading this statute wrong, 35

13   U.S.C., Section 256, when it says the error of omitting

14   inventors or named persons who are not named inventors shall

15   not invalidate the patent in which such error occurred if it

16   be corrected?  Did I read that wrong?

17             MR. RESCH:  No, your Honor, I believe that's what

18   256 says, your Honor; however, I think that the underlying

19   statute relevant to the patent infringement case states that

20   if the inventors are not stated properly, and specifically

21   in this case, your Honor, and this is really I guess the

22   most important point, if they are not the inventors that are

23   claimed and they are the inventors that CPT claims, then it

24   actually would no longer be a valid patent because the

25   patent holder in this case, now LPL, would not have properly

1    brought the issue to the patent office, and the patent would

2    no longer enure to their benefit, if that makes sense, your

3    Honor.

4                THE COURT:  It makes sense.  I understand.  Wasn't

5    there some summary judgment motion before Judge Marshall at

6    some point that raised that issue?

7                MR. RESCH:  Yes, here's the important part, I

8    think, your Honor.  Once we put the issue in our December,

9    2002, and by our, I mean, CPT, answer in the California

10    action, discovery starts going about inventorship.  There

11    are five inventors named on the patent, started asking

12    questions about those inventors, when they invented it, so

13    on and so forth.

14                There was not discovery, responsive discovery,

15    coming back on those issues.  CPT investigated the issues on

16    its own and found Mr. Frame and Mr. Bovio and found evidence

17    that they were in fact the true inventors of the technology

18    underlying the patents.  So, then, your Honor, in March,

19    '04, pursuant to a Central District of California local rule

20    that says CPT had to give 20 days' notice that is a meet and

21    confer period prior to bringing any motion.

22                In March of 2004, we gave that motion saying we

23    were going to move to amend our counterclaims to add a 256

24    action, among other things, and we were going to bring a

25    motion for summary judgment based in part on this

1    inventorship issue.  The inventor evidence that we had now

2    found had never been produced, and really no evidence had

3    been produced.  At that point, your Honor, after we gave the

4    notice was when the parties gave a 60-day stay, and that was

5    upon request by LPL, okay.

6        Right before the stay ends, LPL files this action

7    here in Massachusetts and then the motion to amend and the

8    motion for summary judgment are filed.  The motion for

9    summary judgment, LPL then asks for additional time to

10   respond to it, and then when they respond to it, your Honor,

11   they put in all this evidence re:  inventorship that had

12   never been previously produced.

13       Based upon all this evidence that was then put

14   into the California action, CPT withdrew the motion for

15   summary judgment.  So, that's the history of that summary

16   judgment motion regarding the inventorship.

17       THE COURT:  What happened to the motion to amend?

18       MR. RESCH:  The motion to amend went forward, and

19   in part was granted with respect to the 256 action, it was

20   denied without prejudice because the Court was alerted that

21   we were here before you, and at that time not knowing how

22   long it was going to take for this ruling, the Court said,

23   well, let's see what happens in Massachusetts, so on that

24   basis, I believe, the motion to stay was filed, or around

25   that time, but then Judge Marshall denied the motion to stay

1   and the side-mount patent litigation was proceeding

2   forward.

3          THE COURT:  Okay.

4          MR. RESCH:  That's sort of the history of that

5   litigation.

6          THE COURT:  Who is speaking for the Plaintiff in

7   this case?

8          MR. ROTH:  I am, your Honor.

9          THE COURT:  Why don't I put the question to you.

10  Why isn't this case properly resolvable in California and

11  not in Massachusetts?

12         MR. ROTH:  Because the issue presented in

13  Massachusetts is very different than the issue presented in

14  California.

15         THE COURT:  But the case in California could very

16  easily incorporate this issue.  For example, the technology

17  involved that you claim infringes your patent is technology

18  that you say Bovio and Frame claim to have invented; isn't

19  that right?

20         MR. ROTH:  Bovio and Frame have claimed to be

21  inventors on our patent.  Neither Bovio nor Frame is subject

22  to jurisdiction in the California court.

23         THE COURT:  Well, what difference does it make if

24  you get the matter concluded with respect to the Defendants

25  here and the Defendants in California if the inventorship

1   question is resolved in California or your infringement

2   claim is resolved in your favor, why do you need this case?

3          MR. ROTH:  The California case does not resolve

4   the issue as to Bovio and Frame.  The fact that CPT --

5          THE COURT:  Why do you need to resolve that issue?

6          MR. ROTH:  Because they're making affirmative

7   statements publicizing them that they are the inventors of

8   the patent that we are trying make.

9          THE COURT:  Are they making those statements in

10  anyplace other than in that California litigation?

11         MR. ROTH:  We don't know, but CPT has been

12  publishing their statements, presumably with their

13  permission, in publications like magazines and elsewhere.

14  We do not have any discovery from Mr. Bovio and Mr. Frame

15  concerning where else they may be making those statements.

16  The discovery that was mentioned was limited to the issue of

17  the summary judgment motion that had been filed by CPT, and

18  that is the only thing as to which was discovery has been

19  taken of Bovio and Frame from continuing to assert, but the

20  case in California would not prevent Bovio and Frame from

21  continuing to assert that they are the inventors of LPL's

22  side-mount patents, nor would we have a position that would

23  allow us to enforce that determination against Bovio and

24  Frame because they're not parties to that litigation.

25         THE COURT:  Well, this gets me into the question

1    that Mr. Frame raises whether there's subject matter

2    jurisdiction in this case, and you're standing up, and I

3    want to know from you why you think there is, and if he says

4    I wrote a letter to you and I told you I'm not going to sue

5    you, I don't own this technology anymore, I assigned it to

6    somebody, and indeed the people I've assigned to are not the

7    people who are now asserting the ownership of the technology

8    are not the people that I assigned it to, they got their

9    right to ownership such as it is from Digital Equipment,

10   isn't that right, this is now a secondary owner?

11            MR. ROTH:  It's four companies removed, but you

12   are correct, CPT is attempting to enforce the assignment

13   that Frame made.  The reason that, well, the letter from

14   Frame's counsel saying he will not sue is not adequate is

15   because it is not determined based on just looking at the

16   letter.  The letter is elusory.  The totality of the

17   circumstances here show that Frame is actively involved with

18   CPT in trying to have the inventorship changed.

19            THE COURT:  What do you mean by the totality of

20   the circumstances?  What is the totality of the

21   circumstances?

22            MR. ROTH:  The totality of the circumstances

23   include that Frame is represented by CPT's counsel.  The

24   totality includes that Frame signed an assignment that CPT

25   is attempting to enforce that requires him to cooperate in

Page 12

1   any activities related to a determination of that

2   invention.

3           THE COURT:  Does that assignment enure to the

4   benefit -- you say this assignment signed in Massachusetts

5   in, what, 1997?

