IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DR. ANTHONY W. CZARNIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:05-CV-400-JJF |
| | ) | |
| ILLUMINA, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN
RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Martin S. Lessner  (No. 3109)
Adam W. Poff  (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile: (302) 571-1253
mlessner@ycst.com
apoff@ycst.com

Attorneys for Plaintiff
Dr. Anthony W. Czarnik

OF COUNSEL:
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
Martin M. Zoltick
Steven Lieberman
Lisa N. Phillips
1425 K Street, N.W., Suite 800
Washington, DC  20005
Telephone:  (202) 783-6040
Facsimile:  (202) 783-6031
Dated: October 27, 2005

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................. ii

NATURE AND STAGE OF PROCEEDINGS ................................................... 1

SUMMARY OF ARGUMENT ......................................................................... 2

STATEMENT OF FACTS .............................................................................. 6

LEGAL STANDARDS ................................................................................. 12

ARGUMENT ............................................................................................... 12

    I.      DR. CZARNIK HAS ALLEGED A COGNIZABLE HARM
          SUFFICIENT TO SUPPORT STANDING TO ASSERT A
          CLAIM TO CORRECT INVENTORSHIP UNDER 35 U.S.C. § 256 ..... 14

          A.      The Reputational Harm Which Dr. Czarnik Suffered
                 As A Result Of Illumina's Actions Is Sufficient To
                 Support Subject Matter Jurisdiction ............................................... 15

          B.      The Additional Allegations Added In The Amended
                 Complaint Regarding Dr. Czarnik's Loss Of Job Prospects
                 Based On Illumina's Actions Are Sufficient To Support
                 Subject Matter Jurisdiction In This Court ..................................... 20

    II.      ILLUMINA FAILS TO MEET ITS BURDEN UNDER
          FED. R. CIV. P. 12(b)(1) WITH RESPECT TO THE
          35 U.S.C. § 116 CLAIM ........................................................................... 26

    III.     BECAUSE SUPPLEMENTAL JURISDICTION EXISTS
          FOR THE DECLARATORY JUDGMENT OF
          UNENFORCEABILITY BASED ON INEQUITABLE
          CONDUCT, DR. CZARNIK MAY ASSERT COUNT III ....................... 31

    IV.     DR. CZARNIK'S CLAIM UNDER STATE LAW
          FRAUD IS PROPER ................................................................................. 33

CONCLUSION ............................................................................................. 36

i

# TABLE OF AUTHORITIES

Page

**Cases**

*AFGE v. Clinton,*
180 F.3d at 732 (6th Cir. 1999),
*cert. denied,* 529 U.S. 1018 (2000) ............................................................... 24

*AFGE, Local 2119 v. Cohen,*
171 F.3d 460 (7th Cir. 1999) ................................................................... 21, 24

*Airport Surface Techs., L.L.C. v. Fieldturf, Inc.,*
268 F. Supp. 2d 999 (N.D. Ill. 2003) .................................................. 27, 28, 29

*ARGOS v. Orthotec LLC,*
304 F. Supp. 2d 591 (D. Del. 2004) ........................................... 12, 14, 30, 34

*ASARCO, Inc. v. Kadish,*
490 U.S. 605 (1989) ................................................................................. 25, 26

*Chou v. Univ. of Chicago & Arch Dev. Corp.,*
254 F.3d 1347 (Fed. Cir. 2001) .......................................................... passim

*Cole v. Gummow,*
No. 3-02-CV-705, 2003 U.S. Dist. LEXIS 18925
(N.D. Tex. Oct. 22, 2003) ............................................................................ 18

*Eli Lilly & Co. v. Aradigm Corp.,*
376 F.3d 1352 (Fed. Cir. 2004) ................................................................... 27

*Fox Indus., Inc. v. Structural Preservation Sys., Inc.,*
922 F.2d 801 (Fed. Cir. 1990) ..................................................................... 32

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.,*
292 F.3d 1363 (Fed. Cir. 2002) ................................................................... 32

*Geer v. Cox,*
216 F.R.D. 677 (D. Kan. 2003) .................................................................... 31

*Hideo Matsuda v. Michiko Wada,*
128 F. Supp. 2d 659 (D. Haw. 2000) ........................................................... 31

*Hydril Co. v. Baker Hughes Inc.,*
No. 96-1288, 1997 U.S. App. LEXIS 21745
(Fed. Cir. Aug. 19, 1997) ............................................................................ 27

*Kanematsu Corp. v. Advanced Materials Lanxide, LLC,*
No. 01-190, 2002 U.S. Dist. LEXIS 27043
(D. Del. Sept. 30, 2002) ......................................................................... 12, 17

*Kosower v. Gutowitz,* No. 00 Civ. 9011, 2001 U.S. Dist. LEXIS 19111, at *19-20
(S.D.N.Y. Nov. 18, 2001) ............................................................................ 27

*Kucharczyk v. Regents of the Univ. of Cal.*,
  48 F. Supp. 2d 964 (N.D. Cal. 1999) .................................................. 18, 19, 33

*Laird v. Tatum*,
  408 U.S. 1 (1972) ...................................................................................... 23

*Langford v. City of Atlantic City*,
  235 F.3d 845 (3d Cir. 2000) ..................................................................... 12

*Linda R. S. v. Richard D.*,
  410 U.S. 614 (1973) ................................................................................. 25

*Maio v. Aetna, Inc.*,
  221 F.3d 472 (3d Cir. 2000) ..................................................................... 23

*Marbury v. Madison*,
  5 U.S. 137 (1803) ..................................................................................... 28

*Mariana v. Fisher*,
  338 F.3d 189 (3d Cir. 2003),
  *cert. denied*, 540 U.S. 1179 (2004) ......................................................... 23

*MCV, Inc. v. King-Seeley Thermos Co.*,
  870 F.2d 1568 (Fed. Cir. 1989) ..................................................... 15, 20, 27

*MediGene Ag v. Loyola Univ. of Chicago*,
  No. 98 C 2026, 2001 U.S. Dist. LEXIS 25269
  (N.D. Ill. Dec. 17, 2001) .......................................................................... 30

*Rohm & Haas Co. v. Crystal Chem. Co.*,
  722 F.2d 1556 (Fed. Cir. 1983),
  *cert. denied*, 469 U.S. 851 (1984) ........................................................... 33

*Rolo v. City Investing Co. Liquidating Trust*,
  155 F.3d 644 (3d Cir. 1998) ..................................................................... 17

*Sagoma Plastics, Inc. v. Gelardi*,
  366 F. Supp. 2d 185 (D. Me. 2005) ................................................... 28, 30

*Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*,
  4 F. Supp. 2d 477, 487 (E.D. Va. 1998),
  *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000),
  *cert. denied*, 531 U.S. 1190 (2001) ......................................................... 32

*Simon v. Eastern Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ................................................................................... 22

*Spencer v. Kemna*,
  523 U.S. 1 (1998) ............................................................................... 23, 24

*Stephenson v. Capano Dev., Inc.*,
  462 A.2d 1069 (Del. 1983) ....................................................................... 34

*Storino v. Borough of Point Pleasant Beach*,
  322 F.3d 293 (3d Cir. 2003) ..................................................................... 23

iii

*Stratos Lightwave, Inc. v. Picolight, Inc.,*
No. 03-917, 2005 U.S. Dist. LEXIS 4586
(D. Del. Mar. 23, 2005) .............................................................................. 12

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002) .................................................................................... 17

*Warth v. Seldin,*
422 U.S. 490 (1975) .............................................................................. 22, 25

**Statutes**

28 U.S.C. § 1367 ................................................................................. passim

35 U.S.C. § 116 ....................................................................... 1, 4, 26, 27

35 U.S.C. § 256 ................................................................................. passim

35 U.S.C. § 285 ............................................................................................. 1

**Other Authorities**

35 U.S.C. § 135 ........................................................................................... 28

P.J. Frederico, Commentary on the New Patent Act, 35 U.S.C.A. 1 (1954) ................... 15

S.Rep.No. 1979, 82nd Cong., 2nd Sess. (1952) ............................................. 15

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................... passim

Fed. R. Civ. P. 2(b)(6) ........................................................... 12, 13, 36

Fed. R. Civ. P. 8(a)(2) .............................................................................. 17

Fed. R. Civ. P. 9(b) .................................................................................. 17

DB01:1885322.1

063688.1001

## NATURE AND STAGE OF PROCEEDINGS

On June 16, 2005, Dr. Anthony W. Czarnik ("Dr. Czarnik"), filed this action against Defendant Illumina, Inc. ("Illumina"). This is a civil action under 35 U.S.C. § 256, the Declaratory Judgment Act, and the common law of the State of Delaware, seeking: (i) a judgment that Dr. Czarnik is a joint inventor of the identified issued U.S. patents, and issuance of an order, pursuant to 35 U.S.C. § 256, requiring the Director of the U.S. Patent and Trademark Office ("PTO"), and Defendant Illumina, to correct the inventorship by adding Dr. Czarnik as an inventor; (ii) a judgment declaring that Dr. Czarnik is a joint inventor of the identified U.S. and corresponding foreign pending patent applications, and issuance of an order, pursuant to 35 U.S.C. § 116, requiring the Director of the PTO, and Defendant Illumina, to correct the inventorship in the U.S. and in all foreign patent offices by adding Dr. Czarnik as an inventor; (iii) a judgment declaring that the identified issued U.S. patents and pending patent applications are unenforceable; (iv) a judgment that Defendant Illumina committed fraud; (v) an award of compensatory damages in an amount to be determined at trial; (vi) an award of punitive damages in an amount to be determined at trial; and (vii) an award of reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285, or at common law.

