IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DR. ANTHONY W. CZARNIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:05-CV-400-JJF |
| ) | |
| ILLUMINA, INC. ) | |
| ) | |
| Defendant. ) | |

**REPLY MEMORANDUM IN SUPPORT OF
ILLUMINA'S MOTION TO DISMISS CZARNIK'S AMENDED COMPLAINT**

Richard K. Herrmann #405
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801
(302) 888-6800
rherrmann@morrisjames.com

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

***Counsel for Illumina, Inc.***

Dated:  November 3, 2005

**Table of Contents**

I.  Czarnik Does Not Allege Any Legally-Cognizable Injury-In-Fact And Therefore Does Not Have Standing To Assert Any Of His Claims. ...................................................2

    A.  Czarnik's Alleged "Reputational" Injury is Insufficient to Confer Standing to Sue ...............................................................................................................4

    B.  Czarnik's Vague Speculation Regarding Loss of an Unknown Potential Job Cannot Create the Actual and Concrete Injury Necessary to Bring Suit Under Article III ...............................................................................................5

II.  Count II Should Be Dismissed With Respect To Illumina's Pending U.S. Patent Applications Because Jurisdiction Rests Solely With the PTO For Such Claims. ...............8

III. Czarnik Cannot Create Jurisdiction For His Inequitable Conduct Claims By Asserting "Supplemental Jurisdiction" Based On His Other Claims. ...............................11

IV. Czarnik's Failure To State A Legally-Cognizable Injury-In-Fact Mandates Dismissal Of The Fraud Claim (Count IV)..........................................................................13

V.  Conclusion ...........................................................................................................................14

i

**Table of Authorities**

**Cases**

*AFGE, Local 2119 v. Cohen*,
 171 F.3d 460 (7th Cir. 1999) ......................................................................................... 6, 7

*American Federation of Gov't. Employees v. Clinton*,
 180 F.3d 727 (6th Cir. 1999) ............................................................................................. 7

*Chou v. University of Chicago*,
 254 F.3d 1347 (Fed. Cir. 2001) .................................................................................... 4, 10

*Cole v. Gummow*,
 2003 WL 22455387 (N.D. Tex. Oct. 22, 2003) ................................................................. 4

*E.I. Dupont de Nemours & Co. v. Okuley*,
 344 F.3d 578 (6th Cir. 2003) ........................................................................................... 10

*Eli Lilly and Co. v. Aradigm Corp.*,
 935 F.3d 1352 (Fed. Cir. 2004) ......................................................................................... 9

*Ethicon, Inc. v. U.S. Surgical Corp.*,
 135 F.3d 1456 (Fed. Cir. 1998) ....................................................................................... 10

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Tech. Ltd.*,
 292 F.3d 1363 (Fed. Cir. 2002) ....................................................................................... 12

*Geer v. Cox*,
 216 F.R.D. 677 ................................................................................................................ 12

*Jinks v. Richland County, S.C.*,
 538 U.S. 456 S.Ct. 1667 (2003) ...................................................................................... 12

*Kucharczyk v. Regents of University of California*,
 48 F. Supp.2d 964 (N.D. Cal. 1999) ............................................................................... 13

*L.G. Philips LCD Co. v. Bovio*,
 C.A. No. 11076-RCL (D. Mass. Jan. 10, 2005) ................................................................ 4

*Linda R.S. v. Richard D. et al.*,
 410 U.S. 614 (1973) .......................................................................................................... 8

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ...................................................................................................... 2, 5

*Matsuda v. Wada*,
 128 F. Supp.2d 659 (D. Haw. 2000) ............................................................................... 11

*MediGene Ag v. Loyola Univ. of Chicago*
  2001 WL 1636916 (N.D. Ill. Dec. 19, 2001) .................................................................. 10

*Sagoma Plastics, Inc. v. Gelardi*,
  366 F. Supp.2d 185 (D. Me. 2005) ................................................................................ 10

