110.    Beginning in May 1999, just after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his medical condition, Defendant Illumina, Stuelpnagel and Chee filed a series of patent applications both in the U.S. and abroad disclosing and claiming Dr. Czarnik's IBL/DBL Invention and Embedded/Encapsulated Nanocrystal Invention, and omitting Dr. Czarnik as a named co-inventor.

**RESPONSE:**  Illumina admits that patent applications were filed in the U.S. and abroad

beginning in May 1999.  Illumina denies each and every remaining allegation in Paragraph 110.

111.    On information and belief, Defendant Illumina, Stuelpnagel and Chee naming Stuelpnagel and/or Chee as co-inventors and omitting Dr. Czarnik, after Dr. Czarnik's disclosure to them of his medical condition, was a deliberate act intended to deceive the PTO, foreign patent offices, current and prospective shareholders and investors, and the consuming public that Stuelpnagel and/or Chee, not Dr. Czarnik, are joint inventors of the IBL/DBL Invention and Embedded Encapsulated Nanocrystal Invention jointly developed by Dr. Czarnik.

**RESPONSE:**  Denied.

112.    The error in not naming Dr. Czarnik as a joint inventor on the identified issued U.S. patents for which correction of inventorship is sought arose without any deceptive intention on the part of Dr. Czarnik.

**RESPONSE:**  Denied that there was any error and denied that Czarnik is a joint inventor on the

"identified issued U.S. patents for which correction of inventorship is sought."  Illumina lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations contained in Paragraph 112 of the Amended Complaint, and therefore, denies each

and every remaining allegation in Paragraph 112.

113.    On information and belief, all parties concerned with the inventorship of the issued patents identified herein and for which correction of inventorship is sought are on notice, and Defendant Illumina, as the assignee of the identified issued patents, holds the power to request that the inventorship on these patents be corrected pursuant to 35 U.S.C. § 256.

**RESPONSE:**  Illumina admits that it has the authority to request a correction of inventorship on

the patents it owns pursuant to 35 U.S.C. § 256, but denies that such correction is warranted.

114.    Dr. Czarnik is a joint inventor of the identified issued U.S. patents for which correction of inventorship is sought and, pursuant to 35 U.S.C. § 256, inventorship should be corrected by adding Dr. Czarnik as a joint inventor.

**RESPONSE:**  Denied.

32

115.    As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has suffered damage to his reputation and standing within the scientific community, has not received the reputational benefits associated with being named as an inventor, and has suffered a loss of prestige within the scientific community resulting from his inventions being recognized as another's.

**RESPONSE:** Denied.

116.    As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has not been able to "join another start-up and get another few hundred thousand shares of stock" which, as set forth above, amounted to an annual compensation of approximately $1 million.

**RESPONSE:** Denied.

## COUNT II

### DECLARATORY JUDGMENT OF INVENTORSHIP
### (PENDING U.S. AND FOREIGN PATENT APPLICATIONS)

117.    Dr. Czarnik incorporates by reference paragraphs 1-116 as if fully set forth herein.

**RESPONSE:**  Illumina incorporates its previous responses to each of Paragraphs 1-116 as if fully set forth herein.  Illumina further notes that Count II has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

118.    Based on the foregoing allegations, an actual controversy exists in this jurisdiction concerning the inventorship of the identified pending U.S. and foreign patent applications for which correction of inventorship is sought.  All of these pending U.S. and foreign patent applications are related to the identified issued U.S. patents for which correction of inventorship is sought pursuant to 35 U.S.C. § 256.

**RESPONSE:** Denied.  Illumina further notes that Count II has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

119.    The error in not naming Dr. Czarnik as a joint inventor on the identified pending U.S. and foreign patent applications for which correction of inventorship is sought arose without any deceptive intention on the part of Dr. Czarnik.

**RESPONSE:**  Illumina denies that there was any error and denies that Czarnik is a joint inventor on the "identified pending U.S. and foreign patent applications for which correction of inventorship is sought." Illumina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 119 of the Amended Complaint, and therefore, denies each and every remaining allegation in Paragraph 119.

