**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DR. ANTHONY CZARNIK, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 05-400 (JJF) |
| | ) | |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| ILLUMINA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**CZARNIK'S MEMORANDUM OF LAW IN OPPOSITION TO
ILLUMINA'S MOTION TO DISQUALIFY MERCHANT & GOULD P.C.**

<br>

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff
Dr. Anthony Czarnik*

OF COUNSEL:

Anthony R. Zeuli
Rachel Zimmerman
MERCHANT & GOULD
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 371-5208

Anthony F. Pantoni
ANTHONY F. PANTONI, ESQUIRE
501 West Broadway, Suite 1370
San Diego, CA 92101
Tel: (619) 235-4400

Dated: October 26, 2007
Public Version Dated: November 2, 2007
829448 / 32040

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT .................................................................................................................... 2

   A.   ILLUMINA WAIVED ITS RIGHT TO OBJECT TO MERCHANT & GOULD'S
      REPRESENTATION OF CZARNIK. .......................................................................... 2

     1.   Illumina's Suspicious Delay. .................................................................... 3

     2.   The Purpose Of Illumina's Delay Was To Disrupt Discovery And
       Encourage Czarnik To Proceed With Arbitration. .......................................... 5

     3.   Czarnik Has Been Prejudiced By Illumina's Disruptive Motion
       And Will Be Further Prejudiced If Forced To Obtain New Counsel. ............ 6

   B.   MERCHANT & GOULD'S PRIOR INTERFERENCE REPRESENTATION OF
      ILLUMINA IS NOT SUBSTANTIALLY RELATED TO THE PRESENT
      INVENTORSHIP DISPUTE. ....................................................................................... 6

     1.   The Present Lawsuit Is An Inventorship Dispute Over Claims
       Relating to IBL/DBL Technology. ............................................................... 8

     2.   Merchant & Gould's Prior Representation of Illumina Was
       Limited To Provoking An Interference In An Unrelated Application. ........... 8

     3.   Merchant & Gould's Prior Representation of Illumina Was Limited
       In Scope And Duration. .............................................................................. 13

     4.   It Is Unlikely That Illumina Disclosed Confidences Which Could
       Be Relevant and Detrimental To Illumina. ................................................. 15

III.  CONCLUSION ............................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Broadcast Innovation, L.L.C. v. Charter Communs., Inc.,*
420 F.3d 1364 (Fed. Cir. 2005) ................................................................. 9

*Civco Med. Instruments v. Protek Med. Prods., Inc.,*
No. 4:03-cv-40722, 2004 U.S. Dist. LEXIS 10840 (S.D. Iowa June 4, 2004).......................... 9

*Conley v. Chaffinch,*
431 F. Supp. 2d 494 (D. Del. 2006)............................................................ 2, 7

*Elonex I.P. Holdings, LTD. v. Apple Computer, Inc.,*
142 F. Supp. 2d 579 (D. Del. 2001)................................................... passim

*McKesson Info. Solutions, Inc. v. Bridge Med., Inc.,*
487 F.3d 897 (Fed. Cir. 2007) ................................................................. 10

*Minnesota Mining & Manufacturing Co. v. Norton Co.,*
929 F.2d 670 (Fed. Cir. 1991) ................................................................... 7

*Panduit Corp. v. All States Plastic Mfg.,*
744 F.2d 1564 (Fed. Cir. 1984) ................................................................. 2

*Rohm & Haas Co. v. Am. Cyanamid Co.,*
187 F. Supp. 2d 221 (D.N.J. 2001)............................................................. 2

*Snyder v. Brownlow,*
No. 93-5238, 1994 U.S. Dist. LEXIS 10819 (E.D. Pa. Aug. 5, 1984) ................................ 12-13

*Stratagene v. Invitrogen Corp.,*
225 F. Supp. 2d 608 (D. Md. 2002)............................................................. 9