6           MR. ROTH:  Yes.

7           THE COURT:  To Digital Equipment.  Everybody has a

8   right, the fourth level, these people, what is your company?

9           MR. RESCH:  CPT, your Honor.

10          THE COURT:  CPT has a right to insist on the right

11  that Digital had in that assignment, is that right, do you

12  agree?

13          MR. RESCH:  Yes.

14          THE COURT:  Is that right?  Do you agree?

15          MR. RESCH:  That CPT has the rights to the benefit

16  of that assignment?

17          MR. RESCH:  Yes, your Honor.

18          THE COURT:  Because what?

19          MR. RESCH:  Well, it's a fairly complicated

20  history, but essentially through a number of purchases, I

21  believe.

22          THE COURT:  You purchased the right to get

23  Mr. Bovio's and I guess Mr. Frame's cooperation?

24          MR. RESCH:  Well, your Honor, we purchased the

25  rights to the extent that our predecessor had the rights to

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1  the side-mount patents, and so that include whatever --

2          THE COURT:  Is it in the Bovio or Frame claim, I

3  didn't agree to cooperate with you at all, I agreed to

4  cooperate with Digital because I love Digital, it's my

5  company, and I work for them, I didn't agree to cooperate

6  with you.  Can that claim be made?

7          MR. RESCH:  Well, your Honor, I think that claim

8  is not really relative to the promise.

9          THE COURT:  It's relevant to one of the issues in

10 this case, isn't it, because one of the claims is that that

11 agreement, that assignment is the basis of jurisdiction over

12 Mr. Bovio?

13         MR. RESCH:  Of personal jurisdiction over

14 Mr. Bovio?

15         THE COURT:  Yes.  Maybe I'm moving too fast from

16 one issue to another issue.

17         MR. RESCH:  Well, the issue with regard to

18 Mr. Bovio I don't think has anything to do with that

19 September, '97 assignment at all.  In other words, your

20 Honor, I think it's quite clear from the case law, and we

21 can get into this more specifically, if you'd like to move

22 over to the personal jurisdiction argument now, but is that

23 the relevant conduct regarding Mr. Bovio is the conduct

24 relating to his participation in the California action.

25         THE COURT:  Before we get that, I just need to

1  know, it's relevant to my decision whether it is the case

2  whether you can insist on Mr. Bovio or Mr. Frame's help with

3  respect to this technology.  In other words, can you insist

4  that Mr. Bovio, Mr. Frame give you what Bovio and Frame

5  would have given DEC had it existed?

6         MR. RESCH:  Yes, your Honor.  I think that, and

7  I'd like to refer back to the assignment, if I could, but my

8  understanding of the transfers from, and I believe it went

9  through, for example, Hewlett-Packard to CPT now, and I must

10 confess, your Honor, I'm not that versed in the particular

11 of the agreements that transferred everything.

12        THE COURT:  Well, let me tell you this, it seems

13 to me that if Mr. Bovio or Mr. Frame could say that I don't

14 owe any loyalty to CPT --

15        MR. RESCH:  I think they could that say that, your

16 Honor.

17        THE COURT:  With justification.  I'm not bound by

18 this agreement.

19        MR. RESCH:  I think they could say that, your

20 Honor.

21        THE COURT:  And one part of the jurisdiction over

22 Bovia goes away, doesn't it?

23        MR. RESCH:  Yes.  I think they could say that,

24 your Honor.  As I said, I don't think that their argument

25 has any merit, in any event, and I am confident of that and

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1    can get into that in more detail, but if that is certainly

2    another way that I suppose if Mr. Bovio or Mr. Frame wanted

3    to refuse to cooperate that they could do so, and I guess

4    that way also eliminates that argument.

5              To me, that's I guess the other reasons why I

6    think that argument and the assignment are not really

7    relevant here are even stronger under the case law.

8              I'm sorry, your Honor, I was just going to say I

9    don't know how fast we're jumping around, but my colleague,

10   Mr. Roth, when we were referring to whether the issues in

11   this case are different or not a moment ago, I would just

12   point your Honor to page 9 of their opposition where it

13   says, "Thus, there is actual litigation on the very issue

14   that LPL raises in this Court."

15             THE COURT:  I'm going to get rid of these

16   preliminary matters and proceed in an orderly fashion in

17   just a minute.  I just want to get this stuff out of the

18   way.  You say these agreements are enforceable by CPT

19   against Bovio and Frame?

20             MR. ROTH:  Absolutely.  There is an agreement

21   between HP and CPT that transfer all of HP's, and through

22   that chain, DEC's rights related to the assignment.  The

23   assignment is Exhibit 4 to counsel's declaration.  Paragraph

24   5 of the declaration binds Bovio and Frame and their heirs

25   and their legal representatives and assignees to take all

1    acts reasonably certain to ensure that said inventions...

2    shall be held and enjoyed by assignee as fully and entirely

3    as the same could have been held by Frame or Bovio.

4              THE COURT:  What you're telling me that agreement

5    says is that Frame and Bovio, Frame and Bovio by themselves

6    and their heirs and successors to the assignee?

7              MR. ROTH:  Right, and the assignee assigned all of

8    its right to Compaq and then HP, and HP sold them.

9              THE COURT:  I understand that.  Are you telling me

10   that Bovio and Frame's agreement which doesn't say, as you

11   read it to me, that they agree to give this same cooperation

12   to assignees and successors of DEC?  These are personal

13   obligations, are they not, of Bovio and Frame, they

14   personally say that we are going to help you, DEC?

15             Now, they can assign whatever -- DEC can assign

16   whatever it likes to assign, but if they assign this four

17   levels down, don't these people who actually sign the

18   original documents have to agree?

19             MR. ROTH:  No, there's nothing that bars the

20   assignment of these obligations.  They have participated in

21   the prosecution of patents, and there is no argument in the

22   California case that CPT doesn't have every right stated in

23   the assignment.  They claim those rights, and Bovio and

24   Frame's behavior is in fact consistent with that.

25             THE COURT:  It certainly is consistent.  The

Page 17

1    question is, are they bound to do it?

2           MR. ROTH:  Yes, yes.

3           THE COURT:  You haven't read anything to me that

4    says they are bound.  What you have told me is that Bovio

5    and Frame bound themselves to DEC, and they bound themselves

6    to do something that is a personal obligation, and the

7    question I have for you is can DEC transfer this personal

8    obligation?

9           MR. ROTH:  Let me read another paragraph, if I

10   might, the whereas clause starts with, DEC, a corporation of

11   the Commonwealth of Massachusetts whose address is such and

12   such, who together with its successors and assigns is

13   hereafter called the assignee.  This says that DEC and

14   assignees have these rights against Bovio and Frame, and

15   they're promising to give this cooperation.  They're one in

16   the same now.  They're a unit.