On June 30, 2005, Illumina applied for, and was granted, an extension of time for response to the Complaint. Pursuant to that extension, on August 4, 2005, Illumina filed a motion seeking to dismiss the Complaint. Dr. Czarnik filed an Answering Brief on August 22, 2005, explaining that, based on the factual allegations set forth in his original Complaint and proper consideration of the applicable Statutes and case law, Dr. Czarnik has standing to bring the causes of action of Counts I-IV of the Complaint, this Court has

subject matter jurisdiction over those causes of action, and each of the Counts, as pled in the original Complaint, properly states a claim upon which the requested relief may be granted. Illumina filed a reply brief on August 29, 2005.

In response to the concerns set forth by Defendant Illumina in its Motion to Dismiss the original Complaint, on September 23, 2005, Dr. Czarnik filed an Amended Complaint to more specifically set forth his injury-in-fact and harm suffered as a direct result of Illumina's previous actions, and to address Defendant's concerns with respect to this Court's subject matter jurisdiction over Counts II-IV. *See, e.g.*, Amended Complaint, ¶¶ 101-106. Illumina filed a second Motion to Dismiss directed at Dr. Czarnik's Amended Complaint on October 7, 2005.

Dr. Czarnik, by and through his attorneys, submits this Answering Brief in response to Illumina's Motion to Dismiss the present suit pursuant to both Fed. R. Civ. P.12(b)(1) and Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Illumina's motion should be **denied**.

2

## SUMMARY OF ARGUMENT

1.      Based on the factual allegations set forth in Dr. Czarnik's Amended Complaint and proper consideration of the applicable Statutes and case law, as explained in detail herein, Dr. Czarnik has standing to bring the causes of action of Counts I-IV of the Amended Complaint, this court has subject matter jurisdiction over those causes of action, and each of the Counts, as pled, properly states a claim upon which the requested relief may be granted.

2.      Dr. Czarnik has alleged a cognizable harm sufficient to support standing to assert his claim to correct inventorship pursuant to 35 U.S.C. § 256. This Court has subject matter jurisdiction to address Dr. Czarnik's claim for correction of inventorship pursuant to 35 U.S.C. § 256 and Dr. Czarnik has standing to make that claim since, as alleged in the Amended Complaint, Dr. Czarnik has not been given the credit and recognition he was entitled to for his contributions to the patented microarray technology, was excluded and ultimately removed from any participation in Defendant Illumina's activities and from any recognition as a co-inventor of the microarray technology he co-invented, has suffered damage to his reputation and standing within the scientific community, has not received the reputational benefits associated with being named as an inventor, has suffered a loss of prestige within the scientific community resulting from his inventions being recognized as another's, and, as a direct and foreseeable consequence of Defendant Illumina's actions, has not been able to "join another start-up and get another few hundred thousand shares of stock" which, as explained below, amounted to an annual compensation of approximately $1 million, and was damaged as a result of his reliance on Defendant Illumina's actions in an amount to be proven at trial

3

("Dr. Czarnik's Injury-In-Fact").  *See* Amended Complaint, ¶¶ 3, 59, 69, 93-97, 101-06, 115-16, 122-23, 149-50, 165-66.  Moreover, at this stage of the proceeding, Dr. Czarnik is not required to allege each and every specifically stated instance of harm, but, rather, to put Illumina on notice of his claim.  The Amended Complaint meets the standard to which it is held.

      3.      Subject matter jurisdiction lies with this Court to hear Dr. Czarnik's claim for declaratory judgment that he is a joint inventor of the identified U.S. and corresponding foreign pending patent applications, and for issuance of an order, pursuant to 35 U.S.C. § 116, requiring the Director of the PTO and Illumina to take the necessary steps to correct the inventorship of those applications.  Since Dr. Czarnik does not request that this Court directly alter the inventorship on the subject patent applications, nor has he come to this Court before attempting to seek redress in the PTO, Dr. Czarnik's only route to redress of his claims with respect to the pending patent applications at issue is through this Court.  Illumina's "supporting" case law does not block such an attempt, and, thus, Illumina can not meet its burden under a Fed. R. Civ. P. 12(b)(1) claim since the claims presented here are not "wholly insubstantial and frivolous."  Moreover, subject matter jurisdiction lies in this Court to correct inventorship on the related U.S. and foreign applications identified in the Amended Complaint in accordance with the Federal Circuit's decision in *Chou* and pursuant to 28 U.S.C. § 1367.

      4.      Because supplemental jurisdiction exists for the declaratory judgment of unenforceability based on inequitable conduct, Dr. Czarnik may assert Count III.  Since this Court has original jurisdiction over the § 256 claim (Count I), this Court may also

exercise jurisdiction over the declaratory judgment action for unenforceability of the subject patents and applications based on this same core of operative facts (Count III).

5.     Dr. Czarnik's state law fraud claim, as pled, properly states a claim upon which the requested relief may be granted.  In advancing its argument with respect to its motion to dismiss the state law fraud claim based on a failure to state a claim, Illumina alleges that Dr. Czarnik does not state a claim because the purported misrepresentations were not made to Dr. Czarnik.  However, fraud may also occur through deliberate concealment of material facts.  Clearly, the Amended Complaint alleges such omission committed by Illumina and its principals repeatedly over a period of years, which Dr. Czarnik only recently became aware of.  Pursuant to a motion to dismiss for failure to state a claim, these allegations must be accepted as true, and, clearly, if true, relief could be granted consistent with the allegations of the Amended Complaint.  Further, even if Dr. Czarnik is unable to maintain his claim to correct inventorship, the Court can determine whether or not he is a proper inventor, and based on that determination, resolve the fraud claim set forth in Count IV of the Amended Complaint.

DB01:1885322.1

063688.1001

## STATEMENT OF FACTS

Since all of the factual allegations are to be taken as true within the context of Illumina's motion to dismiss, Dr. Czarnik relies on the detailed statement of facts set forth in the one hundred and sixty-seven (167) paragraphs of Dr. Czarnik's Amended Complaint which, as explained in detail below, are more than adequate to support subject matter jurisdiction in this Court and standing for Dr. Czarnik for the asserted causes of action, and to provide a basis for Dr. Czarnik's state law fraud claim. Illumina's characterization of all of the factual allegations set forth in Dr. Czarnik's Amended Complaint as "one-sided" is certainly curious given that a substantial number of those factual allegations are from the December 3, 2004 decision of the Court of Appeal of California affirming the jury verdict in favor of Dr. Czarnik against Illumina in the action Dr. Czarnik brought in the Superior Court of San Diego County.[1]

In Illumina's "Statement of Facts" section of its Memorandum in Support of Illumina's Motion to Dismiss, filed October 7, 2005 ("Motion"), Illumina sets forth what it characterizes as facts "acknowledged either expressly or by omission in Czarnik's

---

[1] As set forth in the Amended Complaint, after a five week trial, the jury returned a verdict in Dr. Czarnik's favor on all of his claims, finding: (1) Illumina terminated his employment and took other adverse employment actions against him in whole or part because of his disability; (2) the company terminated Dr. Czarnik and took other adverse employment actions against him in whole or part because he complained about discrimination; (3) Dr. Czarnik had a reasonable belief that Illumina used or was planning to use the results of the 768 decoding experiment in a misleading manner in its presentations to potential investors and had raised his concerns to appropriate individuals at Illumina; (4) the decision-makers involved in Dr. Czarnik's termination were aware that Czarnik had raised concerns about the company's use of the 768 decoding experiment results and the termination was based in whole or part on that fact; (5) Illumina terminated Dr. Czarnik in whole or part because he raised concerns regarding the 768 experiment; and (6) Dr. Czarnik had suffered $2,196,935 in damages as a result of Defendant Illumina's misconduct. The jury also found that Illumina was motivated by malice, fraud and oppression and awarded Dr. Czarnik $5 million in punitive damages. See Amended Complaint, ¶¶ 84-86.