*Simon v. E. Ky. Welfare Rights Org., et al.*,
  426 U.S. 26 (1976) ..................................................................................................... 7, 8

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*,
  57 F.3d 1054 (Fed. Cir. 1995) ....................................................................................... 13

**Statutes**

28 U.S.C. § 1367(a) ............................................................................................................ 12

35 U.S.C. § 256 .................................................................................................................... 9

In his *36-page* opposition brief, Plaintiff Anthony Czarnik fails to address the fundamental flaw in his Amended Complaint.  He alleges no ownership or financial interest in the patents he seeks to have corrected, and the loss-of-job-prospects allegation he added to "fix" his complaint falls woefully short of meeting the constitutional requirements for standing.  While Czarnik seeks to brush off the mountain of case law cited by Illumina as "factually distinguishable" or "not precedential," all he can cite in his favor is a single Seventh Circuit case that further underscores why his claims must be dismissed -- there must be an "***actual loss***" that is caused by the alleged wrongdoing, not mere speculation about hypothetical harm.

Every court to have addressed correction of inventorship and related claims has required an allegation of at least some type of pecuniary interest (and thus injury) relating to the patents for which correction is sought.  Czarnik's Amended Complaint fails this threshold test.  Czarnik's rote citation in his Answering Brief of numerous irrelevant paragraphs of his complaint cannot hide the fact that he does not and can not claim any ownership, financial or other pecuniary interest in the patents to have standing to assert his alleged causes of action.  Nor do his speculations about unidentified abstract job prospects provide the requisite concrete injury necessary to satisfy the constitutional requirements of standing under Article III.  For this reason, all of Czarnik's asserted counts must be dismissed for lack of standing.

Even if Czarnik could somehow claim a cognizable interest and injury to create standing, his declaratory judgment claims in Counts II and III are still lacking.  Czarnik seeks to turn the statutory scheme set up by Congress on its head by arguing that, although the statutes do not allow him to ask this Court to directly correct inventorship of pending patent applications, somehow this Court has the authority to do so "indirectly" because Czarnik is unhappy with the progress the U.S. Patent and Trademark Office has made on his petition to correct inventorship

filed there. No court has ever sanctioned such a claim, and this Court should not be the first. Similarly, Czarnik's argument that this Court has "supplemental jurisdiction" to address a declaratory judgment action of unenforceability also seeks to create a new legal doctrine. The concept of supplemental jurisdiction is only available to create federal jurisdiction for an otherwise cognizable (usually state law) claim, and is *not* a mechanism by which the prerequisites for federal law claims can be bypassed.

This Court should reject Czarnik's invitation to ignore the precedent and create new causes of action and bases for standing never before recognized by any federal court. Illumina respectfully submits Czarnik's Amended Complaint must be dismissed in its entirety.[1]

### I. Czarnik Does Not Allege Any Legally-Cognizable Injury-In-Fact And Therefore Does Not Have Standing To Assert Any Of His Claims.

Czarnik's Answering Brief, like his Amended Complaint, is devoid of any allegation sufficient to confer standing before this Court. While Czarnik misleadingly contends that an action under § 256 merely requires that all parties must be given notice and an opportunity to be heard (Ans. Br. at 15 n.3), there can be no dispute that a § 256 claim (like any action in federal court) requires the plaintiff to demonstrate (1) a concrete and particular injury-in-fact; (2) a causal connection between the injury and alleged conduct by the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To assert a legally-supportable injury-in-fact here, Czarnik must demonstrate some pecuniary harm that is traceable to

---

[1] While Czarnik seeks to take Illumina to task for not attacking the factual bases of Czarnik's allegations (Ans. Br. 7, n.2), this is, of course, a red herring. Illumina will address the fallacy of many of Czarnik's factual allegations if that becomes necessary, but the point of Illumina's motion to dismiss is that even taking all of his spurious allegations as true, Czarnik's Amended Complaint still fails to state any cognizable claims.