120.    On information and belief, all parties concerned with the inventorship of the pending U.S. and foreign patent applications identified herein and for which correction of inventorship is sought are on notice, and Defendant Illumina, as the assignee of the identified pending U.S. and foreign patent applications, holds the power to request that the inventorship on these pending application be corrected pursuant to 35 U.S.C. § 116 and corresponding foreign laws.

**RESPONSE:**  Illumina admits that it holds the power to request inventorship on pending patent applications, but denies that such correction is warranted.  Illumina further notes that Count II has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

121.    Dr. Czarnik is a joint inventor of the identified pending U.S. and foreign pending applications for which correction of inventorship is sought and, pursuant to 35 U.S.C. § 116 and corresponding foreign laws, inventorship should be corrected by adding Dr. Czarnik as a joint inventor.

**RESPONSE:**  Denied.  Illumina further notes that Count II has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

122.    As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has suffered damage to his reputation and standing within the scientific community, has not received the reputational benefits associated with being named as an inventor, and has suffered a loss of prestige within the scientific community resulting from his inventions being recognized as another's.

**RESPONSE:**  Denied.  Illumina further notes that Count II has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

123.    As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has not been able to "join another start-up and get another few hundred thousand shares of stock" which, as set forth above, amounted to an annual compensation of approximately $1 million.

**RESPONSE:**  Denied.  Illumina further notes that Count II has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

## COUNT III

### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE U.S. PATENTS AND PENDING APPLICATIONS

124.    Dr. Czarnik incorporates by reference paragraphs 1-123 as if fully set forth herein.

**RESPONSE:**  Illumina incorporates its previous responses to each of Paragraphs 1-123 as if fully set forth herein.  Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

125.    The identified U.S. patents and pending patent applications for which correction of inventorship is sought ("Illumina patents and applications") are each unenforceable due to inequitable conduct in the PTO committed by Defendant Illumina, Stuelpnagel, Chee, and/or other individuals associated with the filing and prosecution of the Illumina patents and applications ("Illumina patent applicants").

**RESPONSE:** Denied. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

126.    Patent applicants are required to prosecute patent applications in the PTO with candor, good faith, and honesty. *See Semiconductor Energy Lab. Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 204 F.3d 1368, 1373 (Fed. Cir. 2000); and *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 818 (U.S. 1945). Each individual associated with the filing or prosecution of a patent application (which includes each inventor named in the application, each attorney or agent who prepares or prosecutes the application, and every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the assignee or with anyone to whom there is an obligation to assign the application) has a duty of candor and good faith in dealing with the PTO, which includes a duty to disclose to the PTO all information known to that individual to be material to the patentability of the claimed invention(s). *See* 37 C.F.R. § 156. This rule imposed on each of the Illumina patent applicants a specific duty of candor and good faith in dealing with the USPTO. Their breach of that duty constituted inequitable conduct. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995).

**RESPONSE:** The allegations in this Paragraph purport to state principles of law to which no response is required. Illumina denies the allegation in the last textual sentence of this Paragraph and any and all other allegations of fact in this Paragraph. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

36

127. Inequitable conduct consists of an affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive. The Illumina patent applicants engaged in inequitable conduct in procuring the Illumina patents and applications, violating the duty of candor and good faith in dealing with the PTO, by making material misrepresentations to the PTO, submitting false material information to the PTO, and withholding material information known to them regarding inventorship. The Illumina patent applicants' misrepresentations and omissions were made with an intent to deceive the PTO.

**RESPONSE:** The allegations in the first sentence of this Paragraph purport to state a principle

of law to which no response is required. Illumina denies each and every allegation of fact in this

Paragraph. Illumina further notes that Count III has been dismissed from this action, but

responds to the allegations contained herein to the extent they are incorporated by reference and

relevant to the remaining counts.

128. Beginning in April 1999, just after Dr. Czarnik disclosed his medical condition to Defendant Illumina and its senior management, including Stuelpnagel and Chee, Dr. Czarnik was no longer included in important decision-making about fundraising, financing, company presentations, strategic planning, hiring and whether to take the company public.

**RESPONSE:** Denied. Illumina further notes that Count III has been dismissed from this action,

but responds to the allegations contained herein to the extent they are incorporated by reference

and relevant to the remaining counts.