*Trovan, Ltd. v. Sokymat Sa,*
299 F.3d 1292 (Fed. Cir. 2002) ................................................................. 8

*Unisys Corp. v. Amperif Corp.,*
No. 92-1966, 1992 U.S. Dist. LEXIS 12557 (E.D. Pa. Aug. 20, 1992) .................................. 14

*Vela v. City of Houston,*
No. H-97-3471, 2004 U.S. Dist. LEXIS 14965 (S.D. Tex. July 15, 2004) ................................ 4

**Other Authorities**

M.P.E.P. § 2001.06(b) ................................................................................................ 10

M.P.E.P. § 904 ............................................................................................................ 10

M.P.E.P. § 904.01 ....................................................................................................... 10

**Rules**

37 C.F.R. § 1.78 ............................................................................................................ 9

Rule 1.9(a) of the Model Rules of Professional Conduct ........................................ 7, 16

## I.    INTRODUCTION

Illumina's motion to disqualify Merchant & Gould should be denied. Motions to disqualify are disfavored. Because these motions can be misused, this Court should review the motion with extreme caution. Reviewing Illumina's present motion, brought several months after it had notice of the facts it now alleges create a conflict and within weeks of critical deadlines set by this Court, reveals that this motion is nothing more than a strategic attempt to delay this case or burden Czarnik, or both.

Illumina was aware of Merchant & Gould's prior representation on July 24, when Merchant & Gould filed a notice of appearance, yet waited almost three months until the eve of discovery deadlines to bring this motion. During this period, Illumina's counsel worked with Merchant & Gould on substantive issues, including discovery and amended pleadings. More troubling than Illumina's suspicious delay, is that Illumina was not concerned about the prior representation provided Czarnik would agree to arbitration, as Illumina acknowledges in footnote one of its brief. Illumina waived its right to object to Merchant & Gould's representation of Czarnik.

Merchant & Gould's prior representation of Illumina, a former Merchant & Gould attorney filing a single amendment to provoke an interference in the prosecution of an unrelated Illumina patent application, is not substantially related to this action regarding inventorship. The '574 application was not written, filed or prosecuted by Merchant & Gould. The inventors of the '574 application were determined by another law firm almost five years before Merchant & Gould became involved. Merchant & Gould's involvement was limited to ███████████████ ████████████████████████████.

## II.    ARGUMENT

### A.    ILLUMINA WAIVED ITS RIGHT TO OBJECT TO MERCHANT & GOULD'S REPRESENTATION OF CZARNIK.

Illumina's almost three-month delay in bringing this motion, on the eve of important Court deadlines, for the tactical purpose of encouraging Czarnik to proceed to arbitration prejudiced Czarnik, whose new counsel has worked diligently to prepare this case for trial. *Conley v. Chaffinch*, 431 F. Supp. 2d 494, 498-99 (D. Del. 2006) (holding that the moving party waived its objection because it waited nine months to file its motion, it was represented by sophisticated counsel during that period, and the non-moving party would be prejudiced by further delay).  Five factors are considered in determining whether the moving party has waived its right to object to opposing counsel: (1) the length of the delay in bringing the motion; (2) when the movant learned of the conflict; (3) whether the movant was represented by counsel during the delay; (4) why the delay occurred; and (5) whether disqualification would result in prejudice to the nonmoving party. *Id.* at 499.  The essence of this analysis is whether the movant appears to use the disqualification motion as a tactical maneuver. *Rohm & Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 229-30 (D.N.J. 2001); *see Panduit Corp. v. All States Plastic Mfg.*, 744 F.2d 1564, 1577 (Fed. Cir. 1984) (cautioning courts to use "extreme caution" because motions to disqualify can be misused as techniques to harass).  Here, the factors weigh in favor of waiver and the circumstances suggest that Illumina filed this motion as a tactical maneuver.