17          THE COURT:  Okay.  Go ahead.  All right.  Is it

18   Mr. Resch?

19          MR. RESCH:  Resch.

20          THE COURT:  Go ahead.

21          MR. RESCH:  In response to that question, your

22   Honor, it's still not clear to me, not having done the

23   research on this issue, similarly because of the way this

24   agreement reads, whether or not that would force Mr. Bovio

25   and Mr. Frame to thereafter provide cooperation to, you

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1    know, imperpetuity all of DEC's because it's not only DEC's

2    assignee, then, you know, it's also now --

3            THE COURT:  I have some problem with it, too,

4    because you go through all these levels of assignment.

5            MR. RESCH:  Right.

6            THE COURT:  I'm not sure if I assign something, I

7    give it to everybody that's down that line.  Let's leave

8    that for a moment.

9            MR. RESCH:  Your Honor, the last point on that, if

10   you read the strict language in the agreement and who

11   together, this is in the whereas paragraph that Mr. Roth

12   just read, with its successors and assigns, whether or not

13   that extends as I say imperpetuity or DEC's next in line, I

14   don't know.

15           THE COURT:  It's not clear to me either.

16           MR. RESCH:  Not clear, but as I say, for the other

17   arguments, I don't think that this impacts in a material way

18   the personal jurisdictional analysis.

19           THE COURT:  Which one do you want to talk about

20   first?

21           MR. RESCH:  The subject matter jurisdiction.

22           THE COURT:  All right, go ahead.

23           MR. RESCH:  Your Honor, this is a quite simple

24   motion, Article 3 and the declaratory judgment act require

25   an actual controversy between the parties, and that

1  controversy must exist at all stages of the proceedings.

2  That much we know without question.

3       We also know that LPL here bears the burden of

4  demonstrating that there is subject matter jurisdiction,

5  that is, that there is an actual controversy.  Okay.  Fina

6  Oil tells us that one element in order to satisfy the actual

7  controversy requirement is that a party, another party, with

8  a right to bring a 256 action has created in the declaratory

9  claim a reasonable apprehension that it will do so in this

10  case.

11       That requirement is that Mr. Frame has created --

12  A, that Mr. Frame has a right to bring a 256 action, and, B,

13  that Mr. Frame has created in LPL a reasonable apprehension

14  that he will do so.  Against that backdrop there is

15  absolutely no way, legally, factually or otherwise, that LPL

16  can satisfy the actual controversy requirement.

17       Why?  Because Mr. Frame has promised not to sue

18  LPL.

19       THE COURT:  Is that promise solely in this letter?

20       MR. RESCH:  It's on the record right here,

21  Mr. Frame will not sue LPL on these side-mount patents, and

22  it's also in the letter.

23       THE COURT:  Do you say on the record here that is

24  an enforceable promise?

25       MR. RESCH:  Absolutely.

Page 20

1          THE COURT:  As Mr. Frame's representative, his

2    lawyer, are you committing on this record that Mr. Frame

3    does not now or ever intend to sue L --

4          MR. RESCH:  LPL.

5          THE COURT:  LPL with respect to the inventorship

6    of this technology?  Do you say that?

7          MR. RESCH:  Yes, that he will not bring a

8    Section 256 action, ever, in any way, not only does he does

9    not intend to, but he will not bring a 256 action against

10   LPL in any way on these side-mount patents.

11         THE COURT:  You are Mr. Frame's lawyer?

12         MR. RESCH:  Yes, I am.

13         THE COURT:  You make that statement knowing that

14   it may bind Mr. Frame in the future?

15         MR. RESCH:  Yes, I do.

16         THE COURT:  What do you think about that,

17   Mr. Roth?

18         MR. ROTH:  It's elusory.

19         THE COURT:  Why?

20         MR. ROTH:  The law does not require us to accept

21   Mr. Frame's promise that he won't sue us on Section 256,

22   where it is clear from the conduct that his actions have

23   created the reasonable apprehension of suit.  The statement

24   made by Mr. Frame's counsel at page 3 of his reply brief I

25   think is depositive of this issue.

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

Page 21

1        LPL must prove that it has a reasonable

2    apprehension of suit caused by Frame's conduct.  Our

3    apprehension of suit is caused by Frame's conduct.  It's

4    caused because he's the one out there claiming to be the

5    inventor and interfering with the rights that we enjoy in

6    the patent.  The fact that that is causing CPT to bring

7    separate claims is not depositive.

8        THE COURT:  Isn't what you have to be worried

9    about is a suit by Frame, not a suit by somebody else, but a

10   suit by Frame; isn't that right?

11       MR. ROTH:  We have to be worried both about a suit

12   by Frame of some type based on his claim that he's the

13   inventor, but we also need to be worried about a suit by the

14   people who are actively engaged in a cooperative action with

15   Frame.

16       THE COURT:  What do you mean by a cooperative

17   action?  He's a witness?

18       MR. ROTH:  He is not a witness, he is a person who

19   under the assignment is obligated to participate in the suit

20   and press the claim being made by DEC, successor CPT.

21       THE COURT:  Is there a case that says that if a

22   person does not in his own name but assists somebody else

23   who claims the technology, who claims to be his assignee, I

24   mean, that's how we get to this, that these people are the

25   fourth level assignee of Mr. Frame.

Page 22

1        If you say that Mr. Frame because he has this

2   assignment must assist CPT, and he's assisting by helping

3   him with the litigation, do you say that that constitutes

4   what this suit is all about, that constitutes a threat of a

5   suit?

6        MR. ROTH:  That constitutes the conduct giving

7   rise to this action which is about, are the correct

8   inventors named?

9        THE COURT:  I understand that, but, you know, if

10  you're fearful that his cooperation is causing you a

11  problem, then you've got a suit in California that's going

12  to deal with that.  Now, he says that apart from California,

13  I'm not going to sue you, but if it's about his work in

14  California, I say you take it to California and let

15  California deal with it.

16       MR. ROTH:  He will not be a party to that suit.

17  He will not be bound by that suit.  It has been very telling

18  that we filed suit here because this is where Mr. Frame

19  lives.  In his brief, he spent 20 percent of his allowable

20  pages arguing CPT's point, which is CPT wants the case in

21  California.  Mr. Frame does not want to be a party in a

22  case.

23       THE COURT:  What do you mean CPT wants a case in

24  California, didn't you bring suit in California yourself?

25       MR. ROTH:  We filed suit in California.  They have

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1   countersued.  The arguments that you see at page 16 to 20 of

2   their brief are CPT's and CPT's alone argument asserted

3   through Mr. Frame.  Mr. Frame has no reason to want these

4   issues litigated in California.  He would have an interest

5   only in having them litigated where he is.