6

complaint." Motion at 3. These "facts" are largely irrelevant with respect to the issues raised by Illumina in its Motion. For example, Illumina repeatedly makes reference to Dr. Czarnik's lack of "any ownership interest in any of Illumina's patents or in any of Illumina's pending U.S. or foreign patent applications." Motion at 3. However, the Federal Circuit has made very clear that such an ownership interest "is not a prerequisite for a putative inventor to possess standing to sue to correct inventorship under § 256." *Chou v. Univ. of Chicago & Arch Dev. Corp.*, 254 F.3d 1347, 1358 (Fed. Cir. 2001).

Other "facts" stated by Illumina in its Motion and identified as "Czarnik's allegations" that are "noteworthy" are plainly distortions of what Dr. Czarnik has, in fact, alleged in his Amended Complaint.[2] For instance, Illumina asserts that "Czarnik does not allege any particular facts as to any harm he has suffered to his reputation by virtue of not being named as a co-inventor on the patents and pending applications, nor does he allege any pecuniary consequences relating to any such reputational harm." Motion at 3. Illumina's contention is belied by the express allegations of the Amended Complaint – for example:

---

[2]   It is telling that, in its original motion, Illumina attached an e-mail which it purported "prove[d] that many of Czarnik's other allegations are false," which Illumina now omits from this second Motion. Original Motion at 3 n.1 and Exh. A. In opposition, Dr. Czarnik pointed out that Illumina's allegations relating to the e-mail were just another example of Illumina's penchant for "playing fast and loose with the facts." Original Opposition at 8. Dr. Czarnik pointed out that the e-mail was mischaracterized by Illumina to the extent that Illumina relied upon it to show that Dr. Czarnik confirmed "that he is not a co-inventor with respect to any aspect of the 'nanocrystal application.'" *Id.* at 8-9. In order to verify that fact, Dr. Czarnik attached to his Original Opposition an Invention Disclosure Form with respect to the nanocrystal invention that clearly showed that Dr. Czarnik was among the scientists at Illumina that made an inventive contribution to the nanocrystal invention. Original Opposition at 9 and Exh. A. When faced with the true and clear facts, Illumina had no choice but to abandon its unfounded assertions.

7

- After Dr. Czarnik devoted a tremendous amount of time and effort to advance the business and technological goals of Illumina, including creating and being recognized as a joint inventor with Stuelpnagel and Chee of microarray technology that Defendant Illumina, Stuelpnagel and Chee have filed for and obtained utility patents on, Defendant Illumina, Stuelpnagel and Chee conspired, agreed and engaged in a concerted action to obtain further utility patents on the jointly developed microarray technology without informing Dr. Czarnik, without identifying Dr. Czarnik as an inventor and crediting him for his contributions, and on the basis that the claimed technology was created by Stuelpnagel and Chee which, at all relevant times hereto, Defendant Illumina, Stuelpnagel and Chee knew was false. Amended Complaint, ¶ 3.

- Dr. Czarnik brings this civil action under 35 U.S.C. § 256, the Declaratory Judgment Act, and the common law of the State of Delaware, seeking: (i) a judgment that Dr. Czarnik is a joint inventor of the identified patents and applications, and issuance of an order requiring Defendant Illumina and the PTO to correct the inventorship by adding Dr. Czarnik as an inventor; (ii) a judgment declaring that the identified issued U.S. patents and pending U.S. patent applications are unenforceable; (iii) compensatory damages; (iv) punitive damages; and (v) reasonable attorneys' fees and costs. Amended Complaint, ¶ 4.

- The foregoing pattern of systematically omitting Dr. Czarnik, after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his medical condition in April 1999, as a named co-inventor on U.S. and foreign issued patents and pending applications disclosing and claiming the IBL/DBL Invention was part of a deliberate scheme by Defendant Illumina, Stuelpnagel and Chee intended to exclude and ultimately remove Dr. Czarnik from any participation in Defendant Illumina's activities and from any recognition as a co-inventor of the microarray technology. Amended Complaint, ¶ 59.

- The foregoing pattern of systematically omitting Dr. Czarnik, after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his medical condition in April 1999, the very same month in which he jointly developed the Embedded/Encapsulated Nanocrystal Invention, as a named co-inventor on U.S. and foreign issued patents and pending applications disclosing and claiming the Embedded/Encapsulated Nanocrystal Invention was part of a deliberate scheme by them intended to exclude and ultimately remove Dr. Czarnik from any participation in Defendant Illumina's activities and from any recognition as an inventor of the microarray technology. Amended Complaint, ¶ 69.

- Dr. Czarnik went through the list of identified Illumina issued patents and published patent applications, and reviewed each one. During this review

8

in December 2004, Dr. Czarnik learned for the first time, and to his surprise, that the Defendant Illumina, Stuelpnagel, Chee and Silva had prepared, filed, and prosecuted to issuance, patents disclosing and claiming his IBL/DBL Invention and his Embedded/Encapsulated Nanocrystal Invention without informing him, without identifying him as an inventor, and without giving him the credit and recognition he was, and is, entitled to. Amended Complaint, ¶ 94.

- Defendant Illumina, Stuelpnagel and Chee concealed these filings with the PTO disclosing and claiming Dr. Czarnik's IBL/DBL Invention and Embedded/Encapsulated Nanocrystal Invention from him, knowing that the inventorship on these filings was false, while, at the same time, sending letters and formal papers to Dr. Czarnik advising him that he was a joint inventor on the selected two filings they decided to inform him about. Defendant Illumina's, Stuelpnagel's and Chee's actions in sending these letters and formal papers to Dr. Czarnik on two of the patent applications they filed, and not the many others, were, on information and belief, intentionally designed to mislead Dr. Czarnik into believing that he was receiving the proper credit and recognition for those inventions he made at Illumina, and that his interests as an inventor were being protected. On information and belief, Defendant Illumina, Stuelpnagel and Chee knew this was false. Amended Complaint, ¶ 95.

- Dr. Czarnik justifiably relied on Defendant Illumina's, Stuelpnagel's and Chee's misleading actions and nondisclosure to his detriment. Stuelpnagel and Chee, and not Dr. Czarnik, were credited with creating the inventions jointly developed by Dr. Czarnik. On information and belief, Defendant Illumina, Stuelpnagel and Chee knew Dr. Czarnik was a joint inventor of the claimed inventions, and that they were not entitled to be named as joint inventors without Dr. Czarnik. Amended Complaint, ¶ 96.

- Defendant Illumina, Stuelpnagel and Chee conspired, agreed and engaged in a concerted action to obtain further utility patents on the IBL/DBL Invention and Embedded/Encapsulated Nanocrystal Invention jointly developed by Dr. Czarnik without informing Dr. Czarnik, without identifying Dr. Czarnik as a co-inventor and crediting him for his contributions, and on the basis that the claimed technology was created by Stuelpnagel and Chee which, at all relevant times hereto, they knew was false. Amended Complaint, ¶ 97.

- As set forth in detail above, Dr. Czarnik has not been given the credit and recognition he was entitled to for his contributions to the patented microarray technology, and was excluded and ultimately removed from any participation in Defendant Illumina's activities and from any recognition as a co-inventor of the microarray technology he co-invented.

Dr. Czarnik justifiably relied on Defendant Illumina's misleading actions and nondisclosure regarding inventorship. Amended Complaint, ¶ 101.

- During the time period when Dr. Czarnik was employed by Defendant Illumina, he was earning approximately $200,000.00 in annual salary and receiving 6,700 shares of Illumina stock per month. Dr. Czarnik's annual compensation, valuing the shares he received on a conservative basis, was approximately $1 million per year. Amended Complaint, ¶ 102.

- Further, the recognition that Dr. Czarnik initially received while at Illumina, including his being recognized as contributing to the IBL/DBL technology and being credited as a co-inventor, bolstered his reputation and standing within the scientific community. At that point in time, Dr. Czarnik received the reputational benefits associated with, and gained the prestige within the scientific community resulting from, being named as an inventor, including numerous offers to participate in invited scientific seminars and many inquiries from recruiters retained to search for and hire recognized researchers and scientists to fill Chief Technology Officer and Chief Science Officer positions in a wide range of technology companies. Amended Complaint, ¶ 103.

- As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has suffered damage to his reputation and standing within the scientific community, has not received the reputational benefits associated with being named as an inventor, and has suffered a loss of prestige within the scientific community resulting from his inventions being recognized as another's. Amended Complaint, ¶ 104.

- During his testimony in the prior lawsuit by Dr. Czarnik against Illumina, Flately, Illumina's CEO, testified that, if Dr. Czarnik had simply resigned from Illumina, "He could join another start-up and get another few hundred thousand shares of stock at another start-up. That's not something he was giving up permanently. He would give up Illumina's and get the new one." Trial Transcript, p. 1457. Amended Complaint, ¶ 105.