2

Illumina's alleged failure to name him as a joint inventor. As discussed in detail in Illumina's opening brief, however, Czarnik has not met this threshold requirement.

As hard as he tries to conjure up an injury-in-fact, Czarnik can only point to amorphous allegations in his complaint relating to some supposed impact on his reputation or pure conjecture about the loss of some unknown and theoretical job that would allegedly have paid him $1 million a year. Apparently thinking that attaching a label will make it so, Czarnik defines "Dr. Czarnik's Injury-In-Fact" as:

> Dr. Czarnik has not been given the credit and recognition he was entitled to for his contribution to the patented microarray technology, has suffered damage to his reputation and standing in the scientific community, has not received the reputational benefits associated with being named as an inventor, has suffered a loss of prestige within the scientific community resulting from his inventions being recognized as another's, and, as a direct and foreseeable consequence of Defendant Illumina's actions, has not been able to "join another start-up and get another few hundred thousand shares of stock" which, as explained below, amounted to an annual compensation of approximately $1 million, and was damaged as a result of his reliance on Defendant Illumina's actions in an amount to be proven at trial.

(Ans. Br. at 3-4). But, labels aside, there is no allegation in this definition that supports a legally recognizable injury-in-fact sufficient to meet the constitutional requirements of Article III. Czarnik then block quotes numerous paragraphs from his complaint on pages 8-11 of his Answering Brief, but again none of the paragraphs state any actual or concrete injury. All Czarnik can come up with is hypothetical fluff regarding possible abstract harms he may have suffered. This falls short of what is required for standing to assert correction of inventorship and related claims.

3

### A. Czarnik's Alleged "Reputational" Injury is Insufficient to Confer Standing to Sue

Czarnik's lengthy paragraph defining his alleged "Injury-In-Fact" fails to include any allegation that Czarnik has an ownership or pecuniary interest in the patents for which he seeks to correct inventorship. Absent such a pecuniary tie, precedent dictates that Czarnik lacks standing to sue under § 256. Czarnik tries, but fails, to distinguish the correction-of-inventorship case law cited in Illumina's opening brief. Two conclusions from this precedent are unavoidable. *First*, every district court to have addressed this issue has found that allegations of reputational damage are insufficient to provide a party standing to seek correction of inventorship; in all of these cases, and in all of the holdings (as opposed to dicta) of the Federal Circuit, an ownership or financial interest in the patent has been required for standing. *See*, *e.g.*, *Cole v. Gummow*, 2003 WL 22455387 (N.D. Tex. Oct. 22, 2003); *L.G. Philips LCD Co. v. Bovio*, C.A. No. 11076-RCL (D. Mass. Jan. 10, 2005) (hearing transcript attached as Ex. A to Illumina's Opening Brief); *cf. Chou v. University of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001) (holding that financial interest in patent was sufficient to confer standing). *Second*, even if the dicta in *Chou* (stating that it is "not implausible" that certain allegations of reputational injury might confer standing) had effect, this dicta goes on to suggest that standing should only be found where direct pecuniary consequences flowed from this reputational impact. *Chou*, 254 F.3d at 1359.

Under either line of thinking, therefore, Czarnik loses. The only way for Czarnik to have standing and survive a motion to dismiss is for this Court to take the dicta in *Chou* and extend it to cover the instant situation where there are bare allegations of hypothetical injury to reputation without any specific pecuniary consequence. No court has ever taken this step, and correctly so—it would vitiate the requirement for a tangible injury-in-fact to state a viable claim.