129. On information and belief, after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his medical condition in April 1999, they engaged in a pattern of intentional conduct intended to exclude and ultimately remove Dr. Czarnik from any participation in the Defendant Illumina's activities and from any recognition as an inventor of the microarray technology.

**RESPONSE:** Denied. Illumina further notes that Count III has been dismissed from this action,

but responds to the allegations contained herein to the extent they are incorporated by reference

and relevant to the remaining counts.

130. On May 20, 1999, approximately one month after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his medical condition, they filed the '584 application, which issued as the '732 patent on April 8, 2003. The '584 application, like the '543 application and the U.S. and foreign patent applications based on, and claiming priority

37

directly or indirectly from, the '543 application discussed above in § C, discloses and claims Dr. Czarnik's IBL/DBL Invention.

**RESPONSE:** Illumina admits that the '584 application was filed, and that it issued as the '732 patent on April 8, 2003. Illumina denies each and every remaining allegation in Paragraph 130. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

131.    Unlike the '543 application and the U.S. and foreign patent applications based on, and claiming priority directly or indirectly from, the '543 application discussed above in § C, the Illumina patent applicants did not name Dr. Czarnik as one of the inventors on the '584 application, the '732 patent, or on the U.S. and foreign patent applications based on, and claiming priority directly or indirectly from the '584 application. Each of these patents and applications discloses and claims Dr. Czarnik's IBL/DBL Invention, but does not name Dr. Czarnik as one of the inventors. The Illumina patent applicants named Chee, along with two Illumina scientists that were not involved in the development of the IBL/DBL Invention.

**RESPONSE:** Illumina admits that the '584 application and '732 patent name Chee along with two Illumina scientists as co-inventors, and do not name Czarnik as one of the inventors. Illumina denies each and every remaining allegation in Paragraph 131. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

132.    On information and belief naming Chee as a joint inventor and omitting Dr. Czarnik on the '584 application/'732 patent, filed approximately one month after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his medical condition, and on the other U.S. and foreign patent applications based on, and claiming priority directly or indirectly from, the '584 application, was a deliberate act by the Illumina patent applicants intended to deceive the PTO, foreign patent offices, current and prospective shareholders and investors, and the consuming public that Chee, not Dr. Czarnik, is a joint inventor with Chanfeng Zhao and Steven M. Barnard of the IBL/DBL Invention jointly developed by Dr. Czarnik.

**RESPONSE:** Denied. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

133.    On December 28, 1998, approximately nine months after Dr. Czarnik's disclosure to Defendants of his medical condition, Defendant Illumina, Stuelpnagel and Chee filed the '968 application.    The Illumina patent applicants named Stuelpnagel and Chee, and an Illumina scientist named Steven R. Auger, as co-inventors of the invention described in the '968 application.    The '968 application includes disclosure of Dr. Czarnik's IBL/DBL Invention, but does not name Dr. Czarnik as one of the inventors.

**RESPONSE:**  Illumina admits that the '968 application was filed and that Stuelpnagel, Chee and Auger but not Czarnik are named as co-inventors.    Illumina denies each and every other allegation in Paragraph 133.    Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

134.    On February 24, 1999, Defendant Illumina, Stuelpnagel and Chee filed the '943 application, which claimed priority from the previously filed '968 application and identified Stuelpnagel and Chee, and Steven R. Auger as co-inventors.  The '943 application, which issued as the '027 patent on August 6, 2002, and the U.S. and foreign patent applications based on, and claiming priority directly or indirectly from, the '943 application, discloses and claims Dr. Czarnik's IBL/DBL invention.

**RESPONSE:**  Illumina admits that the '968 application, which claimed priority to the '943 application, was filed on February 24, 1999, and that Stuelpnagel, Chee and Auger were named as co-inventors.    Illumina denies each and every remaining allegation in Paragraph 134. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

135.    Dr. Czarnik is not named as one of the inventors on the '943 application, on the '027 patent, or on the U.S. and foreign patent applications based on, and claims priority directly or indirectly from, the '943 application.  The Illumina patent applicants named Stuelpnagel and Chee, along with an Illumina scientist that was not involved in the development of the IBL/DBL Invention.