## 1.  Illumina's Suspicious Delay.

Illumina's delay and timing of its motion demonstrate that Illumina was never really concerned about Merchant & Gould's involvement in this case.  Illumina first learned of the issue on July 24, 2007, when Merchant & Gould attorney Anthony Zeuli filed a notice of appearance in this case.  (D.I. 47.)  Illumina did not file an objection to Zeuli's appearance.  On July 27, Illumina's counsel worked with Zeuli to file a stipulation to extend the deadline for amending pleadings.  (D.I. 48.)  Illumina's counsel raised the issue of Merchant & Gould's prior representation of Illumina on July 30 in a phone call with Zeuli regarding Merchant & Gould's request to file a Second Amended Complaint on Czarnik's behalf.  (Zeuli Decl. at ¶ 2.)[1] However, rather than filing an objection, Illumina's counsel again worked with Merchant & Gould to file a stipulation regarding the amended complaint.  (D.I. 49.)  Illumina answered the Second Amended Complaint on August 16, again without objection to Merchant & Gould's representation of Czarnik.  (D.I. 53.)  Illumina did not even object to Merchant & Gould's receipt of thousands of Illumina documents produced as Highly Confidential.  (Zeuli Decl. at ¶ 3.)

With deadlines fast approaching, Merchant & Gould subpoenaed documents from Illumina's long-time patent attorneys, Robin Silva and Nicky Espinosa,[2] on August 23.  (D.I. 54.)  Neither Illumina nor the patent attorneys objected to Merchant & Gould's involvement in this case.  Nor did Illumina object when, on August 24, its counsel and Zeuli filed a second stipulation to extend certain deadlines making initial expert reports due on October 30.  (D.I. 55.)

---

[1] Filed herewith in support of Czarnik's Memorandum In Opposition To Illumina's Motion To Disqualify Merchant & Gould are the declarations of Anthony Zeuli ("Zeuli Decl. at ¶"), Chong Lee ("Lee Decl. at ¶"), and Christopher Raimund ("Raimund Decl. at ¶").  Exhibits to this brief are included in the declaration of Anthony Zeuli ("Zeuli Ex.") and Chong Lee ("Lee Ex.").

[2] Neither Ms. Silva nor Ms. Espinosa have ever worked for Merchant & Gould.

Illumina's response to a discovery letter from Zeuli is particularly telling. ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ Zeuli also raised

several discovery issues and notified Illumina that Czarnik had retained an expert who would

have access to confidential information. (Zeuli Exs. C-D.) Illumina did not object. *Vela v. City*

*of Houston*, No. H-97-3471, 2004 U.S. Dist. LEXIS 14965, at *16-17 (S.D. Tex. July 15, 2004)

(holding that the movant implicitly consented to the attorney's involvement by waiting three

months to file the motion to disqualify, during which time the attorney appeared at three pretrial

conferences and reviewed documents). (Zeuli Ex. E.)

On October 1, just 30 days before expert reports were due, Zeuli noticed the depositions

of two Illumina employees to occur on October 16 and 17 respectively, so that the transcripts

would be available for the expert's review. (D.I. 57 and 58.) Rather than address the discovery

issues raised by Zeuli, retain its own expert or notice any depositions, Illumina filed its motion to

disqualify Merchant & Gould just four days later. Illumina's cover letter sent with its motion

reveals its strategic purpose:

> You have recently raised a handful of discovery issues, and there remain several serious
> issues that I had previously raised, that will need to be addressed. At this point, however,
> I think it prudent to wait for the resolution of the disqualification issue before we move
> forward. Once this issue is resolved, we look forward to moving the case forward and
> can discuss any necessary adjustments to the schedule at that time.

(Zeuli Ex. F.)

By allowing Zeuli to review Highly Confidential documents, file stipulations and papers

with this Court, retain experts, work with opposing counsel on discovery and other substantive

issues, Illumina implicitly consented to Merchant & Gould's involvement. *Vela*, 2004 U.S. Dist.