6           THE COURT:  He says he doesn't want them litigated

7   at all.  He says there's no jurisdiction.  He says

8   California, Alaska, Slobovia, I don't want it litigated, I'm

9   not going to sue.

10          MR. ROTH:  He's not saying that.

11          THE COURT:  That's the nature of a motion that

12  raises with me subject matter jurisdiction.  It says that

13  this case can't be brought here, can't be brought in

14  California, can't be brought anywhere because I don't

15  qualify under 256 because I don't plan to sue and there's no

16  reason you should be concerned about that.

17          MR. RESCH:  Your Honor, if I could respond to

18  clear up the confusion.

19          THE COURT:  No, one at a time.

20          MR. ROTH:  Your Honor, we have reason to worry

21  about Mr. Frame and his behavior in connection with this

22  issue, and we would like it cleared up where we have

23  jurisdiction over him so that he is a party and he is bound

24  by that.  He is not a mere witness who has been drugged into

25  this against his will.

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

Page 24

1          THE COURT:  What's he doing then?

2          MR. ROTH:  He is affirmatively cooperating with

3   CPT to try and bring exactly the action that we are trying

4   to get resolved here.

5          THE COURT:  Let me get this correctly.  You sued

6   CPT in California?

7          MR. ROTH:  For patent infringement.

8          THE COURT:  Patent infringement.  Somewhere along

9   the line -- Frame wasn't a part at the beginning --

10  somewhere along the line as this case is brought, they

11  brought issues raising inventorship, in which case Frame and

12  Bovio became part of the litigation?

13         MR. ROTH:  In March of 2003 for the very first

14  time CPT alleged that Frame and Bovio were the inventors of

15  four of the patents that LPL had asserted.  In connection

16  with that, they had declarations from these gentlemen, and

17  they said they represented them.  They are affirmatively the

18  counsel to these two gentlemen, and they've used their

19  obligations under the assignment to require them to

20  participate because CPT has those rights in the California

21  action, but they don't want them to be parties because they

22  don't want it to be binding, and we want it to be binding,

23  and we also want the issue resolved in a situation where

24  Bovio and Frame are parties to the action.

25         THE COURT:  You have a case that tells me that

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1   somebody who participates by means of an assignment to help

2   somebody who is an assignee who doesn't now have an interest

3   in the technology because he's assigned it all, and his

4   assistant is to help them with the litigation is somebody

5   whose conduct you need to worry about because that person by

6   their cooperation may sue you.  Is that what you're telling

7   me?  Are you telling me that there's a case that says that?

8           MR. ROTH:  There are cases, for example, the PHC

9   case cited by PCT's counsel that says the threat of suit can

10  come from the actions of the other side.  It is not limited

11  to the particular individual.  If he were not actively

12  cooperating with CPT, this might be a different case.  If he

13  were a person who simply received a subpoena and did nothing

14  more than act as a witness, this might be a different case,

15  but PHC, for example, talks about the other side's conduct

16  and the fear that the other side will bring a suit.  They

17  are the other side.

18          THE COURT:  They have brought suit, they brought

19  the suit?

20          MR. ROTH:  They have tried to bring the suit.

21  Their motion has been denied.

22          THE COURT:  The question is, the other side can be

23  somebody, you say, other than Frame?

24          MR. ROTH:  It can be three people working in

25  concert, it could be ten.  In this case, it's three, it's

Page 26

1   Bovio, Frame and CPT.  HP is also cooperating in this suit

2   because, HP, according to CPT, has a common interest, and

3   all of their actions together are not discoverable.  There

4   is a group on the other side who are affirmatively attacking

5   these patents.  That group includes at least CPT, Bovio,

6   Frame and HP.

7           It doesn't address the concern we have who are

8   participating in this who saying we are not the people whose

9   name appears in the caption.  That's not where the dispute

10  gets resolved.  The declaratory judgment act allows us to go

11  directly to the points of dispute rather than run everything

12  indirectly, and they are actively engaged in this group

13  that's attacking, and you can't determine, in my view, you

14  shouldn't determine jurisdiction based by drawing a line and

15  saying, well, Frame is doing this, but it's in the name of

16  someone else.

17          That is putting the form over the substance of

18  what's going on, and I think the declaratory judgment --

19          THE COURT:  What do you say is Frame's interest in

20  doing this?

21          MR. ROTH:  Frame's interest may be what the Court

22  has recognized, the Federal Circuit has recognized is

23  sufficient to give him standing, reputation.

24          THE COURT:  Well, are you talking about the Chow

25  case?

Page 27

1            MR. ROTH:  Yeah.

2            THE COURT:  I think you overstate that.  What the

3  federal circuit says is not implausible.

4            MR. ROTH:  Right.

5            THE COURT:  I don't take that to be a basis.

6  They've never said that you can bring suit merely because of

7  reputation.  They said it's not implausible.

8            MR. ROTH:  So, it is plausible then.

9            THE COURT:  Plausible doesn't mean there is

10  jurisdiction, and there is no case, is there, that says that

11  you may, that Frame may bring this litigation based purely

12  on his reputation, and, indeed, if he brought that case, you

13  would say it should be dismissed because he doesn't have

14  standing; is that right?  Wouldn't you do that?

15           MR. ROTH:  I don't believe so.

16           THE COURT:  You would say he does have standing?

17           MR. ROTH:  I believe under 256, if your Honor

18  looks at it, it does not require an ownership interest.

19           THE COURT:  I'm not talking ownership interest,

20  the law says he has a financial interest of some kind,

21  doesn't it?

22           MR. ROTH:  No, to be named as an inventor in a 256

23  action, you simply have to assert that you are inventor.

24           THE COURT:  I'm talking about a declaratory

25  judgment act, you have to have an interest.

Page 28

1          MR. ROTH:  It would not be a declaratory judgment

2     action if brought by Frame.  Brought by Frame, it is a

3     correction of the name.  He comes in, he says I am the

4     inventor, therefore, under 256, it doesn't matter that I own

5     anything, what matters is am I the inventor?  If I am the

6     inventor, I have a right under 256 to bring an action to

7     have that corrected to have me named, which I think goes a

8     long way to explaining why the Federal Circuit, though they

9     didn't rule on it directly, why they found that a

10    reputational injury is in fact sufficient because 256

11    doesn't require that you own it, it doesn't require that you

12    will benefit from it, it simply requires that you come

13    forward and claim I am the guy who invented this.

14         THE COURT:  If I were looking at this case, I

15    could just imagine all the lawsuits of people running into

16    the court saying because I am the true inventor of the

17    telephone and the fact that maybe it's Bell who has the

18    patent on that, and he says, I'm the inventor.  We're

19    getting all these lawsuits about people who claimed my

20    reputation is ruined because Bell is claiming to be the

21    inventor of the telephone.