- As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has not been able to "join another start-up and get another few hundred thousand shares of stock" which, as set forth above, amounted to an annual compensation of approximately $1 million. As a direct and foreseeable consequence of these actions by Defendant Illumina, Dr. Czarnik has been damaged in an amount to be

10

proven at trial. Amended Complaint, ¶ 106. *See also*, Amended Complaint, ¶¶ 116, 123, 150.

- Dr. Czarnik relied on these representations by Defendant Illumina to his detriment including, inter alia, damage to Dr. Czarnik's reputation and standing within the scientific community, eliminating the reputational benefits associated with being named as an inventor, a loss of prestige within the scientific community resulting from his inventions being recognized as another's, and substantially devaluing Illumina's patent portfolio by rendering unenforceable those U.S. and foreign patents and applications claiming Dr. Czarnik's IBL/DBL Invention and Embedded/Encapsulated Nanocrystal Invention. Amended Complaint, ¶ 165.

- Dr. Czarnik was damaged as a result of his reliance on these representations by Defendant Illumina in an amount to be proven at trial. Amended Complaint, ¶ 167.

Based on the factual allegations set forth in Dr. Czarnik's Amended Complaint and proper consideration of the applicable Statutes and case law, as explained in detail herein, Dr. Czarnik has standing to bring the causes of action of Counts I-IV of the Amended Complaint, this Court has subject matter jurisdiction over those causes of action, and each of the Counts, as pled, properly states a claim upon which the requested relief may be granted.

11

## LEGAL STANDARDS

"Where the defendant [. . . ] ha[s] not filed an answer to the complaint as in the instant case, the attack on subject matter jurisdiction is necessarily considered a facial attack." *ARGOS v. Orthotec LLC*, 304 F. Supp. 2d 591, 593 (D. Del. 2004). As Illumina recognizes, pursuant to a facial attack to subject matter jurisdiction, "the court will construe a plaintiff's allegations as true, and will not look beyond the face of the complaint to determine jurisdiction." *Kanematsu Corp. v. Advanced Materials Lanxide, LLC*, No. 01-190, 2002 U.S. Dist. LEXIS 27043, at *9 (D. Del. Sept. 30, 2002) (citation omitted). *See* Motion at 4.

"In reviewing a motion to dismiss pursuant to Rule 12(b)(6), courts must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Stratos Lightwave, Inc. v. Picolight, Inc.*, No. 03-917, 2005 U.S. Dist. LEXIS 4586, at *3 (D. Del. Mar. 23, 2005) (quoting *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000)) (internal quotations omitted). Most importantly, "[a] complaint should be dismissed only if, . . . no relief could be granted under any set of facts consistent with the allegations of the complaint." *ARGOS*, 304 F. Supp. 2d at 596 (internal citation and quotations omitted) (emphasis added).

## ARGUMENT

Although Illumina recognizes, and parrots, the correct legal standard with respect to a facial challenge to subject matter jurisdiction, it then promptly skews the focus of its Motion to examine what it characterizes as "facts" which are irrelevant to the issues raised by Illumina's motion, and are broadly and wildly mischaracterized by Illumina.

12

As demonstrated below in sections I-III, Illumina's motion should be denied because the arguments set forth in Illumina's motion do not meet the applicable standard. Moreover, this Court has subject matter jurisdiction to address Dr. Czarnik's claim for correction of inventorship pursuant to 35 U.S.C. § 256 and Dr. Czarnik has standing to make that claim since the Amended Complaint alleges Dr. Czarnik's Injury-In-Fact (*see* Amended Complaint, ¶¶ 3, 59, 69, 93-97, 101-106, 115-116, 122-123, 149-150, 165-166).

Subject matter jurisdiction lies with this Court to hear Dr. Czarnik's claim requesting a change to the inventorship on the pending patent applications. Dr. Czarnik does not request that this Court directly alter the inventorship on the subject patent applications, nor has he come to this Court before attempting to seek redress in the PTO. Dr. Czarnik's only route to redress of his claims with respect to the pending patent applications at issue is through this Court. Moreover, since the patent applications at issue are related to the granted patents which are the subject of the § 256 claim, this Court can properly address Dr. Czarnik's claim in accordance with the Federal Circuit's decision in *Chou* and pursuant to 28 U.S.C. § 1367. *See* Section II, *infra*. The declaratory judgment claim for unenforceability based on incorrect inventorship (Count III) is supported by supplemental jurisdiction resulting from this Court's original jurisdiction over the § 256 claim. *See* Section III, *infra*.

Likewise, Illumina's motion to dismiss the state fraud claim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) also fails because Illumina cannot meet, and has not met, the applicable legal standard. If this Court takes all of the allegations of the Amended Complaint as true, as it must, the state fraud claim is proper since relief could

13

be granted "consistent with the allegations of the complaint." *ARGOS*, 304 F. Supp. 2d at

596 (internal citation omitted). *See* Section IV, *infra*.


I.    **DR. CZARNIK HAS ALLEGED A COGNIZABLE HARM
      SUFFICIENT TO SUPPORT STANDING TO ASSERT A
      CLAIM TO CORRECT INVENTORSHIP UNDER 35 U.S.C. § 256**

Dr. Czarnik has alleged a cognizable harm sufficient to support standing to assert

a claim to correct inventorship under 35 U.S.C. § 256.  Illumina attacks Dr. Czarnik's

standing to assert Count I based on two separate grounds.  First, Illumina asserts that Dr.

Czarnik cannot support standing by alleging reputational injury resulting from his

omission as a co-inventor on the issued patents identified in the Amended Complaint.

Motion at 7-9.  As set forth below in section I.A., this argument is unavailing since it fails

to recognize the relevant points of law that support Dr. Czarnik's standing to bring Count

I and further relies on cases which are not precedential to this Court.  Second, Illumina

states that the Amended Complaint's addition of what it characterizes as "vague

reference[s] to unknown future job prospects that were supposedly lost as a result of

Illumina's failure to include him as an inventor on the patents at issue" are "rank

speculation" and do not provide the injury-in-fact necessary to confer standing for Dr.

Czarnik's § 256 claim.  Motion at 6, 9-14.  These arguments, as the ones before relating

to reputational harm, are simply incorrect and are based on cases which are inapposite

and which largely address issues that are not present here.  *See* Section I.B.

14

### A. The Reputational Harm Which Dr. Czarnik Suffered As A Result Of Illumina's Actions Is Sufficient To Support Subject Matter Jurisdiction

Illumina contends that Dr. Czarnik cannot assert a claim pursuant to 35 U.S.C.

§ 256 because he does not "demonstrate (1) an actual concrete injury-in-fact that is

(2) traceable to Illumina's alleged failure to name him as an inventor and (3) is likely to

be remedied by a favorable decision by the Court on these claims." Motion at 6.[3]  In

setting forth its argument, Illumina misses two key points which are both related to the

legal standard required to prevail on a motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(1). In addition, in its argument, Illumina relies on District Court cases which do

not apply to the facts of the present case and which, although they discuss the only

present statement from the U.S. Court of Appeals for the Federal Circuit, do not have the

---

[3]  Defendant Illumina also contends that "Dr. Czarnik's complaint, on its face, fails to allege proper grounds for subject matter jurisdiction in this Court and should therefore be dismissed pursuant to Rule 12(b)(1). Motion at 4. However, the existence of subject matter jurisdiction in this Court, and the legal and factual bases supporting that jurisdiction are indisputable. As clearly set forth in the Amended Complaint, Dr. Czarnik's cause of action is created by 35 U.S.C. § 256, "which explicitly authorizes judicial resolution of co-inventorship contests over issued patents . . . Section 256 affords the opportunity to correct the patent. S.Rep.No. 1979, 82nd Cong., 2nd Sess. at 7 (1952). If the patentees and their assignees agree, correction can be had on application to the Commissioner [of the U.S. Patent and Trademark Office]. In the event consensus is not attained, however, the second paragraph of section 256 permits redress in federal court. See P.J. Frederico, Commentary on the New Patent Act, 35 U.S.C.A. 1 (1954) ("If [the parties] do not concur, the correction can only be made on order of a court . . . Section 256 . . . gives a court authority to order correction"). "The statute prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard. If that is done, there is subject-matter jurisdiction in the district court over a dispute raising solely a joint inventorship issue among contending co-inventors." *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1570 (Fed. Cir. 1989) (citations omitted). Here, there is no dispute that all parties have been given notice and an opportunity to be heard. Thus, this Court has subject matter jurisdiction over Dr. Czarnik's § 256 claim.

force or effect of overruling or undermining that Court's view – a view which unquestionably supports Dr. Czarnik's standing to bring the asserted claims in this action.