Ultimately, Czarnik seeks to excuse the insufficiency of his pleading by seeking to fall back on the limited requirements of notice pleading. Czarnik argues that he "is not required to allege every specific instance of harm or pecuniary interest he has suffered within his complaint." (Ans. Br. 17) That is true, but also irrelevant. Czarnik's Amended Complaint must be dismissed, not because he has failed to allege *every* instance of harm, but because in fifty pages he has failed to allege even a *single* instance of concrete pecuniary harm resulting from the fact he is not named as a co-inventor. Even if the dicta in *Chou* were followed, it is not enough to merely posit hypothetical impacts to reputation and then hope that discovery might turn up something tangible upon which to base a claim.[2] Standing is premised on the notion that a party has suffered (or will imminently suffer), and can allege, an injury-in-fact. *Lujan*, 504 U.S. at 560. Czarnik has not and can not satisfy this threshold pleading requirement for bringing his claims, and thus they all must be dismissed.

> **B.  Czarnik's Vague Speculation Regarding Loss of an Unknown Potential Job Cannot Create the Actual and Concrete Injury Necessary to Bring Suit Under Article III**

Acknowledging the weakness of his arguments on the "reputational injury" issue, Czarnik filed an Amended Complaint to save his claims by adding allegations of some undefined loss of job prospects. But settled case law dictates that this alleged "injury" is too speculative and abstract to satisfy the Article III requirement of an "injury in fact – an invasion of a legally protected interested which is (a) *concrete* and particularized and (b) *actual* or imminent, ***not conjectural or hypothetical***." *Lujan*, 504 U.S. at 560 (emphasis added). As detailed in Illumina's opening brief, the Supreme Court and Third Circuit (among other courts) have

---

[2]  Since Czarnik himself would be in the best position to identify any pecuniary harm to him (if there was any), Czarnik's suggestion that he will be able to identify some harm during discovery is highly unlikely. In any event, Czarnik is prohibited from bringing any claim unless and until he can identify a cognizable injury-in-fact, and the Court should reject his request to go on a fishing expedition to support his claims.

5

consistently held that hypothetical and speculative allegations of injury fall far short of the actual and concrete injury-in-fact necessary to establish standing to sue.

The only case offered by Czarnik in response actually underscores Illumina's point. In *AFGE, Local 2119 v. Cohen*, 171 F.3d 460 (7th Cir. 1999), the plaintiffs had each been demoted because of the conduct in question. The court found that the reduction in both income and retirement benefits that resulted from this demotion was sufficiently concrete to create standing under Article III because the plaintiffs had articulated an "***actual*** loss or diminishment of employment benefits." *Id.* at 466. Unlike the plaintiffs in *Cohen*, where a specific job and benefit was alleged to have been taken away because of the defendant's conduct, Czarnik has failed to allege any concrete facts that show an ***actual*** job loss. There is no allegation that a specific employer existed who would have offered a specific job to Czarnik but for the fact that he was not named as a co-inventor on the particular patents at issue in this case. Czarnik's allegation is pure conjecture and speculation, and wholly different than the situation in *Cohen*.

With no case law to actually support his position, Czarnik spends the majority of his argument "distinguishing" Illumina's many cases because they did not involve "loss of actual benefits" stemming from Illumina's decision not to name him as a co-inventor on patent applications. (Ans. Br. at 24.) But Czarnik's Amended Complaint suffers from the same defects. What "actual" job has he lost? What specific benefits? There is nothing in Czarnik's Amended Complaint to suggest his allegation is anything more than speculation that some imaginary company might hire him if he was named as an inventor on a handful of patents. Not only is Czarnik's job-prospect allegation ludicrous, but it is light years away from "an actual loss or diminishment of employment benefits" as courts have required for standing purposes.[3] As the

---

[3] Czarnik's attempt to read these cases as standing for the proposition that only risk of future harm is insufficient to create standing is neither correct nor helpful to his position. First, Czarnik has not alleged any specific facts

6

court stated in *American Federation of Gov't. Employees v. Clinton*, 180 F.3d 727, 731 (6th Cir. 1999), which involved the *same* "job loss" harm that Czarnik is alleging here: "We find the asserted injuries *too speculative*, and *insufficiently concrete* and particularized, to establish Article III standing…Numerous acts and facts may injure employment 'prospects' in some unknowable and speculative fashion, but *something more is needed to establish standing to sue*." (Emphasis added).