**RESPONSE:**  Illumina admits that Czarnik is not named as an inventor on the '943 application which issued as the '027 patent, or any other U.S. or foreign patent applications claiming priority to the '943 patent.    Illumina admits that Stuelpnagel, Chee, and another Illumina scientist were

named on these patent applications. Illumina denies each and every remaining allegation contained in Paragraph 135. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

136.    On December 28, 1999, Defendant Illumina, Stuelpnagel and Chee filed the '904 application, which claimed priority from the previously filed '943 application and '968 application, and identified Stuelpnagel and Chee, and Steven R. Auger as co-inventors. The '904 application, which issued as the '394 patent on February 22, 2005, discloses and claims Dr. Czarnik's IBL/DBL invention.

**RESPONSE:** Illumina admits that the '904 application, which claimed priority to the '943 and '968 applications, was filed on December 28, 1999, and that Stuelpnagel, Chee and Auger were named as co-inventors. Illumina denies each and every remaining allegation in Paragraph 136. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

137.    Dr. Czarnik is not named as one of the inventors on the '904 application or on the '394 patent. The Illumina patent applicants named Stuelpnagel and Chee, along with an Illumina scientist that was not involved in the development of the IBL/DBL Invention.

**RESPONSE:** Illumina admits that Czarnik is not named as an inventor on the '904 application which issued as the '394 patent. Illumina admits that Stuelpnagel, Chee, and another Illumina scientist were named on this patent and application. Illumina denies each and every remaining allegation contained in Paragraph 137. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

138.    On information and belief, the Illumina patent applications naming Stuelpnagel and Chee as joint inventors and omitting Dr. Czarnik on the '943 application/'027 patent, '904 application/'394 patent, filed after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his medical condition, and on the additional U.S. and foreign patent applications based on, and claiming priority directly or indirectly from, the '943 application, was

a deliberate act intended to deceive the PTO, foreign patent offices, current and prospective shareholders and investors, and the consuming public that Stuelpnagel and Chee, not Dr. Czarnik, are joint inventors of the IBL/DBL Invention jointly developed by Dr. Czarnik.

**RESPONSE:** Denied. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

139.    The foregoing pattern of systematically omitting Dr. Czarnik, after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his medical condition in April 1999, as a named co-inventor on U.S. and foreign issued patents and pending applications disclosing and claiming the IBL/DBL Invention was part of a deliberate scheme by the Illumina patent applicants intended to exclude and ultimately remove Dr. Czarnik from any participation in the Defendant Illumina's activities and from any recognition as an inventor of the microarray technology.

**RESPONSE:** Denied. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

140.    As discussed above, on May 20, 1999, Defendant Illumina, Stuelpnagel and Chee filed the '584 application, which issued as the '732 patent. In addition to disclosing and claiming Dr. Czarnik's IBL/DBL Invention, the '584 application/'732 patent disclosed and claimed Dr. Czarnik's Embedded/Encapsulated Nanocrystal Invention.

**RESPONSE:** Illumina admits that the '584 application was filed on May 20, 1999, which issued as the '732 patent. Illumina denies each and every remaining allegation in Paragraph 140. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

141.    As described above in connection with the Illumina patent applicants omitting Dr. Czarnik as a named inventor on the basis of the IBL/DBL Invention, after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his medical condition in April 1999, they engaged in a pattern of conduct intended to exclude and ultimately remove Dr. Czarnik from any participation in the Defendant Illumina's activities and from any recognition as an inventor of Defendants' microarray technology.

**RESPONSE:** Denied. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

142.    On information and belief, the Illumina patent applicants naming Chee as a joint inventor and omitting Dr. Czarnik on the '584 application, filed approximately one month after Dr. Czarnik's disclosure to Defendants of his medical condition, was a deliberate act intended to deceive the PTO, foreign patent office, current and prospective shareholders and investors, and the consuming public that Chee, not Dr. Czarnik, is a joint inventor with Chanfeng Zhao and Steven M. Barnard of the Embedded/Encapsulated Nanocrystal Invention jointly developed by Dr. Czarnik.