4

LEXIS 14965, at *16-17. Illumina also implicitly consented when it suggested it may not even bring this motion if Czarnik would agree to binding arbitration. (Zeuli Decl. at ¶ 5.)

**2.    The Purpose Of Illumina's Delay Was To Disrupt Discovery And Encourage Czarnik To Proceed With Arbitration.**

As demonstrated above, Illumina's purpose for filing its motion when it did appears to have been to disrupt Czarnik's attempts to take the discovery sought and to avoid moving this case forward. However, even more troubling to its position, is Illumina's willingness to not only work with Merchant & Gould during the past three months, but to file its motion only when Czarnik would not agree to arbitration. Illumina acknowledges this fact in its brief:

> Although Illumina raised this issue with Merchant & Gould several weeks ago, the parties were in the middle of seeking a possible out-of-court resolution of this dispute. *Illumina filed this motion as soon as it became apparent that the case was going to proceed in this court* with Merchant & Gould as counsel.

(Illumina's Br. at 1, fn. 1 (emphasis added).)

The "out-of-court resolution" was binding arbitration proposed by Illumina's counsel to Zeuli. (Zeuli Decl. at ¶ 4.) Illumina did not file its motion during the entire time Zeuli and Illumina's counsel discussed arbitration even though the issues that would have been arbitrated were the same as in this Court – Czarnik's co-inventorship. Illumina's counsel even discussed with Zeuli that discovery would be part of the arbitration, but on a more limited scale. (Zeuli Decl. at ¶ 6.) Apparently, Illumina would not have objected to Merchant & Gould's representation of Czarnik in the arbitration, but now objects to the same scope of representation in this Court. Illumina's motivation for delaying its motion was to encourage Czarnik to give up his right to a jury trial and proceed to arbitration.

### 3.    Czarnik Has Been Prejudiced By Illumina's Disruptive Motion And Will Be Further Prejudiced If Forced To Obtain New Counsel.

Illumina's motion has already prejudiced Czarnik by the delay in discovery and trial of his case. However, Czarnik will be further prejudiced if the Court grants this motion because Czarnik has invested significantly in having Merchant & Gould get up to speed in the past three months with deadlines looming, take discovery, prepare for depositions, retain and work with experts and discuss arbitration. All of this work was done with Illumina's full knowledge and during the time Illumina was aware of Merchant & Gould's prior representation of Illumina and the approaching deadlines in this case.

As explained above, Illumina raised this issue on July 30. Despite working with Zeuli on two stipulations, the second amended complaint, several discovery issues, and the fast-approaching deadlines in this case, Illumina did not file its motion until Merchant & Gould and Czarnik had invested all that time and effort in preparing for those deadlines. And, of course, Illumina waited until arbitration was no longer on the table.

Illumina, represented by counsel, chose to continue working with Zeuli and Merchant & Gould despite knowledge of the prior representation. It attempted to use the delay to encourage arbitration. Only when it was certain that this matter would proceed in this Court, did Illumina file its objection. Illumina waived its right to do so.

### B.    MERCHANT & GOULD'S PRIOR INTERFERENCE REPRESENTATION OF ILLUMINA IS NOT SUBSTANTIALLY RELATED TO THE PRESENT INVENTORSHIP DISPUTE.

In addition to waiving its right to object, Illumina has failed to establish that the prior representation is substantially related to this case. The prior representation consisted of a former Merchant & Gould attorney, located in a different office than Zeuli, filing two submissions in a