22         MR. ROTH:  There are, in fact, Section 256,

23    actions involving people who claim to be the inventor of

24    things, that's why the statute exists.

25         THE COURT:  I'm talking about declaratory

1  relief.

2        MR. ROTH:  Eli Lilly, your Honor, out of the

3  Southern District of Indiana is an example of exactly the

4  same kind of scenario, declaratory judgment under

5  Section 256 where someone is claiming to be the inventor of

6  a patent that is issued to someone else.  It's not an

7  unusual case.  What is significant about 256, I think, the

8  language which you identified, which is, some of these can

9  be corrected.  They can be corrected by agreement and by

10  going to the patent office or asking the Court to find

11  something on a stipulation if there's no deceptive intent.

12  They have alleged that there is deceptive intent.  Having

13  alleged that there is deceptive intent, the correction

14  cannot be made that leaves the patent valid.

15        THE COURT:  Let me hear from Mr. Resch.

16        MR. RESCH:  All right.  Your Honor, there are so

17  many things to correct, I don't know where to begin.  Thank

18  you for correcting the Chow issue.  I don't need to handle

19  that one.

20        Let me start first with Mr. Roth's representation

21  about pages 16 to 20 of our brief, minor issue.  We are not

22  suggesting in those cases that the case be transferred or

23  anything like that.  What we're suggesting is very clear in

24  those pages.  It is well established that even if subject

25  matter jurisdiction exists, that is, even if an actual

1  controversy exists, which it doesn't here, your Honor is

2  vested with very wide and unique, under the declaratory

3  judgment act, very unique and broad discretion to still

4  dismiss the case.

5      We set out two arguments that LPL didn't respond

6  to as to why it should still be dismissed even if there is

7  an actual controversy.  I'm not going to touch those two

8  arguments right now because what's more important is this

9  fact:  There is no case, none at all, anywhere in the world,

10  at least in the United States, that says in the face of a

11  covenant not to sue subject matter jurisdiction can still be

12  found.

13      It just doesn't exist, and what's interesting

14  about this point, your Honor, first of all, there is the

15  Cole case that we've cited where they have found that a

16  reputational interest, and it's after Chow, is not

17  sufficient.  That's the only case I know that addresses the

18  representational interest issue after Chow and they found it

19  wasn't sufficient, but, in any event --

20      THE COURT:  What do you think about Mr. Roth's

21  theory of a combined effort that involves Frame and Bovio

22  and CPT to divest LPL of its rights under the patent?

23      MR. RESCH:  I think it's legally and factually

24  without merit.  It's legally without merit because there's

25  no case out there anywhere at all that says another party

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1    suing is what can be the justification for bringing a

2    declaratory judgment act against a declaratory defendant.

3    Fina is very specific that it has to be Mr. Frame is going

4    to sue.  That's why you have all these cases where there's a

5    covenant not to sue where they say no more subject matter

6    jurisdiction.

7          So, even assuming that there was this kind of

8    conspiracy out there, there is no case law to support that

9    under those facts that you can find subject matter

10   jurisdiction against Frame where he has promised covenanted

11   not to sue, and what's interesting, your Honor, two things.

12         One is the reputational interest, so we would say

13   Mr. Frame does not have the right, and we've argued in our

14   brief that he does not have the right, does not have

15   standing to sue.  You know what, we don't even want to get

16   there because by promising that he's not going to sue, he's

17   promising he's not going to assert any representational

18   issue.  He is making a covenant not to sue; therefore, he

19   cannot later claim that he has any reputational interest, in

20   any event.

21         THE COURT:  You say he could cooperate with anyone

22   in the world he wanted to to help that person assert its or

23   that party assert its right to the technology without being

24   fearful of being a defendant in a declaratory judgment

25   action so long as he has committed himself not to sue

Page 32

1  himself?

2       MR. RESCH:  That's right, your Honor, and that is

3  established by numerous cases that we've cited such as EMC

4  at 89F.3D at 810, even the PHC case, Howe, Roach, others

5  that say that essentially it has to be between the parties.

6  The constitutional requirement of subject matter

7  jurisdiction is that there be an actual controversy between

8  the parties before you, and there is no such controversy

9  between the parties before you, and that is why this is

10 missing.  Now, let me address one thing that Mr. Roth stated

11 over and over again.

12      THE COURT:  Quickly, because I want you to quickly

13 get to the personal jurisdiction of Mr. Bovio.

14      MR. RESCH:  Quickly, yes.  Mr. Roth kept saying

15 he's not going to be bound by that.  Mr. Frame is not going

16 to be bound by that, that's why this lawsuit is so

17 important.  In effect, your Honor, by promising not sue,

18 Mr. Frame is really bound by that.  In other words, the

19 concern goes --

20      THE COURT:  Let me ask you, maybe I'll ask

21 Mr. Roth.  Both of you, if you succeed in prosecuting this

22 case and you get a declaration that Mr. Frame and Mr. Bovio

23 are not the inventors, is CPT bound by that?

24      MR. ROTH:  It may not be if it chooses as it has

25 intentionally chosen not to participate here, but it is free

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

Page 33

1    to participate in this proceeding.

2          THE COURT:  Now we have this litigation, we have a

3    possibility of a litigation in California with one result,

4    another litigation here with another result.

5          MR. ROTH:  I don't believe so, your Honor, because

6    their entire claim is derivative.  They didn't know Bovio

7    and Frame.  They didn't participate.  All they're alleging

8    is that based on what Bovio and Frame say, there are certain

9    rights that they're claiming.  If it has been determined

10   that Bovio and Frame's claim to those rights is not valid or

11   appropriate or legitimate, then they have no claim, and it

12   goes away.

13         THE COURT:  It doesn't mean that they can't

14   prosecute it in California and get a different result, does

15   it?

16         MR. ROTH:  They may try that, but, your Honor, I

17   think if it were determined that Bovio and Frame were not

18   the inventors of the side-mounting patent, that would be

19   evidence that would make it, I would say almost impossible

20   for a lawyer to test the Rule 11.

21         THE COURT:  Not impossible.  They say, you know,

22   all kinds of things in Massachusetts that wouldn't happen in

23   California, Lindsay left evidence in that Judge Marshall

24   wouldn't like, all kinds of things would affect the outcome

25   of the suit.

Page 34

1          MR. RESCH:  Your Honor, there's more pressing

2    concerns, which is they'll be going on at the same time.

3    It's not as if you're going to decide and then somehow we'll

4    have these issues about --

5          THE COURT:  Actually it's more likely it will be

6    decided in California before I get to it.

7          MR. RESCH:  Exactly.

8          THE COURT:  Why don't you speak to the personal

9    jurisdictional question.