First, Illumina states that Dr. Czarnik does not "tie his alleged loss of prestige to any actual pecuniary consequence, such as lost employment opportunities or bonuses due to not being named as a co-inventor." Motion at 7 (internal quotation omitted). This statement is both untrue and irrelevant at this stage in the present proceeding. Notably, Illumina has quoted in its Motion only a selected portion of the applicable factual allegations set forth in Dr. Czarnik's Amended Complaint. *See* Motion at 7. The complete factual allegation from the Amended Complaint includes what the Federal Circuit has recognized as demonstrating the injury-in-fact required to confer standing because "[p]ecuniary consequences may well flow from being designated as an inventor." *Chou*, 254 F.3d at 1359. That allegation, in full, sets forth Dr. Czarnik's damages as:

> [. . . ] damage to Dr. Czarnik's reputation and standing within the scientific community, eliminating the reputational benefits associated with being named as an inventor, a loss of prestige within the scientific community resulting from his inventions being recognized as another's, and substantially devaluing Illumina's patent portfolio by rendering unenforceable those U.S. and foreign patents and applications claiming Dr. Czarnik's IBL/DBL Invention and Embedded/Encapsulated Nanocrystal Invention.

Amended Complaint, ¶ 165. The factual allegations from the Amended Complaint establishing Dr. Czarnik's "Injury-In-Fact" are set forth above in the Summary of Argument and Statement of Facts sections. These factual allegations and the harm suffered by Dr. Czarnik from Illumina's actions <u>are</u> exactly what the Federal Circuit had in mind when it recognized that "pecuniary consequences may well flow from being designated as an inventor."

Further, because Illumina is presenting its argument within the context of a motion to dismiss, its assertion that Dr. Czarnik is not pleading "actual pecuniary consequence[s]" is irrelevant.  Motion at 7.  This is true for two separate and independently sufficient reasons.  First, in order to prevail on a motion to dismiss pursuant to a facial attack on subject matter jurisdiction, Illumina must meet its burden assuming all of the allegations of the complaint are true.  *Kanematsu Corp.*, 2002 U.S. Dist. LEXIS 27043, at *9.  Thus, for purposes of this motion, the factual allegations of the Amended Complaint stating Dr. Czarnik's Injury-In-Fact are treated as being true, and, pursuant to the statements of the Federal Circuit, such harm may meet the injury-in-fact required to satisfy Article III standing since they may cause pecuniary loss.  *Chou*, 254 F.3d at 1359.

Second, contrary to what Illumina seems to believe, Dr. Czarnik is not required to allege every specific instance of harm or pecuniary interest he has suffered within his complaint.  This is so because notice pleading under Fed. R. Civ. P. 8(a)(2) requires only that the allegations of the complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[4]  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (internal citation and quotations omitted).  This "pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Id.*  Thus, Dr. Czarnik is not required to allege every single instance of harm he may have suffered since he undoubtedly will

---

[4]  Count IV must, and, indeed does, meet the pleading requirements of Fed. R. Civ. P. 9(b).  Even under this standard, Dr. Czarnik is not required to plead exact damage amounts or each and every instance of harm.  *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998).

17

discover and quantify these harms during discovery. Such a natural result flowing from the operation of discovery in the federal court system has been recognized and noted in Dr. Czarnik's subsequent allegations. That is, as a result of such discovery, Dr. Czarnik will be able to prove his damages in a concrete dollar amount "at trial." Amended Complaint, ¶ 167.

Illumina bases its incorrect and largely irrelevant argument with respect to reputational injury on case law which has no precedential bearing on this Court, nor does it lessen the statement of the Federal Circuit made in its 2001 *Chou* decision. *See Chou*, 254 F.3d at 1359. Illumina begins by citing a case which does not stand for the proposition it asserts. *Cole v. Gummow*, No. 3-02-CV-705, 2003 U.S. Dist. LEXIS 18925 (N.D. Tex. Oct. 22, 2003). Specifically, Illumina cites the *Cole* case as an example in which a court "reject[ed] an argument that an injury to reputational interest was enough to confer standing." Motion at 7. The Court did not render such a holding. Instead, after recognizing that "no federal court has yet to determine whether the mere status of inventor is sufficient to confer standing," the Court declined to even reach the question of whether such injury is sufficient because the plaintiff in that case "ha[d] offered neither evidence nor argument to assist the court in answering this jurisdictional question." *Cole*, 2003 U.S. Dist. LEXIS 18925, at *10.

The next case which Illumina relies upon is similarly inapposite. *Kucharczyk v. Regents of the Univ. of Cal.*, 48 F. Supp. 2d 964 (N.D. Cal. 1999).[5] In its attempt to

---

[5]    The *Kucharczyk* case was decided more than two years prior to the Federal Circuit's *Chou* case. Illumina acknowledges that the *Chou* Court "disagreed with *Kucharczyk*." Motion at 8 n.2. That, however, is an understatement. What the *Chou* Court actually did was make the observation that, "[w]e are not bound by the decisions of district courts; respectfully, we do not agree with them." *Chou*, 254 F.3d at 1358. Additionally, the Court held that 35 U.S.C. § 256 "imposes no requirement

somewhere find support for its position, Illumina mischaracterizes the facts in the

*Kucharczyk* case and, in support of that mischaracterization, misquotes the case. *See*

Motion at 9. Specifically, in the *Kucharczyk* case, the plaintiffs claimed that they "should

have standing because they are 'proud' of their invention, and they are therefore injured

by the presence of [an additional inventor's] name on the patent." *Kucharczyk*, 48 F.

Supp. 2d at 975. Thus, plaintiffs in that case were asserting harm to their pride based on

the fact that an additional inventor was listed on the patent that they did not think made

an inventive contribution to the claimed invention. Such a loss of mere pride is not

comparable to a loss of reputational interest flowing from deliberate omission as a listed

inventor on several patents and related applications – *i.e.*, Dr. Czarnik's Injury-In-Fact -

as has been suffered by Dr. Czarnik in the instant case. Based on this

mischaracterization, or ignorance of the facts in the *Kucharczyk* case, Illumina misquotes

that case to state that the court discounted reputational injury as "an acceptable Article III

. . . injury." *Id.* However, reputational injury, unlike a loss of pride, can result in

outward damage, as the Federal Circuit recognized when it stated that "[p]ecuniary

consequences may well flow from being designated as an inventor." *Chou*, 254 F.3d at

1359.

Finally, the transcript from the *L.G. Philips LCD Co., Ltd. v. Bovio, C.A.* case

which Illumina attached to its motion to dismiss is equally unavailing. *See* Motion, Exh.

---

of potential ownership in the patent on those seeking to invoke it . . . [and therefore]
Chou should have the right to assert her interest, both for her own benefit and in the
public interest of assuring correct inventorship designations on patents. The interest
of both inventors and the public are thus served by a broad interpretation of the
statute." Id. These holdings are a far cry from a mere "disagreement" with the
holding in *Kucharczyk*. In fact, these holdings from the Federal Circuit's decision in
*Chou* provide further *support* for Dr. Czarnik's case in that the public interest must be
protected.

A.  Although Illumina is correct in that the parties addressed the reputational interest
issue during that hearing, the decision rendered by the Court granting the motion to
dismiss based on lack of subject matter jurisdiction was premised on a much different
issue.  That is, because Mr. Frame, one of the defendants, had stated by "unequivocal
declaration in [a] letter and in this court that he will not sue and does not intend to sue
under [35 U.S.C. § 256] to enforce any right that he has," the reasonable apprehension of
suit prong in the declaratory judgment context could not be met, therefore defeating
subject matter jurisdiction.[6]  Motion, Exh. A at 68-9.  Thus, contrary to Illumina's
assertions with respect to this case, it does not decide, or even directly implicate, the issue
of reputational interest as an Article III standing injury-in-fact.

> **B.    The Additional Allegations Added In The Amended Complaint
> Regarding Dr. Czarnik's Loss Of Job Prospects Based On
> Illumina's Actions Are Sufficient To Support Subject Matter
> Jurisdiction In This Court**

Illumina alleges that "[r]ecognizing that the case law clearly requires more than a
bare allegation of reputational injury to have standing, Czarnik *conjures up* a new
allegation to try to mask his lack of cognizable injury."  Motion at 9 (emphasis added).
Nothing could be further from the truth.  In response to the concerns set forth by
Defendant Illumina in its Motion to Dismiss the original Complaint, Dr. Czarnik filed an
Amended Complaint to more specifically set forth his injury-in-fact and harm suffered as
a direct result of Illumina's previous actions, and to address Defendant's concerns with
respect to this Court's subject matter jurisdiction over Counts II-IV.  *See, e.g.*, Amended

---

[6]    This is a misstatement of the law with respect to claims brought pursuant to 35 U.S.C.
§ 256.  Because such claims do not implicate the operation of 28 U.S.C. § 2201, the
declaratory judgment prerequisites for subject matter jurisdiction need not be met.
*MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1571 (Fed. Cir. 1989).

Complaint, ¶¶ 101-106. Simply put, the additional allegations were included to more specifically set forth Dr. Czarnik's Injury-In-Fact.