Czarnik similarly fails to distinguish the case law when he argues that the cases involved plaintiffs whose alleged harm could not be remedied by the court -- indeed, this is Czarnik's situation as well. Even if Czarnik prevailed on his claims, the best he could hope for is to have his name added as a co-inventor on these patents. Thus, Czarnik's "harm" – the loss of an unknown job offer paying $1 million a year – is not likely to be redressed by a decision in his favor. Indeed, the lone case cited by Czarnik to support his standing argument made very clear that it was "distinguishable from those holding that redressability is not satisfied if relief depends on the voluntary actions of a third party not joined in the suit." *Cohen*, 171 F.3d at 467, fn. 7. Redress of Czarnik's alleged harm would require the voluntary actions of not only a third party, but an unidentified third party.

Finally, no matter how many times Czarnik may state that this alleged "harm" occurred as a "direct and foreseeable result" of Illumina's alleged conduct, this cannot substitute for the required causal connection between the loss of this unknown job offer and Illumina's actions necessary to create standing in federal court. Czarnik does not allege any facts that show that the

---

regarding past job offers that he would have received had he been named as a co-inventor on these patents. Second, none of these cases are limited to future harms, but rather to harms that rest on speculation, conjecture, hypotheticals, and inference – precisely the problem with Czarnik's allegation. *See, e.g., Simon v. E. Ky. Welfare Rights Org., et al.*, 426 U.S. 26, 41-42 (1976) ("[U]nadorned speculation will not suffice to invoke the federal judicial power.").

failure to name Czarnik as a co-inventor on these specific patents caused an unidentified employer to decline to consider Czarnik for a job paying $1 million a year. There are obviously a countless number of reasons why an employer, assuming one existed who had been considering hiring Czarnik, would have declined to do so that are entirely unrelated to whether he was a named inventor on these patents or not. Czarnik's allegation is based purely on speculation and conjecture, and thus is insufficient to meet this required prong of the standing test. *See, e.g., Simon v. E. Ky. Welfare Rights Org., et al.*, 426 U.S. 26, 41-42 (1976) (second prong not satisfied because "[s]peculative inferences are necessary to connect [plaintiffs'] injury to the challenged action of petitioners…A federal court, properly cognizant [of] the Art. III limitation upon its jurisdiction, must require more than respondents have shown before proceeding to the merits."); *Linda R.S. v. Richard D. et al.*, 410 U.S. 614, 617-18 (1973) (affirming dismissal of complaint for lack of standing since connection between alleged injury and defendant's conduct "can, at best, be termed only speculative").

All of the case law, including the one case cited by Czarnik, dictates that Czarnik's job-prospects allegation falls well short of stating a cognizable injury-in-fact sufficient to confer standing for his claims. Indeed, Czarnik's allegations fail at every level of the three-part test for standing, and this Court should dismiss his claims on this basis.

**II.     Count II Should Be Dismissed With Respect To Illumina's Pending U.S. Patent Applications Because Jurisdiction Rests Solely With the PTO For Such Claims.**

Czarnik acknowledges the fact that 35 U.S.C. § 116 does not grant district courts jurisdiction to modify inventorship on pending patent applications. (Ans. Br. at 26-27.) Nevertheless, Czarnik argues that this Court should ignore the strictures of § 116 and allow Czarnik's claim because Czarnik is not asking this Court to directly correct inventorship of these pending applications, but rather is seeking some kind of "indirect" order requiring the Director of

8

the PTO to correct inventorship. This semantic end-run around the patent statutes seeks to create new legal doctrine and should be rejected.[4]