**RESPONSE:** Denied. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

143.    In addition to the '584 application, which issued as the '732 patent, Defendant Illumina, Stuelpnagel and Chee filed the '416 application on December 31, 2002, which issued as the '764 patent. The '416 application also discloses and claims the use of the Embedded Encapsulated Nanocrystal Invention jointly developed by Dr. Czarnik.

**RESPONSE:** Illumina admits that the '416 application was filed on December 31, 2002, which issued as the '764 patent. Illumina denies each and every remaining allegation in Paragraph 143. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

144.    As with the '584 application/'732 patent, which the '416 application claims priority from, the Illumina patent applicants named Chee as an inventor along with Chanfeng Zhao and Steven Barnard. Zhao and Barnard were the individuals named with Dr. Czarnik on the April 1999 Invention Disclosure document, written one month before the priority date for the '416 application, which issued as the '764 patent. Chee was not identified as a contributor to the

invention in the April 1999 document, but the Illumina patent applicants identified Chee, and not Dr. Czarnik, as an inventor of the '416 application.

**RESPONSE:**  Illumina admits that the '416 application claims priority from applications that named Chee, Zhao, and Barnard as inventors.  Illumina also admits that Zhao, Barnard and Czarnik but not Chee were named as contributors to an April 1999 invention disclosure document.  Illumina denies each and every remaining allegation in Paragraph 144.  Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

145.    On information and belief, the Illumina patent applicants naming Chee as a joint inventor and omitting Dr. Czarnik on the '416 application, now issued as the '764 patent, based on technology disclosed within the April 1999 Invention Disclosure document, was a deliberate act intended to deceive the PTO, foreign patent offices, current and prospective shareholders and investors, and the consuming public that Chee, not Dr. Czarnik, is a joint inventor with Chanfeng Zhao and Steven M. Barnard of the Embedded/Encapsulated Nanocrystal Invention jointly developed by Dr. Czarnik.

**RESPONSE:**  Denied.  Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

146.    The foregoing pattern of systematically omitting Dr. Czarnik, after Dr. Czarnik's disclosure to Defendant Illumina, Stuelpnagel and Chee of his medical condition in April 1999, the very same month in which he jointly developed the Embedded/Encapsulated Nanocrystal Invention, as a named co-inventor on U.S. and foreign issued patents and pending applications disclosing and claiming the Embedded/Encapsulated Nanocrystal Invention was part of a deliberate scheme by the Illumina patent applicants intended to exclude and ultimately remove Dr. Czarnik from any participation in the Defendant Illumina's activities and from any recognition as an inventor of the microarray technology.

**RESPONSE:**  Denied.  Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

43

147.    Inventorship is "material," and information about inventorship or relating to the proper determination of inventorship is material to patentability. *See, e.g*, 35 U.S.C. § 102(f) ("A person shall be entitled to a patent unless . . . he himself did not invent the subject matter sought to be patented."); 35 U.S.C. § 116 ("When an invention is made by two or more persons jointly, they shall apply for a patent jointly."); and *Perspective Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000) (inequitable conduct for intentional omission of information relevant to inventorship). Indeed, patent examiners are required to reject applications under 35 U.S.C. § 102(f) on the basis of improper inventorship. *See* Manual of Patent Examining Procedure (MPEP"), § 2137.01.[1] The MPEP specifically notes that information about inventorship is material under 37 C.F.R. § 156. See MPEP, § 2001.06(c) (inventorship disputes are material information), and MPEP, § 2004 (suggesting that applicants carefully consider inventorship in the duty to disclose context).

**RESPONSE:** The allegations in this Paragraph purport to state principles of law to which no response is required. Illumina denies the allegation in the last textual sentence of this Paragraph and any and all other allegations of fact in this Paragraph. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

148.    The Illumina patent applicants engaged in inequitable conduct in procuring the Illumina patents and applications, violating the duty of candor and good faith in dealing with the PTO, by making material misrepresentations to the PTO, submitting false material information to the PTO, and withholding material information known to them regarding inventorship. The Illumina patent applicants' misrepresentations and omissions were made with an intent to deceive the PTO. Each of the Illumina patents and applications should, therefore, be declared unenforceable.