6

single, unrelated Illumina patent application ("'574 application") in order to provoke an interference.[3]  In contrast, the present lawsuit is an inventorship dispute involving a former Illumina employee's claims that he was intentionally omitted from five different Illumina patents.  Importantly, Merchant & Gould did not draft or file the 171-page '574 application, which included two paragraphs describing IBL/DBL.  That was done by a different law firm almost 5 years before Merchant & Gould became involved.  Inventorship of the '574 application was also determined by a law firm other than Merchant & Gould, again almost 5 years before Merchant & Gould's involvement.  ███████████████████████████████ ████████████████████████████████████████████████████████ technology unrelated to the IBL/DBL technology in this case, demonstrates it is unlikely that confidences relevant to this action were disclosed during the prior representation.  Under Rule 1.9(a) of the Model Rules of Professional Conduct, three factors are evaluated in determining whether the matters are substantially related: (1) the nature and scope of the prior representation; (2) the nature of the present lawsuit and (3) in the course of the prior representation, whether the client may have disclosed to her attorney confidences which could be relevant to the present action and, in particular, could any such confidences be detrimental to the former client in the current litigation.  *Conley*, 431 F. Supp. 2d at 496-97.  In this case, the three factors demonstrate that the matters are not substantially related.

---

[3] The purpose of an interference proceeding is to resolve the question of priority of invention when a patent applicant seeks a patent on substantially the same invention as another application or patent.  *Minnesota Mining & Manufacturing Co. v. Norton Co.*, 929 F.2d 670, 674 (Fed. Cir. 1991).

### 1.    The Present Lawsuit Is An Inventorship Dispute Over Claims Relating to IBL/DBL Technology.

In the current case, Czarnik asserts that he is a co-inventor of five Illumina patents that claim his Identifier Binding Ligand and Decoder Binding Ligand ("IBL/DBL") invention: U.S. Patents 6,429,027, 6,858,394, 6,988,274, 6,544,732, and 6,890,764 (hereinafter "the '027, '394, '274, '732, and '764 patents," respectively or "patents-in-suit," collectively).[4] These patents have claims that are specifically drawn to the IBL/DBL invention, for example:

> [A]n identifier binding ligand that will bind to a decoder binding ligand for identification of said bioactive agent.
> (Claim 6 of the '027 patent.)

Because each of the claims-at-issue includes "identifier binding ligands" and/or "decoder binding ligands," Czarnik asserts co-inventorship in these patents. The focus is on the claims, not the specification, in resolving inventorship disputes. *Trovan, Ltd. v. Sokymat Sa*, 299 F.3d 1292, 1302 (Fed. Cir. 2002). As such, the inventorship determination here will involve evaluating Czarnik's contribution to the IBL/DBL claims of the patents-at-issue.

### 2.    Merchant & Gould's Prior Representation of Illumina Was Limited To Provoking An Interference In An Unrelated Application.

#### a. Non-Merchant & Gould Attorneys Prepared And Prosecuted the '574 Application.

The '574 application, a 171-page application that included only two paragraphs repeating the earlier disclosure of IBL/DBL, was prepared and filed by patent attorney Vicki Norton of the law firm Brobeck, Phleger & Harrison LLP on October 4, 2002, almost five years *before* Merchant & Gould's involvement and several years *after* the filing of the applications from

---

[4] Czarnik also claims co-inventorship of technology involving nanocrystals. Illumina has not alleged that Merchant & Gould had any prior involvement with Illumina's nanocrystal technology.

which the patent-in-suit issued. (Zeuli Exs. G, H.) On the same date, Ms. Norton also filed a

declaration identifying three inventors, none of which were Czarnik. (Zeuli Ex. I at 2.) She also

filed an original set of claims that did not include any claim language directed to the IBL/DBL

invention. (*Compare* claims from the '574 application (Zeuli Ex. H at 168-170) *with* claim 6 of

the '027 patent.)

It was also Ms. Norton who filed with the Patent Office the information regarding

Related Applications – other Illumina patent applications related to the '574 application. (Zeuli

Ex. G at 7.) Although all of the applications from which the patents-in-suit issued existed at that

time, Ms. Norton informed the Patent Office that the '574 application was related to twelve (12)

*different* Illumina patent applications, not one of those related applications pertained to any of

the patents-in-suit. (*Id.*) The Patent Rules provide substantial benefits for listing related U.S.

applications having common ownership as Related U.S. Application Data. 37 C.F.R. § 1.78; *see*

*Broadcast Innovation, L.L.C. v. Charter Communs., Inc.*, 420 F.3d 1364, 1367-68 (Fed. Cir.