10         MR. RESCH:  All right.  Your Honor, the first

11   thing about the personal jurisdictional motion is that in

12   some ways it becomes mooted if you grant the subject matter

13   jurisdiction because the same exact arguments apply to

14   Mr. Bovio, but turning to the personal jurisdiction

15   argument, your Honor, again, the issue is relatively

16   straightforward, and it's LPL's burden to prove personal

17   jurisdiction.  We know that.

18         We also know, which is completely ignored, and, in

19   fact, the opposite is stated in LPL's brief, that this Court

20   might exercise heightened care because Mr. Bovio is a

21   foreign national.  That's in Osaki, (sic) among other cases.

22   It's a well-established principle.  There are two ways we

23   know this, general jurisdiction and specific jurisdiction.

24         Your Honor wrote the Moldflow opinion, so you're

25   quite familiar with this.  All right.  Let's start with

1    general jurisdiction.  It's, first of all, telling that LPL

2    put general jurisdiction, even though analytically and in

3    all the cases it comes first towards the back of the brief,

4    but general jurisdiction requires continuous and systematic

5    contact at the time of the lawsuit.  So, here's that's May,

6    2004.  There's really no evidence of continuous and

7    systematic contacts.  In fact, as Mr. Bovio's declaration or

8    affidavit submitted to the Court makes clear that he severed

9    those contacts in June of '01 with the United States.

10            If you look at cases like Helicopteros, Moldflow,

11   Triwiler, where there is a serious consistency in the

12   context and compare it against the context here, there's no

13   question, and I think in some ways LPL recognizes that

14   because they put it so far back compared to the specific

15   jurisdiction argument.

16            Okay.  Let's turn to specific jurisdiction.

17   Specific jurisdiction is a three-part test, we know that,

18   first is that Mr. Bovio purposely directed his activities at

19   residents of the forum.  And here, your Honor, that's either

20   the forum being Massachusetts or the forum being the

21   United States, depending on whether you go under 4K2.

22            Let's just take the United States, it's broader

23   and they don't satisfy that anyway.  Here's why they don't

24   satisfy the first prong, and it's their burden on the first

25   prong.  Which residence has Mr. Bovio purposely directed his

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1    activities at in the United States?  They can't point to any

2    because their entire case here, this declaratory judgment

3    case, is about CPT's use of Mr. Bovio's testimony in the

4    California action.

5         That's what this case is about, CPT's use, so,

6    your Honor, in fact, there are no real Bovio context or even

7    actions that underline this case.  It's really CPT's use

8    that's causing the alleged injury.  Even if we say it's

9    Bovio action, those actions were all taken in Italy, all the

10   testimony, the declarations, the deposition that LPL took,

11   it was all in Italy.

12        Even if you say somehow that he's purposefully

13   directing his activities in the California lawsuit at the

14   parties there, well, guess what, the parties there are not

15   U.S. residents.  Neither LPL or CPT are United States

16   residents.  They fail on one.

17        Going to two, the second element is that LPL's

18   alleged injuries arise out of Mr. Bovio's contacts.  The

19   same thing, your Honor, and your Honor quoted that language

20   from the Burger King case in the Moldflow opinion, same

21   exact thing.  The alleged injuries that are present before

22   you in this action that LPL has alleged, and if you look at

23   the complaint, it's very interesting what they've alleged

24   here all relates to CPT's use of Bovio's testimony in the

25   California action.  Thus, there is nothing that arises their

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1   alleged injury --

2        THE COURT:  They don't claim an injury, they claim

3   the possibility for threat of a lawsuit.  There's no

4   injury.

5        MR. RESCH:  Well, their alleged injury, I would

6   submit, your Honor, is that really there's a cloud being

7   formed over their patent as a result of CPT's actions, as a

8   result of CPT's use of this testimony.  This cloud is the

9   alleged injury, I think, and that's what the complaint seems

10  to bear out.

11       THE COURT:  Would it be better to say where the

12  controversy arises?  I mean, declaratory judgment statute

13  requires that there be a controversy, and from what kind of

14  contact is there from which the controversy arises?

15       MR. RESCH:  The controversy before you in this

16  declaratory judgment act arises from CPT's use of the Bovio

17  testimony, or, at worse, the Bovio testimony itself.

18  Neither is a Bovio contact with the United States.  CPT's

19  use of the test clearly isn't, and Bovio's testimony all

20  occurred in Italy, okay, so whether you define it as the

21  controversy or the alleged injury, either way, there's no

22  Bovio contact with the United States.

23       And I understand that LPL desperately wants to go

24  back to the inventorship time period.  I understand that.

25  It's not analytically correct under the cases and under the

Page 38

1   language from Burger King, et cetera, but even if you go

2   back there, you know what, your Honor, this invention was

3   conceived in Korea.  It wasn't conceived in the United

4   States, in any event.

5          THE COURT:  How do you know that?

6          MR. RESCH:  Well, that's what both sides are

7   claiming conception in Korea.

8          THE COURT:  I have some question.  Everybody

9   conceived it, could have conceived it on the plane between

10  Seoul and Cambridge.

11         MR. RESCH:  I understand, your Honor.

12         THE COURT:  Where was DEC, in Maynard maybe.

13         MR. RESCH:  Right.

14         THE COURT:  So, the question is, are you talking

15  about what is in somebody's mind and where it is in his

16  mind.

17         MR. RESCH:  Well, the two points, your Honor --

18         THE COURT:  Maybe you don't have to show it, maybe

19  they have to show where they conceived it.

20         MR. RESCH:  Well, the two points, are, one, your

21  Honor, we don't go back to the inventorship time period.

22         THE COURT:  I understand.

23         MR. RESCH:  And the second point is, your Honor,

24  that both parties -- this is not an issue in dispute.  I

25  don't think that they're claiming anyone conceived it in the

1   United States, but even if they do, it doesn't make any

2   difference.

3          Moving onto the third, and perhaps in some ways,

4   let me say this, your Honor, because this is very important

5   that the briefs may not pick up on, which may be a very good

6   purpose for the oral argument.  The reason that we know that

7   it's Mr. Bovio's context with the California action that

8   underlie the personal jurisdiction analysis and not his

9   contacts way back when he was living in Massachusetts is,

10  for example, from the Silent Drive and Red Wing cases which

11  analyze, your Honor, whether personal jurisdiction exists in

12  this type of action where an expressed threat of litigation

13  is sent to another state.

14         For example, your Honor, is it sufficient, those

15  cases looked at, where one party, let's say, in Nevada sends

16  an expressed threat of litigation of patent infringement

17  litigation to a company in Nevada and they try to allege

18  specific jurisdiction, specific personal jurisdiction, over

19  that company based on that letter.  All right, your Honor?