Illumina asserts that the additional allegations in the Amended Complaint identifying more specifically Dr. Czarnik's Injury-In-Fact (*see, e.g.*, Amended Complaint, ¶¶ 101-106) are "rank speculation" and do not serve to support Dr. Czarnik's standing to bring the claim under 35 U.S.C. § 256 (Count I). Motion at p. 6.

However, as set forth in the Amended Complaint, "as a direct and foreseeable consequence of Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has not been able to "join another start-up and get another few hundred thousand shares of stock" which, as set forth above, amounted to an annual compensation of approximately $1 million." Amended Complaint, at ¶¶ 106, 116, 123, 150. Such allegations, when taken as true, as required in the context of the present motion, provide, separate and apart from the reputational injury to Dr. Czarnik, the injury-in-fact required to support Dr. Czarnik's standing to bring the claims alleged here. *AFGE, Local 2119 v. Cohen*, 171 F.3d 460, 466 (7th Cir. 1999) (The "actual loss or diminishment of employment benefits, as well as the non-economic detriments, are a sufficiently concrete and particularized injury for constitutional purpose[s].").

In addition, the cases which Illumina cites to support its allegations that Dr. Czarnik's claims regarding lost job prospects are not sufficient to meet the injury-in-fact requirements to support subject matter jurisdiction do not apply to the facts here. <u>First</u>, in support of its argument that Dr. Czarnik's allegations regarding his lost job prospects are

21

speculative, Illumina cites eight cases, all of which are distinguishable from the present case. Illumina begins by citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976) for the proposition that "unadorned speculation will not suffice to invoke the federal judicial power." Motion at 10 (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 44 (1976)). However, the *Simon* case is not applicable here since, in that case, the Court determined that speculation regarding whether the granted relief will actually end at the elimination of the complained of problems was fatal to the claim. *Id.* at 43-44. This conclusion was based on the fact that the plaintiffs in the *Simon* case did not actually name as defendants the parties that were directly responsible for the harm they had suffered. *Id.* at 41-42. Thus, granting relief against the named defendants did not result in a guarantee, or even a probability, that the complained of harm would be remedied. *Id.* at 43-44. Here, Dr. Czarnik brings his claims against the very entity that caused his harm and the very entity which has the power to mend it by amending the inventorship on the granted patents. Similarly, in *Warth v. Seldin*, the Court did not permit subject matter jurisdiction to lie because the individual plaintiffs did not suffer harm themselves, but rather third parties suffered the harm alleged. *Warth v. Seldin*, 422 U.S. 490, 509 (1975) ("In short the claim of these petitioners falls squarely within the prudential standing rule that normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves."). Here, Dr. Czarnik brings claims based on his own harm and seeks to redress that harm against those that caused it.

Next, Illumina cites a string of cases to support its proposition that Dr. Czarnik is claiming speculative harm which is not sufficient to support subject matter jurisdiction in

the federal courts.  However, these cases all address plaintiffs' attempts to request the

court to grant relief for harm that had not occurred as of the date the subject complaint

was filed or for harm that was suffered by third parties and not the plaintiffs.  *See Spencer

v. Kemna*, 523 U.S. 1, 14-16 (1998) (Petitioner's claims regarding his parole revocation

denied subject matter jurisdiction because they were wholly based on situations which

had not occurred, and, may never occur.); *Laird v. Tatum*, 408 U.S. 1, 13 (1972)

("[R]espondents' less generalized yet speculative apprehensiveness that the Army *may at

some future date* misuse the information in some way that would cause direct harm to

respondents" was found not sufficient to support federal court subject matter

jurisdiction.) (emphasis added); *Mariana v. Fisher*, 338 F.3d 189, 206 (3d Cir. 2003),

*cert. denied*, 540 U.S. 1179 (2004) ("Because Plaintiffs are not asserting their own legal

interests but instead those of third parties . . . the doctrine of prudential standing

precludes us from hearing such claims."); *Storino v. Borough of Point Pleasant Beach*,

322 F.3d 293, 297 (3d Cir. 2003) ("[T]he Storinos admitted that they have not yet

incurred damages as a result of the adoption of the Ordinance . . . This allegation of

*future damage* is insufficient to accord the Storinos standing to assert their federal

claim.") (emphasis added); *Maio v. Aetna, Inc.*, 221 F.3d 472, 486 (3d Cir. 2000)

(Because the plaintiffs had not alleged any actual injury they had yet to suffer, the court

found subject matter jurisdiction was not proper.  The "mere possibility" that there might

be a *future harm* is not sufficient.).

　　　　Plainly, in this case, Dr. Czarnik's harm was suffered years ago when Illumina

omitted him from the inventorship on the granted patents, as explained in detail in the

Amended Complaint.  Dr. Czarnik recently was made aware of Illumina's

misrepresentations and omissions and is now requesting that this Court address the harm

he has suffered in loss of employment prospects that he was not offered and was not able

to secure in the past, prior to the filing of the Amended Complaint, as a direct and

foreseeable consequence of Illumina's actions. Moreover, Dr. Czarnik is the harmed

individual and is not seeking redress for harm caused to a third party. Thus, none of the

cited cases support Illumina's position here.

   Illumina cites other cases that it characterizes as specific examples in which

courts "have rejected the exact type of job-prospect 'injury' that Czarnik seeks to rely on

for Article III standing." Motion at 11. A close reading of these cases reveals that each

is distinguishable from the facts here. The *Spencer* case is discussed above. In the one

newly cited case, *AFGE v. Clinton*, rather than blocking claims based on the loss of job

prospects, the court blocked the plaintiffs' claims because "[t]heir injuries tend[ed] to

involve the potential loss of job benefits, not an actual one." *AFGE v. Clinton*, 180 F.3d

at 732 (6th Cir. 1999), *cert. denied*, 529 U.S. 1018 (2000). Here, Dr. Czarnik clearly

alleges that Illumina's actions resulted in loss of actual benefits he otherwise would have

enjoyed. *See* Amended Complaint, ¶¶ 102, 105, 106. Thus, unlike the plaintiffs in *AFGE

v. Clinton*, Dr. Czarnik is like the plaintiffs in *AFGE, Local 2119 v. Cohen*, where the

"actual loss or diminishment of employment benefits, as well as the non-economic

detriments, are a sufficiently concrete and particularized injury for constitutional

purpose[s]." *AFGE, Local 2119 v. Cohen*, 171 F.3d at 466.

   Next, Illumina states that, "even if by some stretch it could be argued that these

speculative allegations are sufficient to show a concrete and particularized injury-in-fact,

Czarnik's claims still fail for lack of standing because he has not sufficiently shown a

24

causal connection between the alleged injury and the alleged wrongful conduct by Illumina." Motion at 12. Again, in support of its position, Illumina cites case law which is factually distinguishable. Illumina cites the *Simon* case stating that the alleged harm must be traceable to the defendant who is before the Court. Motion at 12 (citing *Simon* 426 U.S. at 41-42). As a proposition of law, Dr. Czarnik does not argue with that conclusion. However, unlike the plaintiffs in the *Simon* case, Dr. Czarnik has actually sued the party responsible for his suffered damages. The *Simon* plaintiffs sued an entity whose actions did not cause the actual harm they had alleged. *Simon*, 426 U.S. at 41. In the next case cited, *Warth*, the plaintiffs sought jurisdiction based on harm that had been suffered only by third parties. *Warth*, 422 U.S. at 508-09. Finally, in *Linda R. S. v. Richard D.*, 410 U.S. 614 (1973), aside from being an attempt of a private citizen to seek the "prosecution or nonprosecution of another," which is not permitted, the court did not permit subject matter jurisdiction to stand because, if the requested relief was granted, the plaintiff would have only gained the incarceration of the defendant, not the payment of back child support which she sought. *Id*. at 618. Here, if this Court grants the relief Dr. Czarnik has requested, his harm will be directly addressed.

Finally, Illumina states that, even if the first two prongs of the standing inquiry are met, Dr. Czarnik cannot meet the third since "there is no way he can surmount the requirement that a decision in his favor will be likely to redress his alleged injury." Motion at 13. Illumina's cited case is, again, off point. In the portion of the *ASARCO, Inc. v. Kadish*, 490 U.S. 605 (1989) case which Illumina cites, a teacher's association was found not to have standing since the "increased revenues from state leases" may not lead to the "increase in teacher salaries or benefits" which they sought. *Id*. at 614-15. Putting

25

aside the fact that government policy issues were at stake, which issues are addressed

much differently than private claims, the present case is different since, again, Dr.

Czarnik has already suffered the harm he alleges. In *ASARCO*, the plaintiffs' claims

depended on decisions which had not been made yet. Here, the decisions have been

made, and Dr. Czarnik has suffered as a result of those decisions, which would not have

been made but for Illumina's actions and omissions.

Thus, when taken as true, the allegations of harm resulting from the job

opportunities that Dr. Czarnik lost as a direct and foreseeable result of Illumina's actions,

are sufficient to support subject matter jurisdiction at this juncture.