As an initial matter, Czarnik's semantic "indirect v. direct" argument actually is inconsistent with the language of the statute itself. Indeed, § 256, the statutory provision relating to correction of inventorship on issued patents, states that an "order" by the district court is the precise method by which correction is achieved. 35 U.S.C. § 256 ("The court … may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.") Thus, Czarnik is seeking the same relief under § 116 as he is under § 256—an order seeking to correct inventorship (of either an application or an issued patent, respectively). But, as is clear from § 116 itself, and as stated by the Federal Circuit, the only forum for claims to correct inventorship on pending patent applications is the PTO. *Eli Lilly and Co. v. Aradigm Corp.*, 935 F.3d 1352, 1356 n.1 (Fed. Cir. 2004) ("The text of Section 116… plainly does not create a cause of action in the district courts to modify inventorship on pending patent applications.").

Notwithstanding the unambiguous language of § 116, Czarnik further argues that the Court can ignore the statute because "[t]he PTO has taken no action on [Czarnik's] protests." (Ans. Br. at 27.) In essence, what Czarnik is arguing here is that a party should have the right to bring a federal claim any time he is dissatisfied with the speed with which the proper adjudicative body (be it an executive agency, a state court, etc.) is acting on his claim. This is not and has never been the law. Since Congress has provided federal court jurisdiction under § 256, but not § 116, Congress clearly did not intend for putative inventors to circumvent the

---

[4] In a footnote, Czarnik cites to the decision in *Kosower v. Gutowitz* as support for his argument, and then promptly acknowledges that this case has been heavily criticized on this very point. (Ans. Br. 27 n.7.). This case was also decided before the Federal Circuit's opinion in *Eli Lilly*.

9

PTO's exclusive jurisdiction over the administration of pending patent claims. *See E.I. Dupont de Nemours & Co. v. Okuley*, 344 F.3d 578, 584 (6th Cir. 2003) (finding "district court lacked jurisdiction to review the inventorship of an unissued patent" based on differences between the two statutory sections); *Sagoma Plastics, Inc. v. Gelardi*, 366 F. Supp.2d 185, 188 (D. Me. 2005) ("Congress' clear delegation of power to the courts in § 256 to correct issued patents and its failure to make any such express delegation in § 116 indicates a conscious choice to bar the courts from correcting errors regarding inventorship until after the patent has issued.")

Czarnik's policy-based arguments as to why this Court should create new legal doctrine and find standing despite contrary authority should be rejected. The jurisdictional limitation of § 116 does not leave a putative inventor without a method to redress an inventorship claim regarding pending U.S. patent applications.[5] Should a disputed application actually issue as a patent, a putative inventor with standing can seek redress in the federal court under § 256. The bar to federal court jurisdiction has been set up to avoid cluttering the courts with (1) disputes over pending patent applications that may never mature into patents, and (2) disputes brought by entities that have no ownership or financial interest in the patent. The first rule makes sense because, until a patent issues, there is no way to determine whether a putative inventor actually contributed to the *claimed* invention. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) ("[T]he critical question ... is who conceived ... the subject matter of the *claims* at issue"). The second rule makes sense because it would be unwise to allow federal courts to be cluttered with advisory lawsuits from allegedly-spurned inventors that would do

---

[5] Czarnik further attempts to misdirect the analysis in its discussion of *Chou*, which has no bearing on Illumina's motion with respect to Count II. Notably, Illumina did not move to dismiss Czarnik's inventorship claim regarding Illumina's foreign patent applications on the basis of § 116. That part of Count II, like the rest of the complaint, should be dismissed for lack of standing as discussed above. *Chou* does not discuss the issue with respect to pending U.S. patent applications under § 116. Czarnik's citation to the decision in *MediGene Ag v. Loyola Univ. of Chicago* is similarly off-target. That case also involved the question of foreign patent applications. No. 98 C 2026, 2001 WL 1636916, at *1 (N.D. Ill. Dec. 19, 2001).

nothing to change the ownership or financial interests of the parties. The statutes and case law have evolved the way they have for good reason, and this Court should follow the precedent and dismiss Czarnik's claims.