**RESPONSE:** Denied. Illumina further notes that Count III has been dismissed from this action, but responds to the allegations contained herein to the extent they are incorporated by reference and relevant to the remaining counts.

149.    As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has suffered

---

[1]    The MPEP is published to provide patent examiners, applicants, attorneys: agents, and representatives of applicants with a reference work on the practices and procedures relative to the prosecution of patent applications before the PTO. It contains instructions to examiners, as well as other material in the nature of information and interpretation, and outlines the current procedures which the examiners are required or authorized to follow in appropriate cases in the normal examination of a patent application. See MPEP, Foreward.

damage to his reputation and standing within the scientific community, has not received the reputational benefits associated with being named as an inventor, and has suffered a loss of prestige within the scientific community resulting from his inventions being recognized as another's.

**RESPONSE:** Denied. Illumina further notes that Count III has been dismissed from this action,

but responds to the allegations contained herein to the extent they are incorporated by reference

and relevant to the remaining counts.

150.    As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has not been able to "join another start-up and get another few hundred thousand shares of stock" which, as set forth above, amounted to an annual compensation of approximately $1 million.

**RESPONSE:** Denied. Illumina further notes that Count III has been dismissed from this action,

but responds to the allegations contained herein to the extent they are incorporated by reference

and relevant to the remaining counts.

## COUNT IV

### FRAUD COMMITTED BY DEFENDANT ILLUMINA

151.    Dr. Czarnik incorporates by reference paragraphs 1 - 150 as if fully set forth herein.

**RESPONSE:** Illumina incorporates its previous responses to each of Paragraphs 1-150 as if

fully set forth herein.

152.    Defendant Illumina, along with Stuelpnagel and Chee, conspired, agreed and engaged in a concerted action to obtain patents on the jointly developed microarray technology without informing Dr. Czarnik, without identifying Dr. Czarnik as a co-inventor and crediting him for his contributions, and on the basis that the claimed technology was created by Stuelpnagel and/or Chee which, at all relevant times hereto, Defendant Illumina knew was false.

**RESPONSE:** Denied.

153.    Defendant Illumina has an economic stake in the enforceability of the identified patents and patent applications, and has derived, and is still deriving, reputational and financial benefits from fraudulently misrepresenting to the PTO, foreign patent offices, current and prospective shareholders and investors, and the consuming public that Stuelpnagel and Chee were the sole inventors of the microarray technology developed jointly with Dr. Czarnik.

**RESPONSE:** Denied.

154.    Defendants Illumina knew that these representations were false when they were made, or made such representations with reckless disregard as to their truth or falsity.

**RESPONSE:** Denied.

155.    Moreover, on August 11, 2001, almost one year after Dr. Czarnik was terminated from Illumina, Robin Silva sent Dr. Czarnik a letter advising him that Illumina had "recently filed a continuation-in-part case, which included some additional material added after [Dr. Czarnik] left Illumina." Ms. Silva indicated to Dr. Czarnik in the letter that "[w]e believe you are a co-inventor on this new application" and requested that Dr. Czarnik execute a Nondisclosure Agreement ("NDA") so that the application and formal documents could be provided to Dr. Czarnik.

**RESPONSE:** Illumina lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations contained in Paragraph 155 of the Amended Complaint, and

therefore, denies each and every allegation in Paragraph 155.

156.    Dr. Czarnik promptly signed the NDA, as Illumina requested, and per Ms. Silva's instructions, reviewed, executed and returned the formal papers to Ms. Silva for filing with the PTO.

**RESPONSE:** Illumina lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations contained in Paragraph 156 of the Amended Complaint, and

therefore, denies each and every allegation in Paragraph 156.

157.    Dr. Czarnik justifiably believed, based on the deliberate actions of Defendant Illumina and Ms. Silva, that he was receiving the proper credit and recognition as the inventor of the claimed IBL/DBL Invention, and that his interests as a co-inventor for those inventions he made while at Illumina were being protected.