2005). Ms. Norton and Illumina would have listed the applications from which the patents-in-

suit issued if they were related to the '574 application. Their decision to not do so is strong

evidence that the '574 application is not related to the patents-in-suit. *Compare Civco Med.*

*Instruments v. Protek Med. Prods., Inc.*, No. 4:03-cv-40722, 2004 U.S. Dist. LEXIS 10840, at

*18-19 (S.D. Iowa June 4, 2004) (no substantial relationship between patents from prior

representation and patents at issue because the prior patents were not cited on the face of the

patents at issue) (Zeuli Ex. J.) *with Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608, 612-13

(D. Md. 2002) (prior representation relating to prosecution of parent application was

substantially related to the patent at issue, a continuation of the parent patent from the prior

representation).

**b. Other Attorneys Represented Illumina In The '574 Application.**

The declaration filed by Ms. Norton and signed by the inventors of the '574 application

listed Robin Silva, from the law firm of Flehr Hohbach Test Albritton & Harrison, as the contact

attorney. (Zeuli Ex. I.) In early 2004, a third attorney representing Illumina, Aubrey Haddach

from Pillsbury Winthrop, filed an Information Disclosure Statement ("IDS") with the PTO.

(Zeuli Ex. K.) Ms. Haddach brought to the PTO's attention 529 individual pieces of prior art,

including U.S. patents, published U.S. patent applications, publications and foreign patents. (*Id.*)

Identifying prior art to the Patent Office is important because leaving off even a single, material

reference can result in unenforceability. *McKesson Info. Solutions, Inc. v. Bridge Med., Inc.*, 487

F.3d 897, 913-19 (Fed. Cir. 2007). Importantly, Illumina and Ms. Haddach were under a duty to

disclose information related to or from copending applications that were material to the '574

application. Manual Of Patent Examining Procedure ("M.P.E.P.") § 2001.06(b) (8th ed., rev. 6,

Sept. 2007). Although all but one of the applications from which the patents-in-suit issued were

copending at the time, Illumina and Ms. Haddach did not disclose any of the applications

involved in the present case. Their choice to do so is also strong evidence that the '574

application is not related.

In September 15, 2005, the patent examiner performed a search for additional prior art.

(Zeuli Ex. L.) The examiner's search terms reflect her understanding of the '574 invention,

giving the claims their broadest interpretation in light of the specification. M.P.E.P. §§ 904,

904.01. Not one of the search terms includes the terms "IBL," "DBL," "ligand," "identifier,"

"binding," "ligand," or "decoding." (Zeuli Ex. L.) Following the search, the examiner rejected

Illumina's claims in the '574 application. (Zeuli Ex. M.) In doing so, the examiner did not

discuss binding ligands or decoding ligands, but instead focused exclusively on probes, stating: "The instant claims are drawn to padlock probes." (*Id.* at 2.)

### c. Merchant & Gould's Involvement Was Limited To Unrelated Interference Work.

Merchant & Gould did not become involved in the '574 application until ▮▮▮▮▮▮▮▮ ▮▮▮▮. (Lee Decl. at ¶ 2.) Steven B. Kelber, an interference specialist who at that time was an attorney with Merchant & Gould in its D.C. office, filed a preliminary amendment in the '574 application "in order to provoke an interference."[5] (Zeuli Ex. N.) In this amendment, all of the original claims were canceled and three new claims (23 – 25) were added. (*Id.* at 4.) Consistent with interference practice, and contrary to more traditional patent practice, Kelber merely copied word-for-word claims 23 and 24 from U.S. Patent No. 6,858,412 ("the Willis patent") and included claim 25 to show continuity with the wording of the Illumina application. (*Id.* at Annex C, *Id.* at 4.) Just like the original claims of the '574 application, claims 23 through 25 did not include the IBL/DBL invention language. Kelber provided claim charts in support of the interference which never mention IBL/DBL or inventorship. (*Id.* at Annex A-B.) Kelber even requested a meeting with "an Interference specialist" at the Patent Office. (*Id.* at 4.)