20         THE COURT:  I'm following you.

21         MR. RESCH:  Okay.  What the courts say in that

22  situation is, it satisfies 1 and 2, the first two prongs,

23  that is, it satisfies personally directed at residents in

24  Nevada, because you're sending the letter there, and,

25  secondly, that the claim arises out of that threat, but they

1  say that it's still not sufficient under the third

2  reasonable and fairness prong.

3          Why is this so important, because, what they're

4  looking at, the analogy is just like that expressed threat

5  in the Red Wing and Silent Drive cases, so is Mr. Bovio's

6  contact and testimony in the California action.  In those

7  cases, they don't look at the underlying infringement action

8  to see whether or not there will be personal jurisdiction.

9  No, they look at the contact of the threat of the letter to

10 see whether or not there would be personal jurisdiction.

11         Now, in those cases it satisfies the two prongs

12 because the company is very clearly sending the letter and

13 directing, unlike here, as I explained a moment ago,

14 Mr. Bovio is not doing anything in the United States.  It's

15 CPT's actions that they're complaining about, or at worst,

16 Bovio's actions in Italy.  I think that Red Wing/Silent

17 Drive analysis is very interesting in the context to see

18 whether you look at the events now or back then.

19         Moving onto the third and final and perhaps the

20 most important point under specific personal jurisdiction,

21 the reasonableness and fairness.  Your Honor, there are five

22 factors, very clearly, the burden on the defendant.

23 Mr. Bovio is 72 years old.  He is caring for his 77-year old

24 disabled wife in Italy.  Now, I understand that the case law

25 talks about unique circumstances and that it's not just that

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4

1  he has to come to the lawsuit, or else that would apply to

2  everyone.  Well, you know what, your Honor, this is not a

3  case where the normal, just have to participate in a

4  litigation far from home exists.  There are very unique,

5  special circumstances.

6          THE COURT:  Is he going to testify in California?

7          MR. RESCH:  I don't believe so, your Honor.  I

8  don't believe so.  I don't know the answer to that.

9          THE COURT:  If you're going to raise the

10 inventorship question, how are you going to do that without

11 him in California?

12         MR. RESCH:  Because he's testified by deposition,

13 and they have another day of deposition with him.

14         THE COURT:  And you're going to use the

15 deposition?

16         MR. RESCH:  That is certainly a possibility if

17 Mr. Bovio is unable to come to California to testify as a

18 witness.

19         THE COURT:  I know that's a possibility.

20         MR. RESCH:  Well, your Honor, I can tell your

21 Honor that he is caring for his wife and he is not prepared

22 to come to the United States to defend this action, period.

23         Secondly, the forum state interests, your Honor,

24 these disputes as to Mr. Bovio are between foreign companies

25 and a foreign resident, an italian resident, a Korean

Page 42

1  company and a Taiwanese company, and California is already

2  deciding this issue.  What forum state interest can there

3  possibly be in this court hearing this claim over Mr. Bovio?

4  Third, Plaintiff's interest in obtaining relief.  They can

5  obtain the same relief in California, that is, they can

6  especially once --

7          THE COURT:  He says, Mr. Roth says I can't put to

8  rest this claim of Bovio that he invented this technology in

9  California?

10          MR. RESCH:  Right.  Your Honor, I think that's not

11  correct.  That issue, as their brief states, there is actual

12  litigation on the very issue that LPL raises in this Court.

13  That's their brief.  There is actual litigation.  The issue

14  is going to be decided in California, period.

15          Next issue, interstate judicial system's interest,

16  again, it's pending in California.  I won't repeat all the

17  arguments, but the fifth one is interesting, the fifth

18  gestalt factor, social policies of the states.

19          Your Honor, I would think that it should not be a

20  policy that merely by participating as a fact witness in

21  another action should subject you to personal jurisdiction

22  in the United States.  Think about the chilling effect that

23  this will have on foreign residents when called upon to

24  testify in an action pending in the United States.

25          They would have no reason, and it will increase

Page 43

1   all of the litigation costs for parties in the United States

2   seeking to get the testimony of foreign residents.  This is

3   a clear policy, and, interestingly, your Honor, again, let's

4   take a step back to the Red Wing and Silent Drive cases.

5   They found that it was unreasonable to subject a party to

6   personal jurisdiction where they had expressly threatened

7   litigation into another state.

8         It's unreasonable and unfair in that context.

9   Clearly it's unreasonable and unfair here where all

10  Mr. Bovio has done is provided testimony in this case, so,

11  your Honor, in view of those five, and by the way, and I'll

12  close with this on the reasonableness issue.

13        They're not prejudiced.  They've deposed him.

14  They're going to depose him again.  The issue is alive, so

15  for that reason, your Honor, I think Mr. Bovio clearly

16  satisfies the burden as to the third element and they don't

17  on the first.  I'm happy to field any other questions about

18  whatever you might have.

19        THE COURT:  Mr. Roth, a minute ago you told me

20  that the claim of CPT in California is derivative?

21        MR. ROTH:  Yes.

22        THE COURT:  It's derivative of whatever it is that

23  Mr. Bovio did in Massachusetts; isn't that right?

24        MR. ROTH:  No, it is derivative of a contract they

25  have with HP.  They are confusing subject matter

1   jurisdiction, which must be pled, which we did plead in our

2   contract with personal.

3           THE COURT:  It is a contract with whom, CPT?

4           MR. ROTH:  CPT and HP, and HP has rights to

5   obligate Frame and Bovio under contract.

6           THE COURT:  Now, once the case is decided in

7   California because of this contract between CPT and HP,

8   doesn't that put this case to rest?

9           MR. ROTH:  No, not at all.

10          THE COURT:  Why not?

11          MR. ROTH:  Because if they promise not to sue,

12  they can still go out and do anything else that they want to

13  say we are the inventors, don't take a license to those

14  patents because we're the guys who invented, and in the next

15  case where we go to license our patents, the company comes

16  back and says, well, we've got Bovio and Frame, and we say

17  that was litigated with CPT and we won.  They say tough, we

18  get to litigate that again, and they get to keep going.

19          The other things that I'd just like to mention

20  before moving on, the language of the assignment says

21  successors and assigns.  It's not a one-step.  You asked for

22  a case in which a promise not to sue was held to be

23  insufficient, I believe, and Vanguard is a case from the

24  Federal Circuit where they talk about the fact that the mere

25  promise not to sue is insufficient, and you need to look at

1  the totality of the circumstances.  When you look at the

2  totality of the circumstances in this case, what you see is

3  this group of people out there attempting to take down these

4  patents.  One of them is Bovio, one is Frame.

5      THE COURT:  It wasn't just that a promise not to

6  sue but a promise not to sue by the party you were suing?

7      MR. ROTH:  It doesn't matter who the promise not

8  to sue is from, it doesn't matter whether we have sued the

9  party.