## II.    ILLUMINA FAILS TO MEET ITS BURDEN UNDER FED. R. CIV. P. 12(b)(1) WITH RESPECT TO THE 35 U.S.C. § 116 CLAIM

Illumina requests that this court dismiss Count II of the Amended Complaint

based on lack of subject matter jurisdiction. Motion at 14-15. Illumina bases its Fed. R.

Civ. P. 12(b)(1) attack on what it alleges is the lack of an express authorization within 35

U.S.C. § 116 for a district court action with respect to modifying the inventorship on

pending patent applications. *Id*. Illumina's assertions with respect to this claim are

deficient for at least three reasons.

First, Dr. Czarnik has not requested that this Court directly correct the

inventorship on the patent applications at issue. Rather, Dr. Czarnik requests that the

Court issue an order "requiring the Director of the U.S. Patent and Trademark Office

[(the "PTO")], and Defendant Illumina, to correct the inventorship in the U.S. and in all

26

foreign patent offices by adding Dr. Czarnik as an inventor."[7] Amended Complaint,

Prayer for Relief, at B. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356 n.1 (Fed.

Cir. 2004).[8] Thus, Dr. Czarnik's prayer for relief does not run afoul of the express grant

of power in 35 U.S.C. § 116.

Second, as alleged in the Amended Complaint, Dr. Czarnik has attempted to

pursue his claim within the PTO as to the patent applications on which he believes he

should have properly been named as a co-inventor. Amended Complaint, ¶¶ 98-100.

The PTO has taken no action on these protests. *Id.*, ¶ 100. Additionally, the courts have

interpreted 35 U.S.C. § 256 as requiring agreement of all parties on the proper

inventorship to permit recourse through the PTO. *Hydril Co. v. Baker Hughes Inc.*, No.

96-1288, 1997 U.S. App. LEXIS 21745, at *13 (Fed. Cir. Aug. 19, 1997) (citing *MCV,

Inc.*, 870 F.2d at 1570). Given the fact that Sections 116 and 256 are parallel, just as with

Section 256, the Director of the PTO would likely not change inventorship on pending

patent applications pursuant to § 116 without approval of all of the interested parties.

*Sagoma Plastics, Inc. v. Gelardi*, 366 F. Supp. 2d 185, at 187 (D. Me. 2005) (recognizing

---

[7]     Although Dr. Czarnik relies upon the *Chou* decision and 28 U.S.C. § 1367 to confer
subject matter jurisdiction over the § 116 claim, at least one district court has found
that it had jurisdiction to hear a § 116 claim based on original jurisdiction. *See
Kosower v. Gutowitz*, No. 00 Civ. 9011, 2001 U.S. Dist. LEXIS 19111, at *19-20
(S.D.N.Y. Nov. 18, 2001) ("[T]his Court has jurisdiction under 28 U.S.C. § 1338(a)
over this claim, which arises under 'any Act of Congress relating to patents' . . . In
this case the plaintiff correctly argues that his well pleaded claim to correct the
designation of inventorship raises an issue of federal patent law under § 116 that is
substantial enough to satisfy the jurisdictional test."). *But, cf., Airport Surface Techs.,
L.L.C. v. Fieldturf, Inc.*, 268 F. Supp. 2d 999, 1003 (N.D. Ill. 2003) ("The district
court's decision in *Kosower*, however, has been criticized for its reliance on cases that
involved issued patents, not pending patent applications.") (citation omitted).

[8]     This statement in *Eli Lilly* was *dicta* since "it found that the district court had
constructively converted plaintiff's claim to a § 256 claim when the patent in question

---

063688.1001

the parallel nature of Sections 116 and 256). Again based on the parallel nature of these provisions, it is at least equally plausible that Congress believed a putative inventor could seek correction of inventorship on patent applications through a district court in the absence of the ability to petition the PTO to do so based on the fact that all parties do not agree.[9] Indeed, in the absence of even an implied right of action in the district courts, a putative inventor is left with a right to correct inventorship on a patent application without a method to redress the denial of that right. This is unpermitted in our justice system. *Marbury v. Madison*, 5 U.S. 137, 152 (1803) ("It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress.").

Third, again the cases on which Illumina rests its arguments do not support the weight of the burden Illumina shoulders. As noted in footnote 6 above, the *Eli Lilly* case only supported Illumina's propositions in *dicta* and has never directly made a precedential holding on the subject. Further, the other case Illumina cites in support of its proposition is totally inapposite. *See Airport Surface Techs., L.L.C. v. Fieldturf, Inc.*, 268 F. Supp. 2d 999 (N.D. Ill. 2003). In the *Airport Surface* case, what plaintiffs were "really seeking [wa]s a determination of priority of invention." *Id.* at 1002. Thus, plaintiffs were attempting to use § 116 as an end run around 35 U.S.C. § 135 which grants the PTO exclusive jurisdiction over priority disputes. *Id.* Although the case does make the

---

was issued during the course of the litigation." *Sagoma Plastics, Inc. v. Gelardi*, 366 F. Supp. 2d 185, 189 n.2 (D. Me. 2005).

[9]    *Cf.*, *Sagoma Plastics, Inc.*, 366 F. Supp. 2d 185 (Court finds that the absence of an express ability to seek correction under section 116 means that Congress did not intend for one to be available.)

28

statement that § 116 does not "explicitly create jurisdiction in the district courts," it does

not state that such jurisdiction is not implicitly created. *Id.* at 1003.

What is telling is the lack of any reference in Illumina's discussion of Dr.

Czarnik's legal basis to correct inventorship on the pending U.S. and foreign patent

applications (Count II) to the Federal Circuit's decision in *Chou.*  Importantly, in *Chou*,

the Federal Circuit stated that, because granted patents were at issue, "the district court, if

it concludes on remand that Chou is properly an inventor of the disputed subject matter,

can instruct the University to take appropriate action to change the inventorship

designation on the foreign patent applications" on which she also claimed to be an

inventor. *Chou*, 254 F.3d at 1360.  This conclusion was based on the fact that

"inventorship on such applications normally follows the inventorship designation in the

originating country." *Id.*  This same reasoning applies in the case of related U.S. patent

applications – that is, for the pending U.S. applications claiming priority directly or

indirectly in the applications that issued as the patents which are the subject of the § 256

claims.  The U.S. and foreign patent applications which are the subject of Dr. Czarnik's

Count II are each based on, and claim priority directly or indirectly from, the issued U.S.

patents which are the subject of Dr. Czarnik's Count I. *See, e.g.,* Amended Complaint,

¶¶ 43, 46, 50, 56, and 62.  For the same reasons that the Federal Circuit in *Chou* found

that the District Court had subject matter jurisdiction to correct inventorship on the

related foreign applications, subject matter jurisdiction lies in this Court to correct

inventorship on the related applications which are the subject of Dr. Czarnik's Count II.

Furthermore, because this Court has original subject matter jurisdiction over the

§ 256 claim, it has jurisdiction over the declaratory judgment claim of inventorship of the

pending U.S. and foreign patent applications pursuant to 28 U.S.C. § 1367, since the

declaratory judgment claim springs from the same set of operative facts. *MediGene Ag v.*

*Loyola Univ. of Chicago*, No. 98 C 2026, 2001 U.S. Dist. LEXIS 25269, at *4 (N.D. Ill.

Dec. 17, 2001) (Court finds that it has "jurisdiction to order transfer of foreign patent

applications" because such are involved in the same case or controversy as presented by

the granted patens at issue.).

   Since Dr. Czarnik does not request that this Court directly alter the inventorship

on the subject patent applications, nor has he come to this Court before attempting to seek

redress in the PTO, Dr. Czarnik's only route to redress of his claims with respect to the

pending patent applications at issue is through this Court. Illumina's "supporting" case

law does not block such an attempt, and, thus, Illumina can not meet its burden under a

Fed. R. Civ. P. 12(b)(1) claim since the claims presented here are not "wholly

insubstantial and frivolous."[10] *ARGOS*, 304 F. Supp. 2d at 593 (internal citation omitted).

Finally, subject matter jurisdiction lies in this Court to correct inventorship on the related

U.S. and foreign applications identified in the Amended Complaint in accordance with

*Chou* and pursuant to 28 U.S.C. § 1367.

---

[10]   It is not at all clear that Illumina has even brought this motion under the correct
provision of the federal rules. That is, "the core of [Illlumina's] argument is that the
provision of federal patent law at issue does not provide [Dr. Czarnik] with a cause of
action for which relief can be granted. . . . disputes over the interpretation of federal .
. . law generally go to the merits of a claim rather than jurisdiction." *Sagoma
Plastics*, 366 F. Supp. 2d at 189-190. "Under this standard, dismissal under Rule
12(b)(1) is inappropriate when the case hinges upon an arguable interpretation of
federal law." Id.