### III. Czarnik Cannot Create Jurisdiction For His Inequitable Conduct Claims By Asserting "Supplemental Jurisdiction" Based On His Other Claims.

In an attempt to salvage his inequitable conduct claim in Count III, Czarnik wrongly contends that the doctrine of "supplemental jurisdiction" can be invoked because this claim shares a common nucleus of operative facts with his correction of inventorship claims. This is misguided for at least two reasons. *First*, Czarnik lacks standing to bring his other claims as discussed herein, and thus there is no hook upon which to base supplemental jurisdiction. *Second*, even if Czarnik's other claims might survive, the concept of supplemental jurisdiction is only available to create federal jurisdiction for an otherwise cognizable state or common law claim, and does not allow a court to ignore the predicate requirements for bringing a declaratory judgment claim for inequitable conduct. The question here is whether Czarnik has met the two pre-requisites necessary for declaratory judgment jurisdiction. The doctrine of supplemental jurisdiction is not a substitute for these requirements, and thus is irrelevant to the issue before this Court.[6]

Czarnik cites a handful of cases relating to supplemental jurisdiction, but none of these are even close to the situation here where Czarnik seeks to excuse non-compliance with standing requirements for a federal claim. *See Matsuda v. Wada*, 128 F. Supp.2d 659 (D. Haw. 2000) (exercising supplemental jurisdiction over state law claims that were otherwise properly pled);

---

[6] Supplemental jurisdiction is almost always invoked over state-law claims that are asserted in the same case as a sufficiently related claim that invokes federal subject matter jurisdiction. 13B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 3567.3 (2d ed. Supp. 2005). But that is not what Czarnik is attempting to do here. Rather, Czarnik is attempting to bootstrap a federal patent claim to a state claim that itself is only proper in this Court under § 1367.

*Geer v. Cox*, 216 F.R.D. 677 (D. Kan. 2003) (exercising supplemental jurisdiction over properly-pled shareholder's suit that individually failed to meet requirements for diversity jurisdiction). Czarnik's citation and description of *Frank's Casing Crew & Rental Tools, Inc. v. PMR Tech. Ltd.*, 292 F.3d 1363 (Fed. Cir. 2002), is especially misleading, as this case actually makes Illumina's point. In *Frank's Casing Crew & Rental Tools*, the patents in question had been asserted in a patent infringement action, and incorrect inventorship (and associated inequitable conduct) was a defense to the patent infringement claims. *Id.* at 1369-70. In Czarnik's Amended Complaint, there is no allegation of even any apprehension of a patent infringement lawsuit being asserted by Illumina, let alone an actual lawsuit. This difference is the dispositive inquiry—without at least apprehension of a patent infringement lawsuit, the law does not permit a party to attack the enforceability of a patent just because they want to.

Section 1367 only grants supplemental jurisdiction over other claims within "***the same case or controversy.***" 28 U.S.C. § 1367(a); *Jinks v. Richland County, S.C.*, 538 U.S. 456, 459, 123 S.Ct. 1667, 1669 (2003) (supplemental claims must "form part of the same case or controversy under Article III of the United States Constitution"). Thus, for jurisdiction to be proper, an actual controversy must exist with respect to both the claim over which subject matter jurisdiction of a federal count is proper as well as the one for which supplemental jurisdiction is sought. This requirement is in keeping with Article III, which, in all federal cases, requires an actual case or controversy as an absolute predicate for jurisdiction.

Here, as explained in Illumina's opening brief, there is no justiciable case or controversy. Neither Illumina, nor Czarnik, has engaged in the type of behavior required to satisfy the two-part test that is used to determine whether a case or controversy exists in a declaratory judgment action involving a claim of patent unenforceability. Further, Czarnik did not even attempt to

articulate any other ground upon which the Court could "determine whether the need for judicial attention is real and immediate," rather than "prospective and uncertain of occurrence." *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995). Because there is no existing case or controversy regarding Czarnik's unripe inequitable conduct claim, there is no jurisdiction for this claim in this or any court, and it therefore must be dismissed.