**RESPONSE:** Denied.

158.    Just over a year later, in October 2002, Dr. Czarnik received another letter requesting that Dr. Czarnik, as a joint inventor of the claimed invention, execute a Declaration and Power of Attorney for the patent application, indicating that he is "an original, first and joint

inventor of the subject matter that is claimed and for which a patent is sought," and an Assignment of the patent application, invention, and all rights therein to Defendant Illumina. The letter, which was sent by a colleague of Robin Silva, was carbon copied to her.

**RESPONSE:** Illumina lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations contained in Paragraph 158 of the Amended Complaint, and

therefore, denies each and every allegation in Paragraph 158.

159.    Just as with the prior letter he had received, Dr. Czarnik signed the papers, as requested and in accordance with the instructions, and returned them to Ms. Silva's office for filing with the PTO.

**RESPONSE:** Illumina lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations contained in Paragraph 159 of the Amended Complaint, and

therefore, denies each and every allegation in Paragraph 159.

160.    Dr. Czarnik's belief that he was receiving the proper credit and recognition as the inventor of the claimed IBL/DBL Invention, and that his interests as an inventor for those inventions he made while at Illumina were being protected, was further confirmed by these intentional actions of Defendant Illumina and Ms. Silva.

**RESPONSE:** Denied.

161.    In December 2004, Dr. Czarnik discovered that he had been seriously misled by Defendants. After being terminated, Dr. Czarnik was provided with little, if any, information on Illumina. As part of Dr. Czarnik's efforts to try and keep tabs on what was going on at Illumina after his termination, Dr. Czarnik routinely checked the Yahoo Message Boards. During a check of the Yahoo Message Board for Illumina in December 2004, Dr. Czarnik discovered a December 5, 2004 posting that included a link to the PTO's website, referring to the PTO's database for patents and Illumina. Dr. Czarnik clicked on the link and was surprised to learn that, in addition to patents issued and assigned to Illumina, several of Illumina's published patent applications were also listed.

**RESPONSE:** Illumina denies the allegations of the first sentence of Paragraph 161 of the

Amended Complaint. Illumina lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the remaining allegations contained in Paragraph 161 of the Amended

Complaint, and therefore, denies each and every allegation in Paragraph 161.

162.    Dr. Czarnik went through the list of identified Illumina issued patents and published patent applications, and reviewed each one. During this review in December 2004,

Dr. Czarnik learned for the first time, and to his surprise, that the Defendant Illumina had prepared, filed, and prosecuted to issuance, patents disclosing and claiming his IBL/DBL Invention and his Embedded/Encapsulated Nanocrystal Invention without informing him, without identifying him as a co-inventor, and without giving him the credit and recognition he was, and is, entitled to.

**RESPONSE:** Illumina admits that it did not identify Czarnik as an inventor on certain patents and published patent applications, denies that Czarnik is an inventor of inventions claimed in such patents and published patent applications, and denies that Czarnik is entitled to any credit or recognition as an inventor of such patents and published patent applications. Illumina lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 162 of the Amended Complaint, and therefore, denies each and every other allegation in Paragraph 162.

163.    Defendants [sic] Illumina concealed these filings with the PTO disclosing and claiming Dr. Czarnik's IBL/DBL Invention and Embedded Encapsulated Nanocrystal Invention from him, knowing that the inventorship on these filings was false, while, at the same time, sending letters and formal papers to Dr. Czarnik advising him that he was a joint inventor on the selected two filings Defendant Illumina decided to inform him about. Defendant Illumina's actions in sending these letters and formal papers to Dr. Czarnik on two of the patent applications they filed, and not the many others, were, on information and belief, intentionally designed to mislead Dr. Czarnik into believing that he was receiving the proper credit and recognition for those inventions he made at Illumina, and that his interests as a co-inventor were being protected. On information and belief, Defendant Illumina knew this was false and intentionally carried out these actions to induce Dr. Czarnik to refrain from taking action.

**RESPONSE:** Denied.

164.    Dr. Czarnik justifiably relied on Defendant Illumina's misleading actions and nondisclosure to his detriment. Stuelpnagel and Chee, and not Dr. Czarnik, were credited with creating the inventions jointly developed with by Dr. Czarnik. On information and belief, Defendant Illumina knew Dr. Czarnik was a co-inventor of the claimed inventions, and that Stuelpnagel and Chee were not entitled to be named as joint inventors without Dr. Czarnik.