Merchant & Gould's only other involvement in the '574 application was limited to Kelber's interview with an Interference Specialist on November 21, 2005, and filing revised claim charts. (Zeuli Ex. O.) The interview focused on a "cleaved probe" – having nothing to do with IBL/DBL or inventorship. (*Id.* at 2-4.) Illumina requested that Merchant & Gould withdraw as its counsel on June 9, 2006. (Zeuli Ex. P.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] An interference was declared by the PTO, but Merchant & Gould had no involvement in the proceeding. (Zeuli Ex. R.)

11

████████████████████████████████████

████████████████████████████████████

It was not until long after Merchant & Gould had ended its representation of Illumina that inventorship did arise in the '574 application, however. Public records show that in December 2006, Robert Schulman of the Hunton & Williams law firm filed a correction of inventorship document removing Mr. Stuelpnagel as a co-inventor. (Zeuli Ex. Q.) Mr. Stuelpnagel may have been thinking of this more recent event, which is otherwise unmentioned in his declaration, when he states that inventorship was an issue in the '574 application.

### d. Two Paragraphs In A 171-Page Application Disclose, But Do Not Claim, IBL/DBL.

Illumina asserts that the patents-at-issue are "substantially related" to the '574 application because two paragraphs of the 171-page application disclose, but do not claim, IBL/DBL. Illumina completely ignores the subject matter of the claims and the claim language itself. Merchant & Gould's prior representation of Illumina is not "substantially related" to the current case because the *claims* (not the disclosure) are the focus of an inventorship dispute. It is undisputed that the claims of the '574 application do not include the IBL/DBL invention.[6] Kelber's representation, limited to an interference involving padlock and cleaved probes, was focused on different issues and different technology that were unrelated to the IBL/DBL invention at issue in this case. *Elonex I.P. Holdings, LTD. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 582 (D. Del. 2001) (finding that because two matters involved different patent *technology*, disqualification was unwarranted); *see Snyder v. Brownlow*, No. 93-5238, 1994 U.S.

---

[6] Illumina's arguments regarding adding claims that specifically include the IBL/DBL limitation in the future are inapposite. At the time of Merchant & Gould's representation, the claims did not include any IBL/DBL language. Merchant & Gould's involvement was limited to preparing two Patent Office filings concerning an interference with the Willis patent covering padlock and cleaved probes.

Dist. LEXIS 10819, at *8-9 (E.D. Pa. Aug. 5, 1984) (finding that although the subject matter

involved in the prior representation (a collection of Nazi-era artifacts) was the same as in the

action at hand, there was no substantial relationship because the *issues* involved in the prior

representation were unrelated).

### 3.    Merchant & Gould's Prior Representation of Illumina Was Limited In Scope And Duration.

Merchant & Gould's representation of Illumina was limited ██████████ , ██████████

██████████████████ in preparation of filing the preliminary amendment and interview

summary for the purpose of provoking an interference.  The subject matter of the interference,

padlock and cleaved probes, had nothing to do with IBL/DBL or inventorship.

Illumina's unspecific allegation that Merchant & Gould ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ Illumina submitted no

support for this statement and omitted all specifics regarding these alleged discussions, including

the date and duration of the conversations, made no mention that Czarnik or IBL/DBL was ever

discussed in the conversations, and even omitted the name of the Merchant & Gould attorney

involved.  *Elonex*, 142 F. Supp. 2d at 581 (stating that "vague and unsupported allegations are

not sufficient" to clearly show that continued representation would be impermissible).