10     THE COURT:  What you're saying is that these cases

11 stand for the proposition that even if the party does not

12 sue you, he can't help anybody who is suing?  Isn't that

13 what you're saying?

14     MR. ROTH:  Well, not that he cannot help, he

15 cannot be in the business of affirmatively doing these

16 things.

17     THE COURT:  What's the difference between what I

18 ask and what you're saying?

19     MR. ROTH:  I could envision a scenario where

20 someone against their will, not having agreed to join a

21 group, gets a subpoena, and obviously if you get a subpoena

22 from your Honor's court, you've got to show up, and you have

23 to testify honestly.

24     THE COURT:  Somebody goes to him, and they say,

25 "Michele, what do you know about this?"  And Michele says,

1    "Oh, I invented that," and the next question is, I know I'm

2    supposed to be dealing with personal jurisdiction, and I

3    will, and he says, I invented that, and the next question,

4    "Would you be willing to come to California and say that?"

5    He says, "Sure, I invented, I believe in it."

6         MR. ROTH:  He can't do that.  If he came to

7    California and said that as, you know, coming to California,

8    then we wouldn't be here on declaratory judgment.

9         THE COURT:  You're missing my point.  He writes it

10   down, he puts it in an affidavit or declaration, or he

11   allows himself to be deposed because they ask him to do

12   this, he can't do that, you say?

13        MR. ROTH:  If the totality of the circumstances

14   would be evaluated, in this case, he is not acting as an

15   independent witness.  He is not acting as a person who is

16   taking sides in this litigation, he's represented by CPT's

17   counsel.

18        THE COURT:  There's litigation, there's cases that

19   say if you take sides, if you take somebody's side who wants

20   to say these people are not inventors, then you have the

21   right to sue that person, if he takes a side?

22        MR. ROTH:  On the 256 issue, yes.  If he is taking

23   the side and attacking the patents in a public, nonjudicial

24   way, absolutely, or if he joins the group that is doing the

25   attacking, or if he's obligated to be part of that group,

1   whether he wants to or not, he may not want to, but if he's

2   obligated to do it, he is part of that group, and, yes, that

3   is sufficient to give rise to the jurisdiction of this

4   court.

5           THE COURT:  Talk about personal jurisdiction.

6           MR. ROTH:  Your Honor, there was a decision on

7   January 5th from the Federal Circuit that I would like to

8   bring to your attention.  It's electronic.

9           THE COURT:  Was that last week?

10          MR. ROTH:  Yes.  If you'd rather, I'd submit it

11  with a letter.

12          THE COURT:  Tell me what it says.  I'm not in the

13  habit of reading Federal Circuit decisions.  In fact, I'm in

14  the habit of trying to avoid them.

15          MR. ROTH:  It is a case called --

16          THE COURT:  With all due respect to the Federal

17  Circuit.

18          MR. ROTH:  -- Electronics For Imaging versus Coil.

19  We cited an earlier version of that 340 F.3d in our papers.

20  This is a decision from last week addressing the very issue

21  of the five factors that have been talked about in

22  explaining why there are other issues that the consideration

23  of these factors is important as a group, not as individual

24  pieces taken one by one, which is what is being attempted

25  here.

Page 48

1    It also talks about uncertainties being sufficient

2  to give rise to a DJ action in connection with patents.  The

3  uncertainties need not be uncertainty about your position,

4  it can be uncertainty about where there will be litigation,

5  the cost of it, whether money will need to be reserved for

6  it, et cetera, so I think it is an important explanation

7  here.

8    THE COURT:  What is it you claim that Mr. Bovio

9  did in Massachusetts that gives rise to this?

10    MR. ROTH:  Thank you.  What they talked about in

11  the last year is irrelevant what gives right to this suit.

12  What gives rise to this suit are the actions that Mr. Bovio

13  took in 1996 and 1997 in Massachusetts.  What gives rise to

14  this suit is, is he an inventor of the side-mount

15  technology?  That has nothing to do with anything he said in

16  Italy in 2004.  That has to do with what did he do in

17  Massachusetts in 1996 and 1997.

18    THE COURT:  What do you say he did?

19    MR. ROTH:  Among other things, most critical to

20  this case, is he filed a patent application which they have

21  attached as I believe Exhibit 6 to his declaration.  He

22  filed a patent application in which he claims that he

23  invented side-mounting.  That application has not issued

24  from the patent office.  They say it remains pending, but he

25  asserted in Massachusetts that he was the inventor of

Page 49

1    side-mounting.  He retained a lawfirm in Massachusetts to

2    prosecute the patent.

3         THE COURT:  I would say he asserted it in

4    Washington, but that's neither here nor there, because isn't

5    that where the assertion really makes a difference in

6    Washington at the patent office?

7         MR. ROTH:  The case law says that you don't

8    necessarily look to where the Government agency is;

9    otherwise all of the patent cases would be in the

10   Eastern District of Virginia, where I live, because that's

11   where the patent office is; you look to where the activities

12   are taking place.  He signed the documents related to this

13   patent application in Massachusetts.  He made his claim in

14   Massachusetts.

15        The fact that those are taken in other places

16   doesn't mean that the critical acts didn't happen in

17   Massachusetts, and the dispute between LPL and Bovio and

18   Frame is not there, you know, what they said in California.

19   That's where it arose.  That's where we had first knowledge

20   that it was a real dispute and it was something that we had

21   never heard of before, but the dispute arises from the

22   actions they took in Massachusetts in claiming to be the

23   inventors of the side-mounting technology in assigning to

24   DEC supposed rights to this invention, in contracting in

25   Massachusetts to obligate themselves in perpetuity to

Page 50

1   provide assistance to whoever happened to end up with the

2   contract right to attack anybody else's claim that they are

3   the inventors.

4          All of those things happened in Massachusetts, and

5   because the dispute is about inventorship, this is not a

6   tort action against Mr. Bovio or Mr. Frame because of what

7   they said in 2004.

8          This is a declaratory judgment.

9          THE COURT:  May I interrupt you just a minute and

10  ask you, what if I simply took this case and stayed it until

11  California is done?  Why don't I do that?

12         MR. ROTH:  Your Honor, then it would be

13  essentially stayed everywhere because there is no 256 action

14  in California.

15         THE COURT:  In California, it will resolve some of

16  my problems and some of the practical problems in this case,

17  that is, whether Mr. Bovio has to come to Massachusetts,

18  whether there's litigation in Massachusetts that may be at

19  odds with the litigation in California.  The case in

20  California is going on.  I don't have to decide anything; I

21  just take this case and stay it on the grounds that there's

22  another case in California that raises some of these

23  issues.

24         MR. ROTH:  The case in California will not

25  necessarily decide these issues.

ea0cb9e9-bc77-4e24-94f0-b1b9003ba6c4