063688.1001

### III.    BECAUSE SUPPLEMENTAL JURISDICTION EXISTS FOR THE DECLARATORY JUDGMENT OF UNENFORCEABILITY BASED ON INEQUITABLE CONDUCT, DR. CZARNIK MAY ASSERT COUNT III

Illumina asserts that, because Dr. Czarnik cannot meet the test for a case or controversy pursuant to the Declaratory Judgment Act, Count III must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). Motion at 15-19. However, because this Court has original subject matter jurisdiction over the § 256 claim, it has jurisdiction over the declaratory judgment claim pursuant to 28 U.S.C. § 1367 since the declaratory judgment claim springs from the same set of operative facts.

In pertinent part, 28 U.S.C. § 1367(a) reads:

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that *they form part of the same case or controversy* under Article III of the United States Constitution.

28 U.S.C. §1367(a) (emphasis added). Thus, "[s]upplemental jurisdiction . . . allows a district court which has jurisdiction over a federal claim to also maintain jurisdiction over related claims . . . over which it otherwise would lack jurisdiction." *Hideo Matsuda v. Michiko Wada*, 128 F. Supp. 2d 659, 671 (D. Haw. 2000). *See also, Geer v. Cox*, 216 F.R.D. 677, 678 (D. Kan. 2003) ("When a federal court has original jurisdiction over a civil cause of action, § 1367 determines whether it may exercise supplemental jurisdiction over other claims that do not independently come within its jurisdiction, but that form a part of the same Article III case or controversy.")

Here, all of the asserted claims are based on the incorrect inventorship of the subject patents and applications, and Illumina's activities with respect to the omission of Dr. Czarnik's inventorship from all interested parties, including the PTO and Dr. Czarnik

31

063688.1001

himself. Since this Court has original jurisdiction over the § 256 claim (Count I), this

Court may also exercise jurisdiction over the declaratory judgment action for

unenforceability of the subject patents and applications (Count III) based on this same

core of operative facts. In fact, the Federal Circuit determined that a declaration of

unenforceability was proper based on an inequitable conduct claim stemming from a

similar inventorship issue evidencing repeated conduct to omit a proper inventor "from

participation in the patent." *See Frank's Casing Crew & Rental Tools, Inc. v. PMR*

*Techs., Ltd.*, 292 F.3d 1363, 1376 (Fed. Cir. 2002). The declaratory judgment plaintiff

requested both a correction of inventorship pursuant to § 256 and a declaratory judgment

of unenforceability based on the inventorship issue, and was granted both forms of relief.

*Id.* at 1376-77.

   With respect to Count III, Illumina next argues that, even if the Court had

jurisdiction with respect to the issued patents, it would not have jurisdiction with respect

to the pending patent applications. Motion at 17-8. However, if a specific patent is

declared unenforceable based on inequitable conduct "early in the prosecution [such

conduct] may render unenforceable all claims which eventually issue from the same or a

related application." *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 4 F. Supp.

2d 477, 487 n.13 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000), *cert. denied*,

531 U.S. 1190 (2001) (quoting *Fox Indus., Inc. v. Structural Preservation Sys., Inc.*, 922

F.2d 801, 804 (Fed. Cir. 1990)).[11] As set forth in the Amended Complaint, the improper

---

[11]  In a related argument, Illumina asserts that it is "premature" to determine
    unenforceability as to the subject patent applications because "it is possible [. . . ] to
    cure inequitable conduct during prosecution of the application." Motion at 18. What
    Illumina fails to point out is that, while it may be possible to cure inequitable conduct,
    such cure of inequitable conduct can only occur in "certain limited circumstances"
    and "a complete 'cure' must also be demonstrated by clear, unequivocal, and

32

naming of an inventor or omission of a proper inventor may lead to a finding of

inequitable conduct since the correct inventorship information is material to the

patentability of the claims in the pending application. *See* Amended Complaint, ¶ 147.

Thus, since there is a set of facts on which subject matter jurisdiction over the pending

patent applications could be found, the present motion must be denied as to Count III.


## IV.    DR. CZARNIK'S CLAIM UNDER STATE LAW FRAUD IS PROPER

As an initial matter, Illumina asserts that, because Dr. Czarnik has "no

recognizable interest in the patents and applications he seeks to correct . . . , it follows

that Czarnik also lacks standing to bring his fraud claim (Count IV) that turns on the

correction of inventorship issue." Motion at 14. This statement is legally incorrect, as

illustrated by one of the very cases which Illumina cites as allegedly supporting its own

manufactured positions. "[D]ismissal of their section 256 claim does nothing to prevent

plaintiffs from asserting their state law claims for fraud . . . because they are still free to

establish that [defendant] fraudulently caused them . . . to believe [the additional named

inventor] was a co-inventor." *Kucharczyk*, 48 F. Supp. 2d at 975. Similarly, here, Dr.

Czarnik is still free to establish that he is a proper co-inventor of the inventions claimed

in the patents and applications, even if he is not entitled to a declaration by the court

requiring Illumina or the PTO to change the inventorship on such pursuant to a

declaration under 35 U.S.C. § 256. Thus, even if Dr. Czarnik is unable to maintain his

---

convincing evidence." *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1572
(Fed. Cir. 1983), *cert. denied*, 469 U.S. 851 (1984). Most importantly, here, the only
evidence, as alleged in Dr. Czarnik's Amended Complaint, is that Illumina has
refused to "cure" the alleged inequitable conduct. *See* Amended Complaint, ¶¶ 98-
100.

063688.1001

claim to correct inventorship, the Court can determine whether or not he is a proper inventor, and based on that determination, resolve the fraud claim set forth in Count IV of the Amended Complaint.

In advancing its argument with respect to its motion to dismiss the state law fraud claim based on a failure to state a claim, Illumina alleges that Dr. Czarnik does not state a claim "because the purported misrepresentations were not made to Czarnik." Motion, at 20. In making this argument, Illumina either overlooked or simply chose to ignore the four lines subsequent to the block quote Illumina provides from the single case it offers in support of its position. "[Fraud] may also occur through deliberate concealment of material facts." *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). "Thus, one is equally culpable of fraud who by omission fails to reveal that which it is his duty to disclose in order to prevent statements actually made from being misleading." *Id.* Clearly, the Amended Complaint alleges such omission committed by Illumina and its principals repeatedly over a period of years, which Dr. Czarnik only recently became aware of. *See, e.g.*, Amended Complaint, ¶¶ 87-97. Pursuant to a motion to dismiss for failure to state a claim, these allegations must be accepted as true, and, clearly, if true, relief could be granted "consistent with the allegations of the complaint." *ARGOS*, 304 F. Supp. 2d at 596 (internal citation omitted). As a result, Illumina's motion to dismiss must be denied as to the state law fraud claim.

It appears that Illumina is also asserting that, in the absence of a cognizable injury, the state fraud claim cannot withstand a motion to dismiss. Motion at 20-21. However, as discussed at section I above, Dr. Czarnik is not required to spell out an exact price tag on the harm he has suffered at this early stage of the case. Dr. Czarnik's Injury-

34

In-Fact carries along with it pecuniary harm which exact amount can be determined after discovery has progressed.  Thus, Illumina fails to meet its burden under a motion to dismiss for this count as well.

35

## CONCLUSION

For the reasons set forth above, Illumina's motion to dismiss pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(b)(6) should be **denied**.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Martin S. Lessner  (No. 3109)
Adam W. Poff  (No. 3990)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
mlessner@ycst.com
apoff@ycst.com

Attorneys for Plaintiff
Dr. Anthony W. Czarnik

OF COUNSEL:

ROTHWELL, FIGG, ERNST & MANBECK, P.C.
Martin M. Zoltick
Steven Lieberman
Lisa N. Phillips
1425 K Street, N.W., Suite 800
Washington, DC  20005
Telephone:  (202) 783-6040
Facsimile:  (202) 783-6031

Dated:  October 27, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2005, I caused to be electronically filed a true

and correct copy of the foregoing document with the Clerk of the Court using CM/ECF,

which will send notification that such filing is available for viewing and downloading to

the following counsel of record:

> Richard K. Herrmann, Esquire
> Morris James Hitchens & Williams LLP
> 222 Delaware Avenue, 10th Floor
> PO Box 2306
> Wilmington, DE 19899-2306

I further certify that on October 27, 2005, I caused a copy of the foregoing

document to be served by the manner indicated on the following counsel of record:

### BY HAND DELIVERY

> Richard K. Herrmann, Esquire
> Morris James Hitchens & Williams LLP
> 222 Delaware Avenue, 10th Floor
> PO Box 2306
> Wilmington, DE 19899-2306

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> _____
> Adam W. Poff (No. 3990)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> Telephone: (302) 571-6600
> Facsimile: (302) 571-1253
> apoff@ycst.com

> Attorneys for Plaintiff
> Dr. Anthony W. Czarnik