### IV.    Czarnik's Failure To State A Legally-Cognizable Injury-In-Fact Mandates Dismissal Of The Fraud Claim (Count IV).

Although Czarnik's Answering Brief does attempt to clarify the nature of his fraud claim to some extent, all it does is make clear why it must be dismissed. Czarnik clarifies that his claim is one for fraudulent concealment, which thus means that Czarnik must allege an injury-in-fact traceable to the alleged concealment in order for his claim to survive. Since Czarnik does not do so, Count IV must be dismissed.

In desperation to save his fraud claim, Czarnik first cites to the *Kucharczyk* decision as authority for the proposition that a party may have standing to assert fraud even though it lacks standing to seek correction of inventorship. (Ans. Br. at 33). This may be true in principle, but the principle is inapplicable to this case. In *Kucharczyk*, the plaintiffs' fraud claim survived "because, by fraudulently causing Dr. Rocklage's name to be included on the patent, Nycomed caused the plaintiffs to be deprived of substantial royalties that they otherwise would have received." *Kucharczyk v. Regents of University of California*, 48 F. Supp.2d 964, 975 (N.D. Cal. 1999). Czarnik makes no such allegation here—there is simply no factual basis to support an allegation that Czarnik would have received any financial benefit from being named on the patents he seeks to have corrected. Thus, Czarnik's fraud claim cannot be saved based on the rationale of *Kucharczyk*.

Czarnik similarly misses the point when he argues that he "is not required to spell out an exact price tag on the harm he has suffered at this early stage of the case." (Ans. Br. at 34). Again, however, it is Czarnik's failure to allege *any* cognizable injury traceable to the alleged fraud that dooms his claim. Czarnik makes no allegation as to how the alleged concealment caused him any specific damage. At most, Czarnik alleges an amorphous reputational injury and the purely speculative and conjectural "job loss" injury. Both are insufficient because (1) reputational injury alone is not enough to create standing; (2) the "job loss" injury is too speculative and abstract to create standing; and (3) this injury is not traceable to the concealment, because it would have occurred even if Czarnik had been told on a daily basis that he was not named as an inventor on the patents and applications at issue. Thus, there is no injury-in-fact that can be traced to the alleged fraud, and therefore Czarnik's fraud claim must be dismissed.

## V.  Conclusion

For the foregoing reasons and those set forth in the Memorandum in Support of its motion to dismiss Plaintiff Czarnik's Amended Complaint, Illumina respectfully submits that its motion to dismiss should be granted.

Dated: November 3, 2005

　　　　*/s/ Richard K. Herrmann*
Richard K. Herrmann #405
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19801
(302) 888-6800
rherrmann@morrisjames.com

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

***Counsel for Illumina, Inc.***

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of November, 2005, I electronically filed the foregoing document, **REPLY MEMORANDUM IN SUPPORT OF ILLUMINA'S MOTION TO DISMISS CZARNIK'S AMENDED COMPLAINT**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Martin S. Lessner, Esq.
Adam W. Poff, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Additionally, I hereby certify that on the 3rd day of November, 2005, the foregoing document was served via email on the following non-registered participants:

Martin M. Zoltick, Esq.
Lisa N. Phillips
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, DC  20005
mzoltick@rfem.com
lphillips@rfem.com

                                      */s/ Richard K. Herrmann*
                                      Richard K. Herrmann #405
                                      Mary B. Matterer #2696
                                      MORRIS JAMES HITCHENS &
                                      WILLIAMS LLP
                                      222 Delaware Avenue, 10th Floor
                                      Wilmington, DE  19801
                                      (302) 888-6800
                                      mmatterer@morrisjames.com

                                      ***Counsel for Illumina, Inc.***