**RESPONSE:** Denied.

165.    Dr. Czarnik relied on these representations by Defendant Illumina to his detriment including, inter alia damage to Dr. Czarnik's reputation and standing within the scientific community, eliminating the reputational benefits associated with being named as an inventor, a loss of prestige within the scientific community resulting from his inventions being recognized as another's, and substantially devaluing Illumina's patent portfolio by rendering unenforceable

those U.S. and foreign patents and applications claiming Dr. Czarnik's IBL/DBL Invention and Embedded/Encapsulated Nanocrystal Invention.  As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has suffered damage to his reputation and standing within the scientific community, has not received the reputational benefits associated with being named as an inventor, and has suffered a loss of prestige within the scientific community resulting from his inventions being recognized as another's.

**RESPONSE:** Denied.

166.    As a direct and foreseeable consequence of Defendant Illumina's actions, including Illumina not giving Dr. Czarnik the credit and recognition as a co-inventor that he was entitled to for his contributions to the patented microarray technology, Dr. Czarnik has not been able to "join another start-up and get another few hundred thousand shares of stock" which, as set forth above, amounted to an annual compensation of approximately $1 million.

**RESPONSE:** Denied.

167.    Dr. Czarnik was damaged as a result of his reliance on these representations by Defendant Illumina in an amount to be proven at trial.

**RESPONSE:** Denied.

## PRAYER FOR RELIEF

**RESPONSE:** Illumina denies that Czarnik is entitled to any of the relief sought.

## ILLUMINA'S AFFIRMATIVE DEFENSES

Illumina asserts the following affirmative defenses in response to the allegations in Plaintiff Czarnik's complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

## FIRST AFFIRMATIVE DEFENSE (RES JUDICATA / ESTOPPEL)

Illumina believes that, upon a reasonable opportunity for further investigation or discovery, it will be able to demonstrate that Plaintiff Czarnik's claims are barred by the doctrines of res judicata and estoppel.

## SECOND AFFIRMATIVE DEFENSE (FAILURE TO STATE A CLAIM)

Illumina believes that Plaintiff Czarnik's complaint fails to state a claim upon which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE (WAIVER / LACHES)

Illumina believes that, upon a reasonable opportunity for further investigation or discovery, it will be able to demonstrate that Plaintiff Czarnik's claims are barred by the doctrines of waiver and laches.

## FOURTH AFFIRMATIVE DEFENSE (FAILURE TO MITIGATE DAMAGES)

Illumina believes that, upon a reasonable opportunity for further investigation or discovery, it will be able to demonstrate that any damage claims sought by Plaintiff Czarnik are barred by a failure to mitigate damages.

Dated:  July 27, 2006

Richard K. Herrmann (#405)
Mary B. Matterer (#2696)
MORRIS, JAMES, HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888 6800
mmatterer@morrisjames.com

Mark A. Pals, P.C.
Marcus E. Sernel
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861 2000

*Attorneys for Illumina, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of July, 2006, I electronically filed the foregoing document, **ILLUMINA'S ANSWER TO PLAINTIFF ANTHONY W. CZARNIK'S AMENDED COMPLAINT FOR CORRECTION OF INVENTORSHIP, DECLARATORY JUDGMENT OF PATENT UNENFORCEABILITY AND FRAUD**, with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Martin S. Lessner, Esq.
Adam W. Poff, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Additionally, I hereby certify that on the 27th day of July, 2006, the foregoing document was served as indicated on the following:

**VIA EMAIL AND HAND DELIVERY**
Martin S. Lessner, Esq.
Adam W. Poff, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
mlessner@ycst.com
apoff@ycst.com

**VIA EMAIL AND FEDEX**
Martin M. Zoltick, Esq.
Lisa N. Phillips, Esq.
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W., Suite 800
Washington, DC 20005
202.783.6040
mzoltick@rfem.com
lphillips@rfem.com

Richard K. Herrmann #405
Mary B. Matterer #2696
MORRIS JAMES HITCHENS &
WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
(302) 888-6800
mmatterer@morrisjames.com

*Counsel for Illumina, Inc.*