Illumina's subsequent correction of inventorship to remove Mr. Stuelpnagel from the '574

application in December 2006 is likewise evidence that no such earlier discussions occurred with

Merchant & Gould attorneys who filed no documents related to inventorship.

Not only was the scope of Merchant & Gould's involvement with the '574 application limited, but also the duration of the representation and the actual time spent by Merchant & Gould attorneys on the application was minimal. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████ *See Unisys Corp. v. Amperif Corp.*, No. 92-1966, 1992 U.S. Dist. LEXIS 12557, at * 9

---

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Given that the matters, although both pertain to patents, involved different technology (padlock/cleavage probes v. IBL/DBL), different issues (interference/priority of invention v. inventorship), and lawyers in different cities, disqualification is not warranted. *Elonex*, 142 F. Supp. 2d at 584.

### 4.    It Is Unlikely That Illumina Disclosed Confidences Which Could Be Relevant and Detrimental To Illumina.

During Merchant & Gould's preparation of the pre-interference papers concerning padlock and cleaved probes in the '574 application, it is unlikely that Merchant & Gould acquired any confidences that could be detrimental to Illumina in the present action. The claims of the '574 application did not involve the IBL/DBL invention. Kelber's filings with the Patent Office indicate that the scope of his discussions with Illumina was limited to finding support in the 171-page specification for interfering probe claims, claims unrelated to IBL/DBL. The support he cited to the Patent Office did not include any information related to the IBL/DBL invention. It is unlikely that Kelber (who is no longer with Merchant & Gould), let alone Raimund, gained any confidential information related to the inventorship of the IBL/DBL invention during the prior representation.

Moreover, Merchant & Gould did not write the '574 application, determine inventorship, or draft the initial claims – all done almost five years before Merchant & Gould became involved. Therefore, because it is unlikely that confidences that are relevant and detrimental to

████████████████████████████████████████████████████
████████████████████████████████████████████████████

Illumina were shared with Merchant & Gould, the prior representation is not "substantially related" to the inventorship dispute at issue in this action. Even if the Court determines that a violation of Rule 1.9 has occurred, disqualification should not be automatic and, on the present facts, is too severe. *See Elonex*, 142 F. Supp. 2d at 583.

## III.    CONCLUSION

The present action is not substantially related to Merchant & Gould's prior representation of Illumina. Merchant & Gould's representation was less than a year in duration and was limited to provoking an interference of an application unrelated to the IBL/DBL invention. In addition, Illumina has waived its objections to Merchant & Gould's current representation. Therefore, Merchant & Gould respectfully requests that the Court deny Illumina's motion to disqualify.

OF COUNSEL:                          POTTER ANDERSON & CORROON LLP

Anthony R. Zeuli
Rachel Zimmerman                     By:  */s/ David E. Moore*
MERCHANT & GOULD                          Richard L. Horwitz (#2246)
3200 IDS Center                           David E. Moore (#3983)
80 South Eighth Street                    Hercules Plaza, 6th Floor
Minneapolis, MN  55402                    1313 N. Market Street
Tel:  (612) 371-5208                      Wilmington, DE  19899
                                          Tel:  (302) 984-6000
Anthony F. Pantoni                        rhorwitz@potteranderson.com
ANTHONY F. PANTONI, ESQUIRE               dmoore@potteranderson.com
501 West Broadway, Suite 1370
San Diego, CA 92101                  *Attorneys for Plaintiff*
Tel:  (619) 235-4400                 *Dr. Anthony Czarnik*

Dated:  October 26, 2007
Public Version Dated:  November 2, 2007
829448 / 32040

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 2, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I hereby certify that on November 2, 2007, I have Electronically Mailed the document to the following person(s):

Richard K. Herrmann
Mary B. Matterer
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899
rherrmann@morrisjames.com
mmatterer@morrisjames.com

Mark A. Pals, P.C.
Marcus E. Sernel
Stephen T. Webb
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
mpals@kirkland.com
msernel@kirkland.com
swebb@kirkland.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

809406 / 32040